# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MARKHAM CONCEPTS, INC., and LORRAINE MARKHAM<br><br>Plaintiffs,<br><br>v.<br><br>HASBRO, INC., REUBEN KLAMER, IDA MAE ATKINS, DAWN LINKLETTER GRIFFIN, SHARON LINKLETTER, MICHAEL LINKLETTER, LAURA LINKLETTER RICH, and DENNIS LINKLETTER<br><br>Defendants.<br><hr>REUBEN KLAMER,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>MARKHAM CONCEPTS, INC., and LORRAINE MARKHAM<br><br>Counterclaim Defendants. | Case No. 1:15-cv-419-S-PAS<br><br><u>**ORAL ARGUMENT REQUESTED**</u> |

**MOTION OF DEFENDANT AND COUNTER CLAIMANT REUBEN KLAMER TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

OF COUNSEL:
Erica J. Van Loon
GLASER WEIL FINK HOWARD
 AVCHEN & SHAPIRO LLP
10250 Constellation Blvd.,19th Flr.
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920
*Admitted Pro Hac Vice*

DATED: February 3, 2016

Eric Renner (#7481)
RENNER LAW LLC
10 Dorrance St,
Providence, RI 02903
Telephone: (401) 404-5251
Facsimile: (401) 404-5285


Attorneys for Defendant and Counterclaim
Plaintiff Reuben Klamer

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ...................................................................................................1

II.     Facts and procedural background .........................................................................2

III.    ARGUMENTS.......................................................................................................6

      A.      The Court Should Dismiss Plaintiffs' Second Amended Complaint in its
          entirety Because Plaintiffs Lack Standing to Sue, and Plaintiffs' Claims
          are Barred by Res Judicata and Collateral Estoppel. ...................................6

          1.      Legal Standard for Dismissal Under F. R. Civ. P. 12(b)(6)........................6

          2.      Plaintiffs Lack Standing to Bring this Action ............................................7

          3.      Plaintiffs' Claims Are Barred by Res Judicata ........................................11

          4.      Plaintiffs' Claims are Barred by Collateral Estoppel................................15

      B.      This Action Should be Transferred to the Central District of California
          Because the Interests of Convenience and Justice are Better Served by
          Adjudication of This Matter in California ...........................................18

          1.      The Convenience of the Witnesses Supports a Transfer ..........................20

          2.      The Location of Evidence Supports a Transfer ........................................27

          3.      The Convenience of the Parties Supports a Transfer................................28

          4.      California Law Applies to the Action, Supporting Transfer.....................29

          5.      Unfairness of Burdening Citizens in Rhode Island with Jury Duty,
               Supports a Transfer..................................................................................32

          6.      A Transfer Will Not Prejudice the Parties and Is Not sought to
               Delay the Resolution of the Claims Asserted ...........................................32

IV.     CONCLUSION....................................................................................................33

1119944

# TABLE OF AUTHORITIES

Page

## CASES

*Arizona v. California,*
   530 U.S. 392 (2000) ............................................................................... 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................. 6

*Blackstone Realty LLC v. FDIC,*
   244 F.3d 193 (1st Cir. 2001) ........................................................... 11, 15

*Blum v. Salomon,*
   No. 06 VC 3149 WHP, 2006 WL 3851157 (S.D.N.Y. Dec. 28, 2006) ................................. 23

*Brodheim v. Cry,*
   584 F.3d 1262 (9th Cir. 2009) ............................................................... 13

*Brownell v. La Salle Steel Co.,*
   128 F. Supp. 548 (D. Del. 1955) ............................................................ 22

*Continental Grain Co. v. The Barge FBL-585 et al.,*
   364 U.S. 19 (1960) ............................................................................... 18

*Corbello v. Devito,*
   No. 1:07 CV 985, 2008 WL 2097435 (E.D. Tex. May 19, 2008) ......................... 22

*DeCesare v. Lincoln Benefit Life Co.,*
   852 A.2d 474 (D.R.I. 2004) ................................................................... 29

*Elbalah v. Republic Ins. Co.,*
   879 F. Supp. 3 (D.R.I. 1995) ........................................................... 19, 20

*Forward v. Thorogood,*
   985 F.2d 604 (1st Cir. 1993) ................................................................... 9

*Gonzales v. California Department of Corrections,*
   739 F.3d 1226 (9th Cir. 2014) ........................................................... 13, 15

*Goodman Ball, Inc. v. Mach II Aviation, Inc.,*
   No. C 10–01249 WHA, 2010 WL 4807090 (N.D. Cal. Nov. 19, 2010) ............................. 12

*Green v. Ancora-Citronelle Corp.,*
   577 F.2d 1380 (9th Cir. 1978) ............................................................... 17

*Hawkins v. Spelling Entertainment Group, Inc.,*
   No. 98-56580, 2000 WL 576425 (9th Cir. May 11, 2000) .................................... 13

*Hells Canyon Preservation Council v. U.S. Forest Service,*
   403 F.3d 683 (9th Cir. 2005) ................................................................ 13

*High Rock Westminister St. LLC v. Bank of Am., N.A.,*
   C.A. No. 13–500 S, 2014 WL 3867699 (D.R.I. Aug. 6, 2014) ............................... 6

*Hydranautics v. FilmTec Corp.*,
204 F.3d 880 (9th Cir. 2000) ......................................................................... 16

*In re Colonial Mortgage Bankers Corp.*,
324 F.3d 12 (1st Cir. 2003) ..................................................................... 11, 15

*Int'l Union of Operating Eng's – Employers Construction Indus. Pension, Welfare and Training Trust Funds v. Karr,*
994 F.2d 1426 (9th Cir. 1993) ....................................................................... 12

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
413 F.3d 257 (2d Cir. 2005) ........................................................................... 11

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
313 U.S. 487 (1941) ....................................................................................... 29

*Lee v. JP Morgan Chase Bank, N.A.*,
Case No. 2:15-cv-04061-CAS(GJSx), 2015 WL 5554006 (C.D. Cal. Sept. 21, 2015) .......... 17

*Maddox v. Elsevier, Inc.*,
732 F.3d 77 (1st Cir. 2013) ............................................................................. 6

*Maleknieaz v. New York University*,
C.A. No. 05-30285, 2006 WL 2521406 (D. Mass. 2006) ................................... 27

*Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc.,*
380 F.3d 624 (2d Cir. 2004) ........................................................................... 10

*McClain v. Apodaca*,
793 F.2d 1031 (9th Cir.1986) ......................................................................... 14

*McEvily v. Sunbeam-Oster Co., Inc.*,
878 F. Supp. 337 (D.R.I. 1994) ........................................................... 18, 19, 20

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
465 U.S. 75 (1984) ................................................................................... 12, 31

*NGC Worldwide, Inc. v. Siamon,*
*No.* 3:02 CV 1760 (JBA), 2003 WL 1987001 (D. Conn. April 21, 2003) ............................ 22

*Norwood v. Kirkpatrick*,
349 U.S. 29 (1955) ......................................................................................... 19

*Playboy Enter., Inv. v. Dumas*,
53 F.3d 549 (2d Cir. 1995) ............................................................................... 9

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.,*
490 F.3d 86 (1st Cir. 2007) ............................................................................ 15

*Robertson Stephens, Inc. v. Chubb Corp,*
473 F. Supp. 2d 265 (D.R.I. 2007) ................................................................. 31

*Robi v. Five Platters, Inc.,*
838 F.2d 318 (9th Cir. 1988) ......................................................................... 12

*Schatz v. Republican State Leadership Comm.*,

[iii]

669 F.3d 50 (1st Cir. 2012) ............................................................................................ 6

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
206 F.3d 1322 (9th Cir. 2000) ...................................................................................... 9

*Siegel v. National Periodical Publications, Inc.,*
508 F.2d 909 (2d Cir.1974) ........................................................................................... 9

*Stewart v. U.S. Bancorp,*
297 F.3d 953 (9th Cir. 2002) ...................................................................................... 13

*Takeda v. Northwestern Nat. Life. Ins. Co.,*
765 F.2d 815 (9th Cir. 1985) ...................................................................................... 17

*Tolliver v. McCants,*
No. 05 CIV. 10840 (JFK), 2009 WL 1473445 (S.D.N.Y. May 26, 2009) .............. 8

*Twentieth Century Fox Film Corp. v. Entertainment Distributing,*
429 F.3d 869 (9th Cir. 2009) ........................................................................................ 9

*U.S. ex rel. Ondis v. City of Woonsocket, Rhode Island,*
480 F. Supp. 2d 434 (D. Mass. 2007) ........................................................................ 28

*United States v. AVX Corp.,*
962 F.2d 108 (1st Cir. 1992) ........................................................................................ 7

*Warth v. Seldin,*
422 U.S. 490 (1975) ....................................................................................................... 7

*White v. City of Pasadena,*
671 F.3d 918 (9th Cir. 2012) .................................................................................. 12, 13

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980 ..................................................................................................... 21

## STATE CASES

*In re Estate of Redfield,*
193 Cal. App. 4th 1526 (2011) ................................................................................... 12

*Sawyer Nurseries v. Galardi,*
181 Cal. App. 3d 663 (1986) ...................................................................................... 17

## FEDERAL STATUTES

15 U.S.C. § 1051 ............................................................................................ 4, 9, 11, 16

17 U.S.C. § 101 ............................................................................................... 4, 9, 11, 13

17 U.S.C. § 203 ......................................................................................... 4, 9, 11, 13, 15

17 U.S.C. § 304 ...................................................................................... 4, 8, 9, 11, 13, 15

17 U.S.C. § 304 (c)(1) ........................................................................................................ 8

17 U.S.C. § 304 (c)(2) (B) ................................................................................................. 8

1119944

17 U.S.C. § 304 (c)(2)(A) ........................................................................................ 8

28 U.S.C. § 1404(a) ................................................................. 1, 18, 19, 22, 27, 32

28 U.S.C. § 1406(a) ............................................................................................ 1, 19

35 U.S.C. §  106 ................................................................................................... 9, 11

35 U.S.C. § 100 ......................................................................................... 4, 9, 11, 16

Federal Rules of Civil Procedure § 12(b)(6) ...................................................... 6, 7

Federal Rules of Civil Procedure § 8(a)(2) ............................................................ 6

Federal Rules of Evidence § 201(b)(2) ................................................................. 14

## OTHER AUTHORITIES

2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03[ A][ 5] (2015) ............ 8

Melville B. Nimmer and David Nimmer, Nimmer on Copyright, § 5.03[B][1][a][l] (1999) ....... 10

Restatement (Second) of Judgments § 27 cmt. (e) ...................................................... 16

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT AND COUNTER CLAIMANT REUBEN KLAMER TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Defendant and Counterclaimant Reuben Klamer hereby submits this memorandum of law in support of his motion to dismiss Plaintiffs' Second Amended Complaint, or in the alternative to transfer this action to the United States District Court for the Central District of California (hereinafter, "Motion") on the basis of Plaintiffs' and Counter Defendants', Markham Concepts, Inc.' and Lorraine Markham's (collectively, "Plaintiffs"), inability to establish standing to bring suit and on the basis of res judicata and issue preclusion pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to transfer this case to the Central District of California pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). In support, the Defendant states as follows:

## I.      INTRODUCTION

In the present dispute, Plaintiffs subject Mr. Klamer and defendants, Ida Mae Atkins, Dawn Linkletter Griffin, Sharon Linkletter, Michael Linkletter, Laura Linkletter Rich and Dennis Linkletter (each individually a "Defendant," and collectively, "Defendants"), to a myriad of claims, disregarding the fact that the majority of their allegations are barred. Offering blanket assertions and conclusions of law, Plaintiffs fail to demonstrate standing or establish any indication that they are the rightful successors-in-interest to Bill Markham's interest in The Game of Life (hereinafter, the "Game"). Further, Plaintiffs blatantly ignore the impact of the work for hire relationship between Bill Markham and Link Research & Development Corporation which further prevents Plaintiffs from asserting standing to claim any entitlements to the Game. Likewise, Plaintiffs turn a blind eye to the preclusive impact of the 1989 Settlement Agreement which expressly bars the present litigation as to the issues and claims of ownership in the Game.

This Court should grant Defendant's motion to dismiss this case and the claims herein, based on lack of standing, and the preclusive impact of res judicata and collateral estoppel. In the alternative, this Court should grant Defendant's motion to transfer this action to the Central

District of California to accommodate Mr. Klamer and other elderly witnesses unable to safely travel to Rhode Island, and to avoid the burdensome inconvenience and large financial strain that will be imposed on the other defendants in this case, none of whom, with the exception of defendant company Hasbro, Inc., reside in Rhode Island or anywhere near it.

## II.    FACTS AND PROCEDURAL BACKGROUND

Plaintiff Markham Concepts, Inc. is a **Nevada** corporation with its principal place of business in Las Vegas, Nevada and is the alleged successor-in-interest to the intellectual property rights of Bill Markham. Second Amended Complaint ("SAC"), ¶¶ 2, 32. Plaintiff Lorraine Markham is likewise a resident of Las Vegas, **Nevada** and the widow of Bill Markham. *Id.* at ¶ 3.

Defendant Reuben Klamer, is an individual and a citizen of the State of **California** and resides in Southern California. *Id.* at ¶ 5; *See also* Declaration of Mr. Klamer (hereinafter, "Klamer Decl."), ¶ 2. He is the former president and one of the original founders of the Link Research & Development Corporation (hereinafter, "LINK"), which was founded in 1958. Klamer Decl., ¶ 3. Mr. Klamer is 93 years old and is confined to a wheelchair. *Id.* at ¶ 6.

Defendant Ida Mae Atkins, was an individual and a former citizen of the State of California. *See* SAC, ¶ 6; *See also* Declaration of Erica J. Van Loon ("Van Loon Decl."), Ex. 1. Ms. Atkins passed away on January 27, 2016, exactly one week prior to filing this Motion. Van Loon Decl., ¶ 3. She is survived by her heir, Thomas Feiman, who is a successor-in-interest to Ms. Atkins' rights and interests in the Game and who is a resident of **California**. Van Loon Decl., ¶6. Ms. Atkins' husband, and Mr. Feiman's uncle, Irvin Atkins, was one of the original founders of LINK. Following his death, Ms. Atkins was the sole trustee of the Irvin S. and Ida Mae Atkins Family Trust dated October 23, 1996 ("Atkins Family Trust") as a successor-in-interest to Mr. Atkins. Van Loon Decl., Ex. 3. As a successor-in-interest to the Atkins Family Trust, Mr. Feiman will continue to represent her interests throughout the course of this litigation, potentially with other family members who are also successors-in-interest to the Atkins Family Trust.

Defendant Dawn Linkletter Griffin, is an individual and a citizen of the State of **Arizona**. SAC, ¶ 7; *see also* Van Loon Decl., Ex. 4. Defendant, Sharon Linkletter, is an individual and a citizen of the State of **California** and resides in Los Angeles County. SAC, at ¶ 8; *see also* Van Loon Decl., Ex. 5. Together, Dawn and Sharon, daughters of the deceased, Art Linkletter, who was also a co-founder of LINK, are the co-trustees of the California formed, Linkletter Administrative Trust. *See* Van Loon Decl., Ex. 6.

Defendants Michael Linkletter and Laura Linkletter Rich, are both individuals and citizens of the State of **California**. Michael Linkletter is a resident of Laguna Beach, California and Laura Linkletter is a resident of Menlo Park, California. SAC, ¶¶ 9, 10; *see also* Van Loon Decl., Exs. 7, 8. Defendant Dennis Linkletter is an individual and resides in Bali, **Indonesia**. *Id.* at ¶ 11; *see also* Van Loon Decl., Ex. 9. They, together with Dawn Linkletter Griffin and Sharon Linkletter, are trustees under the Art and Lois Linkletter Revocable Trust. Van Loon Decl., Ex. 6, 10.

Defendants Sharon Linkletter, Dawn Linkletter Griffin, Michael Linkletter, Laura Linkletter Rich, Dennis Linkletter together with Ms. Atkins, shall hereinafter be referred to collectively as the "Link Successors."

Hasbro International, Inc., is a Rhode Island corporation with its principle place of business in Pawtucket, Rhode Island. Hasbro Inc. also has multiple offices throughout California,[1] has several entities registered with the California Secretary of State,[2] and has a registered agent for service of process in California.[3] Van Loon Decl., Exs. 11, 12. Hasbro is the successor-in-interest to Milton Bradley with respect to Milton Bradley's entitlements to the

---

[1] Hasbro Studios LLC has its principle address at 2950 N. Hollywood Way #100, Burbank, CA 91505.

[2] Hasbro, Inc., Hasbro Promotions and Direct, Inc., Hasbro Managerial Services LLC, and Hasbro Studios LLC are all active entities registered with the California Secretary of State.

[3] CT Corporation System, with its principle address at 818 W. Seventh St., Suite 930, Los Angeles, CA 90017, is the registered agent for service of process in California for Hasbro, Inc. and Hasbro Promotions and Direct, Inc.

1119944

Game. SAC, ¶ 4.

Plaintiffs initiated this action on or around October 2, 2015 by filing a complaint in the United States District Court for the District of Rhode Island on the basis of complete diversity of citizenship between the parties. Plaintiffs' Complaint, Doc. No. 1, ¶ 2. Plaintiffs thereafter filed two amended complaints, ultimately naming the Link Successors as Defendants to this action. *See generally* SAC. In pertinent part, Plaintiffs' Second Amended Complaint alleges that "Bill Markham was and is the sole creator, designer, developer, inventor, author, and owner of the Game and all of its intellectual property, including without limitation as those words are defined under 17 U.S.C. § 101, *et seq.*; 35 U.S.C. § 100, *et seq.*; and 15 U.S.C. § 1501, *et seq.*." SAC ¶ 80(a). Additionally, Plaintiffs allege that "all of the rights associated with the ownership of that intellectual property" relating to The Game of Life (hereinafter, the "Game"), "vested in Bill Markham at its inception, including without limitation all rights under 17 U.S.C. § 101, *et seq.*; 35 U.S.C. § 100, *et seq.*; and 15 U.S.C. §§ 1501, *et seq.* and specifically including without limitation, those rights provided under 17 U.S.C. §§ 203 and 304." *See* SAC, ¶80(b). Plaintiffs further allege that due to the Defendants' conduct, Plaintiffs have failed to receive royalties to which they are entitled and that the Defendants have been unjustly enriched. *Id.* at ¶¶ 83(a), 83(f), 86-91.

Further, the Complaint alleges that due to the nature of their relationship, Mr. Klamer owed Plaintiffs certain fiduciary duties which Mr. Klamer failed to uphold in bad faith. *Id.* at ¶¶ 92-100. Plaintiffs go on to allege that Mr. Klamer intentionally, or at the least, negligently interfered with Plaintiffs' economic and contractual relationship with Hasbro, resulting in lost royalties to which they are entitled. *Id.* at ¶¶ 101-112. Finally, Plaintiffs allege that the Defendants held fiduciary obligations to provide Plaintiffs with accounting of monies paid by Hasbro, and failed to uphold this obligation. *Id.* at ¶¶ 113-124.

On the basis of these allegations, Plaintiffs assert accounting, unjust enrichment and/or quantum meruit, declaratory judgment on the issue of authorship and breach of contract against Hasbro, Mr. Klamer and the Link Successors. *Id.* at ¶¶ 62-91, 113-124. Additionally, Plaintiffs'

[4]

Complaint asserts breach of fiduciary duties, breach of the covenant of good faith and fair dealing, tortious interference with contract, and negligent interference with prospective economic advantage against Mr. Klamer. *Id.* at ¶¶ 92-112.

In response, Mr. Klamer's Counterclaims seek a declaratory judgment that Lorraine Markham and Markham Concepts lack standing, as they are not successors-in-interest to Bill Markham's interest in the Game under the 1959 Agreement or Link Settlement Agreement and therefore have no right to continue to receive royalties paid to Link under the Licensing agreement. Klamer's Counterclaims ("Counterclaims"), Doc. No. 27, ¶ 52(a). Mr. Klamer also seeks a declaratory judgment that Lorraine Markham and Markham Concepts lack a contractual and good faith basis for terminating the 1959 Agreement, therefore leaving the 1959 Agreement in full effect. *Id.* at ¶ 52(b). As to the issue of authorship, Mr. Klamer seeks declaratory judgment that Bill Markham's involvement in the creation of the Game amounts to that of a work for hire. *Id.* at ¶ 52(c). In the alternative, Mr. Klamer seeks declaratory judgment that all claims and issues concerning ownership in the Game are foreclosed based on the principles of res judicata and collateral estoppel, as such claims and issues have already been litigated in 1989 and dismissed with prejudice. *Id.* at 52(d). Lastly, in the alternative, Mr. Klamer seeks a declaratory judgment that if Bill Markham is found to have any ownership to the intellectual property of the Game, such ownership is limited to that of a joint author and only to the extent that Bill Markham's contributions to the original prototype are still being exploited under the Licensing Agreement. *Id.* at 52(e).

Mr. Klamer's Counterclaims go on to assert that Plaintiffs improperly represented to Hasbro the purported termination of the 1959 Agreement and reversion of ownership of the intellectual property rights of the Game to Plaintiffs. *Id.* at ¶¶ 53-57. Further, Mr. Klamer's Counterclaims set forth that Plaintiffs improperly demanded direct payment of royalties from Hasbro, US Bank, and Mr. Klamer in violation of the Settlement Agreement. *Id.* at ¶¶ 58-62. Finally, Mr. Klamer's Counterclaims seek relief on the grounds that Plaintiffs breached their duties and obligations under the Settlement Agreement by re-litigating issues and claims already

settled and dismissed with prejudice. *Id.* at ¶¶ 63-69. Based on these contentions, Mr. Klamer asserts intentional interference with existing contractual relations, breach of the implied covenant of good faith and fair dealing, and breach of contract against Plaintiffs. *Id.* at ¶¶ 45-69.

## III.   ARGUMENTS

### A.   The Court Should Dismiss Plaintiffs' Second Amended Complaint in its entirety Because Plaintiffs Lack Standing to Sue, and Plaintiffs' Claims are Barred by Res Judicata and Collateral Estoppel.

#### 1.   Legal Standard for Dismissal Under F. R. Civ. P. 12(b)(6).

Pursuant to Fed. R. Civ. P. 8(a)(2), a pleading "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court will grant the motion when the plaintiff fails to allege facts sufficient to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Thus, a pleading must contain "more than labels and conclusion, and a formulaic recitation of the elements of a cause of action" to defeat a motion to dismiss." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It must include "enough detail to provide a defendant with 'fair notice of what the … claim is and the grounds upon which it rests." *Id.*

For the substance of a claim to transcend "the line from conceivable to plausible," a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 570; *see also High Rock Westminister St. LLC v. Bank of Am., N.A.,* C.A. No. 13–500 S, 2014 WL 3867699 (D.R.I. Aug. 6, 2014) (denying motion to amend counterclaims because the proposed amendment would not survive the *Twombly/Iqbal* standard). A complaint is deficient and should be dismissed by the court if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or amounts to a simple mechanical recitation of the elements of a claim. *Iqbal,* 556 U.S. at 678; *see A.G. ex rel. Maddox v. Elsevier, Inc.,* 732 F.3d 77, 80 (1st Cir. 2013); *see also Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 55 (1st Cir. 2012) (the court must "isolate and

ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.").

### 2.       Plaintiffs Lack Standing to Bring this Action

"Courts have often treated motions to dismiss for want of standing as motions to dismiss for failure to state a claim, thus bringing them under the rubric of Rule 12(b)(6)." *United States v. AVX Corp.,* 962 F.2d 108, 114 n. 6 (1st Cir. 1992). Mimicking the standard of Rule 12(b)(6), when ruling on a motion to dismiss for want of standing, the court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501 (1975). However, this formulation does not mean that a court must or should accept every allegation asserted by the complainant as true. Specifically, a court is not obligated under any circumstances to "'credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' nor to honor subjective characterizations, optimistic predictions, or problematic suppositions." *AVX Corp.,* 962 F.2d at 115.

In fact, because standing is fundamental to maintaining suit, burdening the complainant to clearly allege facts sufficient to ground standing is justified, and heightened specificity is obligated at the pleading stage to establish standing. *Id.* at 115 ("the resultant burden cannot be satisfied by purely conclusory allegations."). The complainant is therefore obligated to clearly present facts in the record and cannot rely on facts "inferred argumentatively from averments in the pleadings." *Id.*

Here, Plaintiffs merely allege that upon Bill Markham's death on April 1, 1993, "Bill Markham was survived by his widow and adopted children," and that "Markham Concepts is the successor-in-interest to the intellectual property rights owned by Mr. Markham at the time of his death." SAC, ¶¶ 2, 32. However, despite asking for such documents, Plaintiffs have failed to provide Mr. Klamer or the Link Successors with any will or other testamentary document demonstrating that Markham Concepts or Lorraine Markham is the lawful successor-in-interest to Bill Markham's rights and interests to the Game. Van Loon Decl., Ex. 13. In fact, when asked

to produce the assignment or transfer documents, counsel for Plaintiffs represented that they are "unable to locate a copy of the assignment" and that the original "has probably been destroyed." *Id*.

Where an assignment or transfer is lost, applicable case law and the treatise, Nimmer On Copyright, suggests "clear and convincing evidence should be required to prove a lost assignment, as a way to ameliorate the risk that a party might make 'unsubstantiated claims that [he] had obtained (but subsequently 'lost') the requisite instrument' in order to circumvent the Copyright Act's requirement that all transfers be in writing and signed by the owner." *Tolliver v. McCants*, No. 05 CIV. 10840 (JFK), 2009 WL 1473445, at *2 (S.D.N.Y. May 26, 2009) (quoting 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03[A][5] (2015)). Having provided no written assignment, transfer, instrument of conveyance, or alternative clear and convincing evidence of a transfer of Bill Markham's interest in the Game, Plaintiffs have failed to provide a sufficient basis to assert an ownership or intellectual property interest in the Game, on which the claims alleged against Defendants are based.

Additionally, if Bill Markham never transferred his interest in the Game to the Plaintiffs through a testamentary instrument, his interests are disbursed according to intestate succession. Pursuant to 17 U.S.C. § 304 (c)(2)(A) and (B), "where the author is dead, his termination interest is owned and may be exercised by the widower, holding a one-half interest, and the author's surviving children, holding a one-half interest divided among them." 17 U.S.C. § 304 (c)(2)(A) and (B). Thus, in the case of a grant executed by a person other than the author, termination of the grant may be effected by the author who executed it, or if the author is dead, "by the person or persons who, under clause (2) of this subsection, own and are entitled to exercise *a total of more than one-half of that author's termination interest*." 17 U.S.C. § 304 (c)(1). In the case at hand, Bill Markham was survived by his widow, Lorraine Markham, and his adopted children. SAC, ¶ 32. Under § 304, Lorraine Markham would be entitled to a 50% interest in Bill Markham's rights, and the other 50% interest to be split evenly between his adopted children. As such, Lorraine Markham cannot claim a right to termination in this suit, without first gaining the

consent and joining at least one of Bill Markham's adopted children to this suit. Without proof of a testamentary conveyance of Bill Markham's interest in the Game, Lorraine Markham has failed to provide a sufficient basis to assert entitlements to Bill Markham's termination rights of the Game.

Even if the Court finds that the Plaintiffs have established standing as a rightful successor-in-interest to Bill Markham's interest, which they should not, dismissal of this suit for lack of standing is further warranted by the fact that Plaintiffs' third claim for relief under 35 U.S.C. § 100, 15 U.S.C. §1051, and 17 U.S.C. §§ 101, 304, 203, and 106, is barred pursuant to the work for hire relationship created between Bill Markham and LINK.

Under the Copyright Act of 1909, an employer is deemed the "author" and copyright holder of a work created by an employee acting within the scope of employment. *Forward v. Thorogood,* 985 F.2d 604, 606 (1st Cir. 1993). While originally utilized to address an employer-employee relationship, the doctrine evolved to include commissioned works created by independent contractors. *Id.* Under that framework, the independent contractor is treated as an employee, and the court presumes "copyright ownership in the commissioning party at whose 'instance and expense' the work was done." *Id; see also Siegel v. National Periodical Publications, Inc.,* 508 F.2d 909, 914 (2d Cir.1974) (the work for hire doctrine "is applicable ... when the employee's work is produced at the instance and expense of the employer, or, in other words, when the 'motivating factor in producing the work was the employer who induced the creation....."). Here, Bill Markham was compensated for his work on the Game through both a lump sum and a royalty payment. Van Loon Decl., Ex. 14. Thus, the "expense" requirement for the instance and expense test is met.

The "instance" portion of the test questions whether "the motivating factor in producing the work was the employer who induced the creation." *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 877 (9th Cir. 2009) (citing *Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 206 F.3d 1322, 1326 (9th Cir. 2000)); *Playboy Enter., Inv. v. Dumas,* 53 F.3d 549, 554 (2d Cir. 1995). This inquiry focuses mainly on

the degree to which the "hiring party had 'the right to control or supervise the artist's work."

*Self-Realization Fellowship Church,* 206 F.3d at 1327 (citing Melville B. Nimmer and David

Nimmer, Nimmer on Copyright, § 5.03[B][1][a][l] (1999)). While "the greater the degree of

supervisory power … the more likely it is that the work was created at the commissioning party's

instance," complete control by the hiring party is unnecessary to establish the "instance" element

of the test. *Twentieth Century Fox Film Corp.* 429 F.3d at 880. In fact, "the right to direct and

supervise the manner in which work created need never be exercised." *Martha Graham School*

*and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc.,* 380 F.3d

624, 635 (2d Cir. 2004).

While Bill Markham was not an employee of LINK, he upheld himself in the 1959

Agreement as "an independent contractor" of LINK for work in connection with the Game. Van

Loon Decl., Ex. 14 ("1959 Agreement"). Additionally, within the 1959 Agreement, Bill

Markham not only assigned his intellectual property interests in the Game to LINK in exchange

for a lump sum payment and royalties, but also expressly recognized LINK's right to make

design changes in the Game and "understood that the final decision regarding such changes shall

rest with either LINK or the manufacturer." *Id.* Mr. Klamer's active suggestions and requests for

modifications and changes to the Game throughout the design process, evidences the degree to

which LINK maintained its supervisory power and control over Bill Markham. *Twentieth*

*Century Fox Film Corp.* 429 F.3d at 880 (holding that where the parties had face-to-face

meetings during the writing process, and the writer was provided with notes, comments and

suggested modifications, a significant degree of supervision was demonstrated, and the

"instance" element of the test was satisfied.). In fact, former employees of Bill Markham affirm

that Mr. Klamer frequently visited Bill Markham's studio to oversee the Game's progress,

approve elements of the design, and inform Bill Markham's team of necessary changes to the

prototype. *See* Declaration of Leonard Israel ("Israel Decl."), ¶¶ 5, 7, 8; *see also* Declaration of

Grace Falco Chambers ("Chambers Decl.), ¶¶ 5, 7. As a representative of LINK, Mr. Klamer's

ongoing practice of exercising full authority and approval rights over the Game's progress

clearly demonstrates that the Game was created at the "instance" of LINK.

Additionally, Bill Markham's status as a work for hire is further evidenced by the 1960

copyright registrations to the Game which specifically state, "proprietor of copyright in a work

made for hire." Van Loon Decl., Ex. 15. In fact, such copyright registrations are subject to

judicial notice. *Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257, 261

(2d Cir. 2005) ("the district court was entitled to take judicial notice of Microsoft's federal

copyright registrations, as published in the Copyright Office's registry"). As all of Bill

Markham's contributions to the Game were made pursuant to the work for hire relationship,

which vested original copyright authorship and all corresponding interests of the Game in LINK,

this Court should grant Defendant's motion to dismiss Plaintiffs' third claim for relief dealing

with all copyright interests under 35 U.S.C. § 100, 15 U.S.C. §1051, and 17 U.S.C. §§ 101, 304,

203, 106.

Accordingly, this Court should grant Defendant's motion to dismiss Plaintiffs' third

claim for relief, on the ground that Plaintiffs have failed to demonstrate, and therefore lack

standing to bring these claims.

### 3.  Plaintiffs' Claims Are Barred by Res Judicata

Affirmative defenses may be adjudicated on a motion to dismiss for failure to state a

claim. *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 16 (1st Cir. 2003); *Blackstone*

*Realty LLC v. FDIC,* 244 F.3d 193, 197 (1st Cir. 2001). The affirmative defense of res judicata is

no exception. *Id.* ("Even without a motion, 'a court on notice that it has previously decided an

issue may dismiss the action sua sponte, consistent with the res judicata policy of avoiding

judicial waste.").

Even if the Court finds that standing is sufficiently pled, Plaintiffs' claims are still barred

on the ground of res judicata. Several claims asserted by Plaintiffs relate to claims and conduct

that were previously dismissed with prejudice pursuant to the July 9, 1989 Settlement Agreement

which was entered into to resolve a 1989 California Superior Court action brought by Bill

Markham against Mr. Klamer and the Link Successors. Van Loon Decl., Ex. 16 ("Settlement Agreement"). Specifically, in the 1989 litigation, Bill Markham alleged he was "the inventor of a boardgame called 'the Game of Life'" and sought a judicial determination that he was "the owner of all the copyrights, trademarks, patents, patent applications and all other rights to the Game." Van Loon Decl., Ex. 17 (1989 Second Amended Complaint) ¶¶ 7, 26(g). Plaintiffs' Second Amended Complaint in the instant action alleges a nearly identical assertion that "Bill Markham…designed, developed, invented, and authored the Game in 1959" and seeks a declaratory judgment that "Bill Markham was and is the sole creator, designer, developer, inventor, author and owner of the Game and all of its intellectual property." SAC ¶ 17, 80(a). As such, those claims are barred by res judicata, or claim preclusion. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (holding a federal court must give a state court judgment the same preclusive effect as would be given that judgment under the state law in which the judgment was rendered). Thus, to determine the preclusive effect of the California state court action, the court must apply California law.

In California, the application of claim preclusion requires satisfaction of three elements: (1) "was the previous adjudication on the merits, (2) was it final, and (3) does the current dispute involve the same 'claim' or 'cause of action'?" *Robi v. Five Platters, Inc.,* 838 F.2d 318, 324 (9th Cir. 1988). In the present action, the first two elements of a claim for res judicata are satisfied. In California, a "final judgment on the merits" serves as a "complete bar to further litigation on the same cause of action." *White v. City of Pasadena,* 671 F.3d 918, 927 (9th Cir. 2012). It is well settled that "a dismissal with prejudice following a settlement, constitutes a final judgment on the merits." *In re Estate of Redfield*, 193 Cal. App. 4th 1526, 1533 (2011); *Int'l Union of Operating Eng's – Employers Construction Indus. Pension, Welfare and Training Trust Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (dismissal of an action "with prejudice pursuant to a settlement agreement constitutes a final judgment on merits and precludes parties from reasserting the same claim in a subsequent action."); *see also Goodman Ball, Inc. v. Mach II Aviation, Inc.,* No. C 10–01249 WHA, 2010 WL 4807090, at *8 (N.D. Cal. Nov. 19, 2010)

("The dismissal of a patent infringement (or declaratory judgment of patent invalidity) action with prejudice pursuant to a settlement agreement constitutes a final judgment on the merits for claim preclusion purposes."). In fact, the term "dismissal with prejudice" is synonymous with "final judgment on the merits." *Hells Canyon Preservation Council v. U.S. Forest Service,* 403 F.3d 683, 686 (9th Cir. 2005) (citing *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956 (9th Cir. 2002)); *see also In re Estate of Redfield,* 193 Cal. App. 4th at 1533. Here, the specific language of the 1989 Settlement Agreement reads, "this agreement *settles all* issues and *claims of all parties* in the present litigation … The parties shall forthwith *dismiss the pending litigation, with prejudice*." Settlement Agreement ¶ 7. By expressly dismissing the litigation with prejudice, the parties intended the Settlement Agreement to constitute a final judgment on the merits.

The third and final element of claim preclusion is also satisfied. In determining what constitutes a complete bar to further litigation on the same cause of action, California applies "the primary rights theory, under which the invasion of one primary right gives rise to a single cause of action." *White,* 671 F.3d at 927. Under this theory, "a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty." *Brodheim v. Cry,* 584 F.3d 1262, 1268 (9th Cir. 2009). The theory looks to whether a claim arises from the particular harm suffered, not the specific theory of the litigant.

"If two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads *different theories* of recovery, seeks *different forms* of relief and/or adds *new facts* supporting recovery." *Gonzales v. California Department of Corrections,* 739 F.3d 1226, 1233 (9th Cir. 2014). Additionally, claim preclusion extends not only to bar claims actually litigated in the prior proceeding, but also to bar claims that ***could have been litigated*** in the prior proceeding. *Gonzales,* 739 F.3d at 1233 ("If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised."); *see also Hawkins v. Spelling Entertainment Group,*

[13]

*Inc.*, No. 98-56580, 2000 WL 576425, at *1 (9th Cir. May 11, 2000) (res judicata properly barred a claim for declaratory relief regarding copyright ownership, even where the issue had not been decided in the earlier proceedings, because "the same essential evidence," "the same alleged basic right," and "the same goal" of the litigation would be asserted in the two actions, and the claimant had an opportunity to resolve the claim in the prior action) (citing *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir.1986)).

Here, the causes of action in the 1989 litigation and current proceeding are identical and stem from the same primary right alleged in the Second Amended Complaint. As mentioned, to support its claim for termination entitlements, Plaintiffs expressly seek declaratory judgment that "Bill Markham was and is the sole creator, designer, developer, inventor, author, and owner of the Game and all of its intellectual property …" and that all intellectual property to the Game vested in Bill Markham at its inception, including rights under §§ 100, 101, 203 and 304. SAC, ¶¶ 80(a), 80(b). Again, this same request for declaratory judgment was made in the 1989 litigation. There, Bill Markham pled for a "judicial determination of the rights and duties of the parties hereto under the Assignment Agreement, and of Plaintiff's interest in the Game, in all of the rights associated therewith." 1989 Second Amended Complaint, ¶ 27. Specifically, Bill Markham asserted that he was the "inventor of a boardgame called 'The Game of Life" and sought declaratory relief that he was "the owner of all of the copyrights, trade-marks, patents, patent applications and all other rights to the Game." *Id.* at ¶¶ 7, 26(g). The claim for declaratory judgment on the issue of authorship in this present action is identical to the 1989 litigation, and is therefore precluded by the disposition with prejudice of the 1989 litigation.

In fact, the issue of authorship of the Game was not only squarely put at issue in Bill Markham's first set of requests for admission, but also discussed at length in Mr. Klamer's deposition in the 1989 litigation. Van Loon Decl., Ex. 18 (Defendants' Responses to Requests for Admission, Set No. One ("RFAs No. 1")), No. 1; Van Loon Decl., Ex. 19 (Deposition of Reuben Klamer ("Klamer Depo.")), 81:6-16, 90:19-93:14. Additionally, such documents are subject to judicial notice on the grounds that they "can be accurately and readily determined

[14]

from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Additionally, even if the methods of relief are not identical and "flow from different facts," preclusion still applies where the theories of recovery, forms of relief and supporting facts are different, so long as the same primary right is at issue. *Gonzales,* 739 F.3d at 1233. Such is the case here, as both actions involve the same primary right, i.e., copyright ownership as it relates to the Game.

In addition, the claims involve the same essential evidence and the same goal of preventing Defendants from exploiting the intellectual property of the Game. Furthermore, the issue of authorship in the 1989 litigation could have been resolved, but the parties voluntarily forfeited the right to do so. As such, the same evidence surrounding the claim of authorship in this case has already been explored in depth and would constitute the same essential evidence to be presented in the current action. Likewise, the goal of preventing Defendants from exploiting their rights and entitlements to the Game in the current action is identical to the motivation behind the declaratory judgment claim regarding authorship in the 1989 litigation. Thus, declaratory relief claims concerning authorship or ownership relating to the Game should be precluded in the current action.

Based on the foregoing, the Court should grant Defendant's motion to dismiss Plaintiffs third claim of relief for declaratory judgment on the grounds that the issue of ownership of the Game is barred by res judicata.

### 4.    Plaintiffs' Claims are Barred by Collateral Estoppel

As previously mentioned, an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim. *In re Colonial Mortgage Bankers Corp.,* 324 F.3d at 16; *Blackstone Realty LLC v. FDIC,* 244 F.3d 193, 197 (1st Cir. 2001). The affirmative defense of collateral estoppel falls squarely within this framework. S*ee generally Ramallo Bros. Printing, Inc. v. El Dia, Inc.,* 490 F.3d 86 (1st Cir. 2007) (affirming the district court's dismissal of appellant's complaint on grounds of collateral estoppel and res judicata).

Plaintiffs' claims related to ownership of the intellectual property of the Game are

likewise barred under the doctrine of collateral estoppel. Under both California and federal law, collateral estoppel, or issue preclusion, applies where the following elements are established: (1) "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *See Hydranautics v. FilmTec Corp.,* 204 F.3d 880, 885 (9th Cir. 2000).

First, the issue sought to be relitigated in the current proceeding is the issue of authorship of the Game giving rise to all intellectual property ownership and entitlements related to the Game. This issue not only underlies Plaintiffs' claim for declaratory relief on the issue of ownership of the Game, but also serves as the basis for the claim that it possesses termination rights under 17 U.S.C §§ 203 and 304. As mentioned, Plaintiffs seek a declaratory judgment that "Bill Markham is the sole creator, designer, developer, inventor, author, and owner of the Game and all of its intellectual property, including without limitation as those words are defined under 17 U.S.C. § 101, *et seq*; 35 U.S.C. § 100, *et seq.*; and 15 U.S.C. §§ 1051, *et seq.*" SAC, ¶ 80(a). That same issue was litigated in the 1989 litigation where Bill Markham pled for declaratory relief that he was the "owner of all of the copyrights, trade-marks, patents, patent applications and all other rights to the Game." 1989 Second Amended Complaint, ¶ 26(g). As such, both the past and present litigation deal with the identical underlying issues of authorship and ownership of the Game.

Next, the language of the Settlement Agreement specifically settling and dismissing the claims with prejudice demonstrates the parties' intent to resolve the 1989 litigation via a final judgment on the merits. For the purposes of collateral estoppel, when a judgment is entered by the parties' consent or stipulation prior to trial on the issues, the general principle is that an issue may not be said to have been fully, fairly or actually litigated. Restatement (Second) of Judgments § 27 cmt. (e). However, an exception exists where "the [issue-preclusive] effect results not from the rule of [§ 27] but from an agreement manifesting an intention to be bound." *See Id.*; *see also Arizona v. California,* 530 U.S. 392, 414 (2000) (settlement may occasion issue

[16]

preclusion where it is clear that the "parties intend their agreement to have such an effect").

Where the parties clearly intend to create issue-preclusive effect, the settlement agreement articulating that intent constitutes a final judgment on the merits of the issues raised in that action. *See Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1383 (9th Cir. 1978) ("The fact that this judgment was the result of the parties' stipulation of settlement does not detract from its being considered a conclusive determination of the merits of that action for purposes of collateral estoppel where, as here, it is clear that the parties intended the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action."). Notably, the Settlement Agreement states, "This agreement settles *all issues* and claims of all parties in the present litigation…The parties shall forthwith dismiss the *pending litigation, with prejudice*." Settlement Agreement, ¶ 7. The use of the express language that "*all issues*" of the parties are dismissed "*with prejudice"* demonstrates the clear intent of the parties to be bound by the contract and to "adjudicate once and for all the issues raised in [the] action." *Green,* 577 F.2d at 1383.

Lastly, Plaintiffs claim to be successors-in-interest to the rights of Bill Markham. While Defendants contend that Plaintiffs insufficiently establish their rights to Bill Markham's intellectual property in the Game, if the court were to find this assertion true, Plaintiffs would be in privity with Bill Markham, and as such are bound by the Settlement Agreement. Settlement Agreement, ¶ 9 (the Settlement Agreement was drafted with the specific intent of "bind[ing] and inur[ing] to the benefit of the parties' successors in interest."). California courts define privity as "referring to a mutual or successive relationship to the same rights or property, or to such an identification in interest of one person with another as to represent the same legal rights." *See Takeda v. Northwestern Nat. Life. Ins. Co.,* 765 F.2d 815, 820 (9th Cir. 1985); *see also Lee v. JP Morgan Chase Bank, N.A.*, Case No. 2:15-cv-04061-CAS(GJSx), 2015 WL 5554006, at *5 (C.D. Cal. Sept. 21, 2015). The main question in determining whether privity exists is whether the relationship between the party to be estopped and the party in a prior litigation is "sufficiently close" so that application of collateral estoppel is justified. *Lee,* 2015 WL 5554006 at *5. Such

[17]

relationships include that of a "testator and executor, ancestor and heir, assignor and assignee, grantor and grantee, and lessor and lessee." *Sawyer Nurseries v. Galardi,* 181 Cal. App. 3d 663, 672 (1986). Plaintiffs allege that following the death of Bill Markham, he was "survived by his widow Lorraine Markham and his adopted children" and that "Markham Concepts serves as Mr. Markham's successor-in-interest to the intellectual property rights owned by Mr. Markham at the time of his death, including but not limited to the rights with respect to the Game." SAC, ¶ 32. If this Court were to agree with Plaintiffs' assertions that they are the alleged successors-in-interest to Bill Markham, Plaintiffs are in privity for the purposes of issue preclusion.

Even assuming Plaintiffs have sufficiently pled standing, which they have not, every element of both collateral estoppel and res judicata are met. Therefore, if the Court does not dismiss this action for lack of standing, it should grant Defendant's motion to dismiss Plaintiffs' third cause of action for declaratory judgment on the grounds that it is barred by res judicata and collateral estoppel.

**B.**     <u>**This Action Should be Transferred to the Central District of California Because the Interests of Convenience and Justice are Better Served by Adjudication of This Matter in California**</u>

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The transfer provision effectively prevents the waste "of time, energy, and money" and protects "litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. The Barge FBL-585 et al*., 364 U.S. 19, 26 (1960). This court has recognized and granted motions to transfer pursuant to 28 U.S.C. § 1404(a) where the circumstances are warranted. *See generally McEvily v. Sunbeam-Oster Co., Inc.,* 878 F. Supp. 337, 343-44 (D.R.I. 1994) (district court granted a motion to transfer where the convenience of the parties, convenience of the witnesses, ease of access to evidence, local interest in deciding conflicts at home, and burden on citizens of the forum with jury duty warranted transfer of the case to Florida).

First and foremost, transfer of this action to the Central District of California is justified because the Plaintiffs' claims could have been brought there originally, and, in fact, Plaintiff Markham did originally file a complaint against Mr. Klamer in California that was never served which encompassed the same issues pled here. *Elbalah v. Republic Ins. Co.,* 879 F. Supp. 3, 4 (D.R.I. 1995) (transfer of a case to another jurisdiction may be appropriate if the action could have been brought in that jurisdiction originally, and the defendant is able to establish that the balance of convenience weighs in his favor); *see also* Van Loon Decl., Ex. 20. Additionally, almost all of the events giving rise to this action occurred in California which therefore holds the strongest connection to the parties, witnesses, evidence and governing law in this case. It is therefore in the interest of justice and convenience to permit transfer of this litigation to California. *Id.*

In considering a transfer to a different venue, the district court has broad discretion. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 30–33 (1955) (holding that "for the convenience of parties and witnesses, in the interest of justice," the District Court had broad discretion in deciding whether to transfer a case under Section 1404(a)). In addition to convenience and fairness, a court must consider both private and public factors in deciding whether it should grant the request to transfer the case to another venue. This Court considers the following factors relevant to private interests: (1) "the availability of compulsory process for attendance of unwilling witnesses; (2) the cost of obtaining attendance of willing witnesses; (3) the relative ease of access to sources of proof; (4) the possibility of view of the premises, if such a view would be appropriate to the action; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive." *McEvily,* 878 F. Supp. at 343. The factors relevant to the public interest include: (1) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (2) the avoidance of unnecessary problems in conflict of laws …; (3) the local interest in having localized controversies decided at home; (4) the unfairness of burdening citizens in an unrelated forum with jury duty; and (5) administrative difficulties from court congestions." *Id.* at 344.

[19]

On a motion to transfer pursuant to § 1404(a), "the trial court must consider and balance all the relevant factors to determine whether or not the litigation would proceed more conveniently and the interests of justice be better served by transfer to a different forum . . ." Wright, Miller & Cooper, 15 Federal Practice and Procedure: Jurisdiction 3d § 3847. Here, all of the pertinent factors overwhelmingly favor transfer of this action to the Central District of California. Therefore, this Court should grant Mr. Klamer's Motion to Transfer any surviving claims of this case.

### 1.   The Convenience of the Witnesses Supports a Transfer

The convenience of the witnesses is a primary, and the most important factor in granting a motion to transfer under §1404(a). *See Elbaha,* 879 F. Supp. at 4 n. 1; *see also McEvily,* 878 F. Supp. at 344-45 ("[t]he convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)"). Parties must state with particularity, what witnesses will be called, the nature of their testimony, and the extent of what their inconvenience will be. *McEvily,* 878 F. Supp. at 345.

The vast majority of the relevant witnesses relating to the allegations in Plaintiffs' Complaint reside in California. Mr. Klamer currently lives in Southern California. SAC, ¶ 5; Klamer Decl., ¶ 2. He is 93 years old with limited mobility and is confined to wheel chair assistance. Klamer Decl., ¶ 7. Mr. Feiman, successor-in-interest to the late Ms. Atkins, also lives in Southern California. Van Loon Decl., Exs. 2, 6. Additionally, named Defendants, Sharon Linkletter, Michael Linkletter, and Laura Linkletter are all residents of California. Van Loon Decl., Exs. 5, 7, 8. Another important percipient witness, Leonard Israel, who worked with Bill Markham at the time the Game was created and confirms that Mr. Klamer was intimately involved in the conception and development of the Game, is 91 years old and lives in Santa Monica, California. Van Loon Decl., Ex. 21; *see also* Leonard Decl. Furthermore, not only are the majority of the witnesses California residents, but the claims asserted by Plaintiffs, to which the named Defendants are signatories, also revolve around California governed contracts.

While Hasbro, Inc. has its principal place of business in Rhode Island, it has substantial

ties with California. For example, Hasbro has multiple offices throughout California,[4] has several entities registered with the California Secretary of State,[5] and has a registered agent for service of process in California.[6]  Van Loon Decl., Exs. 11, 12. Additionally, Hasbro offers California employment to in-state-citizens, with current job postings on its career webpage in Burbank, Bakersfield, North County, Orange County, and Pleasant Hill/Concord. Van Loon Decl., Ex. 22. By maintaining continuous contacts with California, Hasbro has purposefully availed itself of the privileges of conducting business in California, and must anticipate the possibility of participating in litigation in California. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) ("[w]hen a corporation 'purposefully avails itself of the privilege of conducting activities within the forum states,' it has clear notice that it is subject to suit there."). In fact, Hasbro has initiated and filed suit in the Central District of California on several occasions, intentionally availing itself of the court's jurisdiction. Van Loon Decl., Ex. 23.

In the current dispute, Hasbro has even stated that it is on the side-lines of the ownership dispute between Defendants and Plaintiffs, in papers filed with the Court. Hasbro's Motion for Extension of Time, Doc. No. 17. Additionally, as a large corporation, Hasbro has ample resources to carry on litigation in California and would be least burdened by a California venue, as opposed to the majority of the Defendants who would incur substantial cost and inconvenience, should the case continue to be litigated in Rhode Island.

Mr. Klamer, a Defendant in this action and a Southern California resident, is 93 years old and confined to a wheelchair. Klamer Decl., ¶¶ 2, 7. Mr. Klamer was one of the original founders of LINK and the inventor of the Game. Klamer Decl., ¶¶ 3-5. As a named Defendant and

---

[4] Hasbro Studios LLC has its principle address at 2950 N. Hollywood Way #100, Burbank, CA 91505.

[5] Hasbro, Inc., Hasbro Promotions and Direct, Inc., Hasbro Managerial Services LLC, and Hasbro Studios LLC are all active entities registered with the California Secretary of State.

[6] CT Corporation System, with its principle address at 818 W. Seventh St., Suite 930, Los Angeles, CA 90017, is the registered agent for service of process in California for Hasbro, Inc. and Hasbro Promotions and Direct, Inc.

inventor of the Game, Mr. Klamer has the most important testimony available to offer in this litigation. He will attest to his encounters with Milton Bradley in 1959 during the Game's inception, his creative process for how he conceived and designed the Game, the work for hire relationship between LINK and Bill Markham since 1959, his authority and control over Bill Markham with respect to the design and development of the Game, his ongoing contributions and modifications to the design of the Game, and will testify as to every major contract at issue in this litigation. *Id.* at ¶ 4, 5. Mr. Klamer is a signatory to nearly every contract addressed by Plaintiffs in their Complaint, including but not limited to the 1959 License Agreement (Van Loon Decl., Ex. 24 ("License Agreement")), the 1959 Agreement, the Settlement Agreement, and the 2015 US Bank Escrow Agreement (Van Loon Decl., Ex. 10 ("2015 US Bank Escrow Agreement")). Klamer Decl., ¶ 6. Additionally, Mr. Klamer is a signatory to the various TV Option Agreements and Amendments under which Plaintiffs improperly allege royalties are due to them. Mr. Klamer will testify as to the contents of these agreements, the intentions of the parties to those agreements, the royalty arrangements set forth by those agreements, and any monies, or lack thereof, earned under those contracts. *Id.* at ¶ 6. Therefore, Mr. Klamer's testimony is of utmost importance to this case.

Due to his advanced age and inability to walk, Mr. Klamer has difficulty traveling long distances. *Id.* at ¶ 7. Additionally, Mr. Klamer has limited mobility and is confined to wheel chair assistance. *Id.* As the course of this litigation progresses, Mr. Klamer has serious concerns regarding his ability to travel and maneuver throughout Rhode Island without significantly jeopardizing his health. *Id.* at ¶¶ 7-9. Requiring Mr. Klamer to travel nearly 3,000 miles at his age and in his physical condition would be burdensome and may exacerbate his existing health issues. *Id.* Courts have firmly established that "[t]he health concerns of a party or witness can be an important factor in the determination of whether a §1404(a) transfer is proper." *NGC Worldwide, Inc. v. Siamon, No.* 3:02 CV 1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. April 21, 2003) (quoting *Brownell v. La Salle Steel Co.*, 128 F. Supp. 548 (D. Del. 1955)); *Corbello v. Devito*, No. 1:07 CV 985, 2008 WL 2097435, at *6 (E.D. Tex. May 19, 2008) (strain of

requiring 80-year-old defendant to travel over 1500 miles outweighed fact that plaintiff was a Texas resident and that the claim arose under Texas law); *Blum v. Salomon*, No. 06 VC 3149 WHP, 2006 WL 3851157, at *4 (S.D.N.Y. Dec. 28, 2006) (burden on the elderly defendant to travel from Rhode Island to New York would be significant, therefore warranting an order to transfer the case).

Additionally, travel for Mr. Klamer is increasingly difficult due to the fact that there are no direct flights from San Diego, California to Providence, Rhode Island. *Id.* at ¶ 7, Ex. 1. Furthermore, the average flight from San Diego to Rhode Island alone is 7 to 11 hours. *Id.* This far exceeds the two hour drive it would take Mr. Klamer to travel from San Diego to the Central District of California if this case was transferred to California. *Id.* at ¶ 7, Ex. 2. In addition, a simple car ride would be significantly less strenuous on Mr. Klamer's body as opposed to traveling to Rhode Island, which would require multiple flights as well as travel by car. *Id.* at ¶ 7. Given the status of Mr. Klamer's mobility and age, transfer to the Central District of California is warranted and necessary to allow him to exercise his right to testify at trial and to participate in the various stages of this litigation.

Mr. Feiman, is the successor-in-interest to Ms. Atkins. Van Loon Decl., ¶ 6. Ms. Atkins was the widow of Irvin Atkins, who was one of the original founders of LINK. SAC, ¶ 6. Since Mr. Atkins' passing in 2005, Ms. Atkins acted as the sole trustee of the Irvin S. and Ida Mae Atkins Family Trust as successor-in-interest to Mr. Atkins until her death exactly one week ago, on January 27, 2016. *Id.* Ms. Atkins was a signatory to many of the contracts related to the Game, including The Game of Life (the "Property") - Amendment No. 2 to Option Agreement, executed on November 1, 2005, The Game of Life (the "Property") - Amendment No. 2 to Option Agreement, executed on November 15, 2007, and The Game of Life (the "Property") - Amendment No. 3 to Option/Purchase Agreement ("Amendment No. 3"), executed on January 28, 2011. Van Loon Decl., Ex. 25; Van Loon Decl., Ex. 3. Ms. Atkins passed away on January 27, 2016, a week before filing this Motion, leaving Mr. Feiman as her successor-in-interest. Van Loon Decl., ¶¶ 2, 6. Mr. Feiman can therefore attest to the various royalty structures, payments

[23]

and contracts previously entered into by Ms. Atkins and Mr. Atkins. Thus, he has valuable testimony to offer at trial, as a representative of a named Defendant.

Mr. Feiman is a resident of Los Angeles, California. Van Loon Decl., Ex. 2. As such, travel to Rhode Island would cause a substantial burden and inconvenience as there are no direct flights from Los Angeles to Providence, Rhode Island. Van Loon Decl., Ex. 26. Additionally, the average flight to Providence is 7 to 11 hours in comparison to the minimal duration it would take Mr. Feiman to drive to the Central District of California. *Id.* As a representative of Ms. Atkins, a named Defendant in this action, transfer of this case to the Central District of California is warranted to allow Mr. Feiman the convenience of participating in this trial.

Art Linkletter was one of the original founders of LINK. Since his passing in 2010, his daughters Sharon Linkletter, a citizen of California and resident of Los Angeles County, and Dawn Linkletter Griffin, a citizen of Arizona, have held positions as the co-trustees of the Linkletter Administrative Trust. Van Loon Decl., Ex. 6. Through their roles as successors-in-interest to their father, Mr. Linkletter, they have signed contracts on behalf of the estate such as The Game of Life (the "Property") – Amendment No. 3 to Option/Purchase Agreement ("Amendment No. 3") and the 2015 US Bank Escrow Agreement. Van Loon Decl., Exs. 3, 10. Plaintiffs have asserted several claims regarding the specific contracts to which Sharon and Dawn Linkletter have been signatories. Thus, Sharon and Dawn Linkletter can testify as to the terms of the agreement, and any royalty payments received, or lack thereof, under the respective agreements. Specifically, with regard to Amendment No. 3 to which Plaintiffs assert they are owed royalties, although no royalties were ever earned under those contracts. Additionally, they can attest to any other monies earned on preexisting contracts to which Mr. Linkletter was an original signatory. Thus, as named Defendants, they have valuable testimony which ought to be offered at trial.

Sharon Linkletter is a resident of Calabasas, California and Dawn Linkletter is a resident of Sedona, Arizona, making travel to Rhode Island increasingly inconvenient. SAC, ¶¶ 7, 8; Van Loon Decl., Exs. 4, 5. Both Sharon Linkletter and Dawn Linkletter will experience the same

inconvenience of the burdensome travels imposed on Mr. Klamer. For instance, there are no direct flights from either Los Angeles, California, or Phoenix, Arizona, to Providence, Rhode Island. Van Loon Decl., Exs. 26, 27. Additionally, the average flight from Los Angeles or Phoenix to Rhode Island is 7 to 11 hours. *Id.* This is in sharp contrast to the 45 minute drive necessary to travel from Calabasas to the Central District of California, or the 75 minute direct flight necessary to fly from Phoenix to Los Angeles. Van Loon Decl., Exs. 28, 29. Given that Sharon Linkletter is a citizen of California, and Dawn Linkletter is a citizen of Arizona, a neighboring state, transfer to the Central District of California is warranted in the interest of convenience to ensure that these named Defendants are able to exercise their right to testify at trial and to participate in the various stages of this litigation.

Furthermore, Michael Linkletter, Laura Linkletter Rich, and Dennis Linkletter, together with Sharon and Dawn Linkletter are trustees under the Art and Lois Linkletter Revocable Trust. Van Loon Decl., Ex. 10. As such, they are signatories to the 2015 US Bank Escrow Agreement which is relevant to Plaintiffs' claims regarding royalty arrangements. *See* SAC, ¶ 98; *See also* Van Loon Decl., Ex. 10. Additionally, as defendants to this suit, they can testify as to any royalty payments earned on preexisting contracts to which Mr. Linkletter was the original signatory and can attest to their general relationship with Plaintiffs with respect to the 1959 Agreement, Settlement Agreement and other agreements relevant to the royalty arrangements at issue. SAC, ¶¶ 81-91, 119-124. While Dennis Linkletter's current domicile of Indonesia bears a neutral effect on this analysis, Laura Linkletter Rich resides in Menlo Park, California and Michael Linkletter resides in Laguna Beach, California. Van Loon Decl., Exs. 7, 8. As was the case above, there are no direct flights from San Francisco, California, or Orange County, California, to Providence, Rhode Island, and the average flight duration for each Defendant ranges from 7 to 11 hours. Van Loon Decl., Exs. 30, 31. This is far more inconvenient than the 90 minute flight from San Francisco to Los Angeles, and the one hour drive from Laguna Beach to the Central District of California. Van Loon Decl., Exs. 32, 33. Thus, travel will be burdensome to the Defendants if suit is maintained in Rhode Island. In the interest of convenience, transfer to the Central District

[25]

of California is therefore warranted to provide these named Defendants easy access to participate in the pending litigation.

Mr. Israel is an important third party witness whom is able to testify as to the working relationship between Bill Markham and Mr. Klamer at the time of the Game's production. Mr. Israel was a pay stub artist and eventually became an art director for Bill Markham. Israel Decl., ¶ 1. He can testify generally as to the control Mr. Klamer had over the design elements of the project as well as Mr. Klamer's independent contributions to and authorship of the Game. Israel Decl., ¶¶ 2-5, 7, 8. This is highly relevant and important to Plaintiffs' claim for declaratory judgment on the issue of authorship of the Game. Mr. Israel is currently a resident of Santa Monica, California and is 91 years old. Van Loon Decl., Ex. 21; *see generally* Israel Decl. Given Mr. Israel's age, there are serious concerns as to whether he will be able to make the arduous trip to Rhode Island to testify in this trial. As such, he will be inconvenienced if forced to travel to Rhode Island to testify in this trial, further supporting Defendant's request to transfer this case to California.

Plaintiff, Lorraine Markham, is a resident of Las Vegas, Nevada. SAC, ¶ 3. Likewise, Plaintiff, Markham Concepts is a Nevada corporation with its principle place of business in Las Vegas, Nevada. *Id.* at 2. Both Plaintiffs would therefore benefit tremendously from the convenience of transferring this litigation to the Central District of California. While Plaintiffs did choose to file suit in a Rhode Island forum, Nevada is a California neighboring state, with the potential to provide Plaintiffs with quicker and less arduous travels. In fact, Plaintiffs reside within 300 miles of Los Angeles, California, far closer than Plaintiffs' 2,700 mile travel to Rhode Island. Further, Mr. Klamer will incur substantial costs in the process of litigating this case in Rhode Island related to travel fares and costs of accommodation. The same is likely true for the remaining Defendants, who could cut travel costs if transfer to the Central District of California was granted.  To the extent that there are unidentified percipient witnesses that could provide testimony to this action, those witnesses will likely be located in California. At the time of the Game's creation, both Bill Markham's company and LINK were located in California. As

[26]

such, any employees or individuals who worked in connection with the Game at that time would likely work and/or reside in California. Allowing the matter to be resolved in California would be the most convenient location for the majority of the aforementioned witnesses who currently reside in California and in the bordering states. The disruption to their lives in participating in this litigation will be significantly lessened if the matter is transferred to California. As outlined above, the convenience is especially important for the elderly defendants who are unable to safely travel given their current physical conditions.

Accordingly, none of the parties, with the exception of Hasbro have ties to Rhode Island for the purpose of this case. However, all of the parties, including Plaintiffs, have significant ties to California, either through their residency or through their contractual obligations set forth in California, including Hasbro. Thus, transfer to California is appropriate given the current circumstances. *Maleknieaz v. New York University*, C.A. No. 05-30285, 2006 WL 2521406, at *3 (D. Mass. 2006) (the convenience of the witnesses weighed in favor of transfer to the Southern District of New York where virtually all of the prospective party witnesses reside in New York in contrast to Plaintiff, who is the only witness, whether a party or non-party, who resides in Massachusetts.).

### 2.    The Location of Evidence Supports a Transfer

"The location, transportation and storage of a large quantity of documents is a factor that can militate in favor of transfer." *McEvily*, 878 F. Supp. at 348. The documents and other evidence that is relevant to this case includes without limitation: (1) the contracts relevant to the royalty arrangements, including but not limited to the License Agreement, 1959 Agreement, Settlement Agreement, and 2015 US Bank Escrow Agreement, all of which were executed in California; (2) communications, handwritten notes and photographs regarding the inception, construction and preliminary versions of the Game; (3) personal email communications, letters, and personal records related to the creation of the Game, the various royalty agreements and third party licensing deals; (4) and the company documents of LINK and California Product Development, Bill Markham's former company, related to the Game. All such documents are

located in California or Nevada, where Plaintiff resides, whereas the only documents located in Rhode Island are those contracts held by Hasbro. Additionally, while the Rhode Island contracts have already been electronically produced by Hasbro, the California superior court cases are not electronically available. Thus, the collection, processing, and maintenance of the documents and evidence is easier, and less costly for the parties in California rather than Rhode Island while placing an insignificant burden on Hasbro at most.

Therefore, the Plaintiffs cannot offer compelling reasons that the defendants should bear the legal cost of transporting documents and witnesses to Rhode Island from California and Arizona, in order to defend against Plaintiffs' unproven allegations. Such a requirement would impose higher costs associated with discovery and litigation for all parties, including Plaintiffs. As such, the consideration of the convenience of the witnesses and location of the bulk of the evidence warrants transfer of the matter to the Central District of California. *See* 28 U.S.C. § 1404(a).

### 3.   The Convenience of the Parties Supports a Transfer

The plaintiff's choice of venue is typically entitled to deference. However, the burden on the defendant to demonstrate that transfer of venue is appropriate under the circumstances is "lightened" when the plaintiff is not suing on her "home turf" or at the "site of the activities at issue in the law suit." *McEviuly*, 848 F. Supp. at 344. In the present case, the Court should give the Plaintiffs' choice of forum, minimal weight.

The Plaintiffs' preference to litigate this action in Rhode Island should be entitled to little weight because they have chosen not to bring suit on their "home turf" as they are both Las Vegas, Nevada residents. Therefore, deference to their chosen forum is unnecessary. Additionally, the Plaintiffs' decision to hire New York counsel is of no consequence, because the convenience of counsel may not factor into a court's decision to transfer venue. *Id.* (the fact that plaintiff hired Rhode Island counsel is "entitled to little, if any, weight"); *U.S. ex rel. Ondis v. City of Woonsocket, Rhode Island*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) (the convenience of counsel is not to be considered in determining whether to transfer a case to a different venue.)

[28]

As mentioned, Plaintiffs are residents of Las Vegas, Nevada, not Rhode Island. Therefore, maintenance of this suit in California, rather than Rhode Island, will not be any more convenient to the Plaintiffs. In fact, Plaintiffs' reside within 300 miles of Los Angeles, California, far closer than Plaintiffs' 2,700 mile travel to Rhode Island. Mr. Klamer lives in Southern California and suffers from serious health problems. Additionally, four other named Defendants live in California and would be significantly inconvenienced by the necessity of litigating this case in Rhode Island. Further, Leonard Israel, a percipient witness, resides in Los Angeles, California. Given the facts, Plaintiffs cannot, in good faith, assert that the transfer "merely shifts the inconvenience" from Mr. Klamer and the LINK Successors to her, because Plaintiffs are residents of Las Vegas, and as such, would enjoy far more convenience through a California forum as compared to a Rhode Island forum. *McEvily*, 878 F. Supp. at 334.

### 4.    California Law Applies to the Action, Supporting Transfer

Transfer of this action further promotes the interest of justice by allowing a federal court in California to address Plaintiffs' claims involving contracts governed by California law. A federal District Court exercising its diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). It is well settled by the Rhode Island Supreme Court that the conflict of laws doctrine provides that the law of the state where the contract was executed governs. *DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474, 484-85 (D.R.I. 2004) ("acceptance of the offer, or 'the final act which constitute[s] the making of the contract,' determines the state of completion."). In the case at hand, many of the pertinent contracts referenced by the Plaintiffs' claims are governed by and require application of California law. Most importantly, the Settlement Agreement is governed by California law, as it was entered into by Bill Markham, Mr. Klamer, Mr. Linkletter and Mr. Atkins, all of whom were California residents at the time, and was executed in California as a settlement to a Los Angeles Superior Court case. Van Loon Decl., Ex. 16.

In addition, the 1959 Agreement between LINK and Bill Markham was "executed at Los Angeles, CA" on October 20, 1959. Van Loon Decl., Ex. 14. Plaintiffs' request for declaratory

judgment on the issue of authorship of the Game will rely heavily on the intent of the parties when contracting and selecting the language of the agreement, as analyzed under California law. The 1989 Settlement and Mutual Release Agreement between Milton Bradley and Bill Markham was also executed as a settlement to a California proceeding and made specific reference to California waiver provisions, demonstrating intent for the agreement to be governed by California law. Van Loon Decl., Ex. 34.  Finally, the License Agreement was sent to Mr. Klamer for execution in California. He accepted the terms of the agreement and created a binding contract when he signed the contract in California as evidenced by the California notary verification on September 21, 1959, consistent with the execution language which reads "the parties hereto have executed this License Agreement this 21st day of September 1959." Thus, acceptance of the offer and execution of the agreement took place in California, and California law should apply. *DeCesare*, 852 A.2d at 484-85. Finally, the 2015 US Bank Escrow Agreement contains a choice of law provision, specifically designating California governing law.

Plaintiffs specifically allege breach of the 1959 Agreement and Settlement Agreement by Mr. Klamer and the Link Successors. Such claims are governed by California law. Plaintiffs' derivative contract claims such as breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing will also depend heavily on application of California law. For example, the breach of fiduciary duty claim will rely on the interpretation of the License Agreement to determine whether such obligation was contractually created in said agreement. This requires application of California law, the law of the state where the contract was formed. Likewise, Plaintiffs' breach of the implied covenant of good faith and fair dealing claim states that the "law implies such obligation for all contracts entered into in the state in which each of the agreements constituting the Royalty Arrangement were executed." SAC, ¶ 98. Such contracts creating the royalty arrangement include the Licensing Agreement, 1959 Agreement, Settlement Agreement and 2015 US Bank Escrow Agreement, all of which are governed by California law, to assess their effect and interpretation.

Furthermore, Rhode Island applies choice of law principles and applies an interests

[30]

weighing test in tort claims to determine which state "bears the most significant relationship to the event and the parties." *Robertson Stephens, Inc. v. Chubb Corp*, 473 F. Supp. 2d 265, 269-70 (D.R.I. 2007). The factors include (a) the location where the conduct leading up to the injury occurred, (b) the parties' domicile, and (c) the location where the parties' relationship was centered. *Id.* Both Plaintiffs' claims for tortious interference with contract and negligent interference with prospective economic advantage must be assessed according to this analysis.

With respect to Plaintiffs' tortious claims against Mr. Klamer, majority of the acts and omissions giving rise to Plaintiffs' alleged claims occurred in California, and California has the most significant relationship to the witnesses, parties, and evidence at issue in this case. Based on Plaintiffs' allegations, Bill Markham's conduct leading up to the alleged injury occurred in California. Furthermore, Plaintiffs are residents of Nevada, while Mr. Klamer, Mr. Feiman, Sharon Linkletter, Michael Linkletter, and Laura Linkletter Rich are residents of California and Dawn Linkletter Griffin is a resident of Arizona, a California neighboring state. Finally, the relationship of the parties was solidified, namely in the 1959 Agreement, Settlement Agreement, and 2015 US Bank Escrow Agreement, all of which were executed in California. Thus, California is the location where the parties' relationship was centered and the state which bears the most significant relationship to the event and the parties; not Rhode Island.

Finally, Mr. Klamer's counterclaims and affirmative defenses of res judicata and collateral estoppel on the issue of authorship call for application of California law. A federal court must give a state court judgment the same preclusive effect as would be given that judgment under the state law in which the judgment was rendered. *Migra*, 465 U.S. at 81. Here, Mr. Klamer's res judicata and collateral estoppel claims and defenses focus on the identical claims and issues regarding authorship of the Game which were asserted by Bill Markham in the 1989 California state court action, and by Plaintiffs in the present litigation. As such, to determine the preclusive effect of the California state court action, the court must apply California law. Additionally, Plaintiffs have already agreed that California law governs both res judicata and collateral estoppel. *See* Plaintiffs' Motion for Judgment on the Pleadings, Doc. No.

[31]

37 ("California's preclusion law applies here since the 1989 Litigation was brought in the California courts."); *see also* Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Judgment on the Pleadings, Doc. No. 42. Thus, California courts are better equipped to apply their own laws in the pending action.

Ultimately, transfer to the Central District of California is warranted because rulings on California's substantive tort law, contract law and preclusion principles are more appropriately rendered by a court sitting within that jurisdiction due to its familiarity with the state's law.

### 5.      Unfairness of Burdening Citizens in Rhode Island with Jury Duty, Supports a Transfer

While there is some connection of this case to Rhode Island due to Hasbro's involvement, the present controversy has more connection with California than with Rhode Island. Plaintiffs are not Rhode Island citizens, nor are seven of the eight defendants to this action. While Hasbro is a Rhode Island corporation, the majority of the claims are governed by California law and the case relates largely to conduct and contracts entered into in California, by California residents. Thus, California has a greater interest in the present dispute. Plaintiffs have also demanded that this case be tried before a jury. Therefore, California's local interest in this suit and the interest of fairness in having California's citizens sit on a jury to decide its outcome, favor transfer of the suit to California. *McEvily*, 878 F. Supp. at 348 (although both plaintiff and defendant had minimal contacts to Rhode Island, they were not residents of the state, and the case related to conduct that occurred outside of the state, giving Florida a greater local interest in deciding the suit and requiring that Florida citizens sit on the jury to decide the outcome of the case).

### 6.      A Transfer Will Not Prejudice the Parties and Is Not sought to Delay the Resolution of the Claims Asserted

The transfer of this case will not result in any delay or prejudice to Plaintiffs, as this case was only filed in October of 2015, and no substantive proceedings have occurred. In fact, the scheduling order was just issued by this Court on January 20, 2016. Likewise, the pleadings are

[32]

not settled and discovery has not yet commenced in this case. Thus, minimal expense has been invested in this case, and the expediency of the case will not be impacted by a transfer to the Central District of California. Here, the convenience of the parties and witnesses favors California, as most of the documentary evidence and witnesses are there, and the only contact with Rhode Island is the domicile of Hasbro, a single defendant to the case. In fact, five of the eight defendants to this action are residents of California, while one is a resident of Arizona, only 450 miles away from the Central District of California, in comparison to the 2,500 miles said Defendant would travel should the trial take place in Rhode Island. Even Plaintiffs are residents of Nevada, only 270 miles away from the Central District of California in comparison to the 2,700 mile distance necessary to travel to Rhode Island. As such, adjudicating the case in California would not cause any undue hardship or prejudice to the Plaintiffs.

## IV.      <u>CONCLUSION</u>

For the forgoing reasons, Mr. Klamer respectfully requests that this Court grant his motion to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, Mr. Klamer respectfully requests that this Court grant Defendant's Motion to Transfer this case or any surviving claims to the Central District of California for all further proceedings, pursuant to 28 U.S.C. § 1404(a).

1119944

Respectfully submitted,

REUBEN KLAMER
By his attorneys,


/s/ Eric E. Renner
Eric Renner (#7481)
RENNER LAW LLC
10 Dorrance St., Suite 700
Providence, RI 02903
Phone: 401-404-5251
Fax: 401-404-5285
erenner@rennerlawllc.com


Erica J. Van Loon (admitted *pro hac vice*)
GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Flr.
Los Angeles, California 90067
Phone: 310-553-3000
Fax:  310-556-2920
evanloon@glaserweil.com

DATE: February 3, 2016.

[34]

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of February, 2016, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/ Eric E. Renner

[35]