UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
MARKHAM CONCEPTS, INC. and     )
LORRAINE MARKHAM,              )
                               )
          Plaintiffs,          )
                               )
     v.                        )  C.A. No. 15-419 S
                               )
HASBRO, INC.; REUBEN KLAMER;   )
IDA MAE ATKINS; DAWN           )
LINKLETTER GRIFFIN; SHARON     )
LINKLETTER; LAURA LINKLETTER RICH, )
and DENNIS LINKLETTER,         )
                               )
          Defendants.          )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court is Defendant Hasbro, Inc.'s Motion to Disqualify Greenberg Traurig, LLP, Louis M. Solomon, and Michael S. Lazaroff ("Motion"). (ECF No. 75.) In March 2016, Solomon and Lazaroff, two of Markham Concepts, Inc. and Lorraine Markham's (collectively "Markham") attorneys, changed law firms, moving from Cadwalader, Wickersham & Taft LLP ("Cadwalader") to Greenberg Traurig ("GT"). Until Solomon and Lazaroff's move, GT represented Defendant Hasbro in a number of patent applications and was actively seeking to expand its representation of the company. Solomon and Lazaroff, however, sought to bring this matter to GT, which would have created a direct conflict with GT's representation of Hasbro. When Hasbro declined GT's request to waive the

conflict, GT terminated its relationship with Hasbro and took on the Markham matter.  Hasbro promptly moved to disqualify GT from the Markham litigation on the grounds that GT was conflicted out under the Rhode Island Rules of Professional Conduct.  For the reasons that follow, Hasbro's Motion is GRANTED.

I.  Background

The parties are familiar with the details of this case; the Court will only recount those facts relevant to this Order.

On October 2, 2015, Markham – with the assistance of about a half-dozen lawyers - commenced this action.  In its Complaint, Markham asks the Court to adjudicate three major issues involving Hasbro:  (1) whether Hasbro breached any contracts in the manner in which it distributed royalties to Markham for the Game of Life; (2) who controls the intellectual property for the Game of Life; and (3) whether Hasbro has any right to commission derivative works based on the Game of Life.  (See Second Am. Compl., ECF No. 43.) If the Court rules in Markham's favor, Markham requests that Hasbro "be required to disgorge all monies, profits, and gains which it obtained or will unjustly obtain . . . at the expense of [Markham]."  (Id. ¶ 73.)

Although this action has been pending for nine months, it is still in the early stages of litigation.  Markham has amended its complaint twice (ECF Nos. 14 and 43) and three fully briefed preliminary motions on the pleadings are pending before the Court

(ECF Nos. 37, 49, and 62). Further, while some discovery has taken place, the Court stayed the action pending resolution of this Motion (ECF No. 94), which will require resetting the current discovery deadlines.

The relationship between Markham and the attorneys subject to this Motion is also relatively new. Having had a bad experience with its prior counsel, Markham retained Solomon, Lazaroff, and Cadwalader in the summer of 2015 after a colleague of Solomon's at Cadwalader introduced them. At least based on the record before the Court, this is the only matter Solomon and Lazaroff have with Markham.

Hasbro and GT's relationship, on the other hand, is long standing. It began in December of 2008, when GT started providing the company "advice on general sales promotion and charitable promotion laws." The Retainer Agreement ("Agreement"), which remained in effect throughout GT and Hasbro's relationship, included a conflicts clause, which states in relevant part:

> the Firm's representation of you includes the understanding that you will not unreasonably withhold a waiver of conflict of interest where the following conditions are met: (i) we notify you in writing of the potentially adverse representation, (ii) the matter in which the Firm represents an adverse party is substantially unrelated to the Firm's work for you, (iii) if appropriate, an "ethical wall" is created to separate the other matter from the matters the Firm is handling for you, and (iv) the Firm does not disclose to such adverse persons and entities any confidential information it obtains from you.

(Ex. G to Hasbro's Mot., at 4, ECF No. 75-8.)

In August of 2011, GT broadened its representation of Hasbro to include prosecution of patent applications. This work — mostly for Hasbro's Play-Doh product line — constituted the majority of GT's recent work for Hasbro. In 2013, GT billed Hasbro $17,698.50 for these patent prosecutions; in 2014, GT's bills amounted to $21,849.50; in 2015 the bills amounted to $14,325; and in 2016 the bills amounted to $11,373.50.

On February 25, 2016, GT sought to expand its relationship with Hasbro. A GT shareholder and Hasbro's General Counsel met to discuss several practice areas where GT believed it could assist the company. During this meeting, GT also asked Hasbro whether it ever waived conflicts. Hasbro indicated that it depended on the circumstances, and it would consider any request made by GT. After the meeting, the shareholder followed-up with Hasbro about expanding their relationship.

The discussions between GT and Hasbro, however, came to an abrupt halt on March 7, 2016. On that day, GT disclosed its intent to hire Solomon and Lazaroff from Cadwalader and to assume the Markham action. GT asked Hasbro to waive the conflict presented by the Markham action. Hasbro declined, citing the contentious nature of the litigation and that the conflicting matters concerned intellectual property issues that would be managed by the same in-house attorney at Hasbro. Four days later, on March 11, 2016, GT

notified Hasbro that it was ending its engagement with Hasbro and withdrawing from the patent matters that remained open.

On March 16, 2016, Solomon and Lazaroff officially joined GT. Around that time, Hasbro formally asked GT to decline the Markham matter on conflict grounds. When GT refused, Hasbro brought the present Motion.

II. Discussion

    A.  Hasbro is a "current client" for the purposes of this conflict analysis.

A critical threshold issue is whether Hasbro is GT's current or former client for the purposes of analyzing the Rhode Island Rules of Professional Conduct ("RIRPC"). If Hasbro is a current client, RIRPC 1.7's stricter prohibition against adverse representation would apply; if Hasbro is a former client, the conflict would fall under the less stringent Rule 1.9. According to GT, Hasbro is its former client because GT terminated its relationship with Hasbro five days before it welcomed Solomon, Lazaroff, and the Markham matter into the firm. Hasbro disagrees. It argues that GT's conduct falls squarely under the "hot potato" doctrine, a judicially created rule which "bars an attorney and law firm from curing the dual representation of clients by expediently severing the relationship with the preexisting client." W. Sugar Coop. v. Archer-Daniels-Midland Co., 98 F. Supp. 3d 1074, 1084 (C.D. Cal. 2015).

5

The Rhode Island Supreme Court has not expressly adopted the hot potato doctrine, and courts interpreting the RIRPC have only referenced it in passing. See Ogden Energy Res. Corp. v. State of R.I., No. CIV. A. 92-0600T, 1993 WL 406375, at *3 n.7 (D.R.I. June 23, 1993) (noting the existence of the "hot potato" doctrine, but deciding the conflict issue on other grounds). But, a number of other jurisdictions recognize the rule. See, e.g., Merck Eprova AG v. ProThera, Inc., 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009) (collecting cases); ValuePart, Inc. v. Clements, No. 06 C 2709, 2006 WL 2252541, at *2 (N.D. Ill. Aug. 2, 2006); Int'l Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's Ass'n, 909 F. Supp. 287, 293 (E.D. Pa. 1995); Picker Int'l, Inc. v. Varian Assocs., Inc., 670 F. Supp. 1363, 1365-66 (N.D. Ohio 1987), aff'd, 869 F.2d 578 (Fed. Cir. 1989). And, more importantly, the doctrine comports with the RIRPC. As this Court has long recognized, "Rule 1.7 is grounded primarily upon the attorney's duty of loyalty to his or her client." Gray v. R.I. Dep't of Child., Youth & Fam., 937 F. Supp. 153, 160 (D.R.I. 1996); see also RIRPC 1.7 cmt. 1 ("Loyalty and independent judgment are essential in the lawyer's relationship to a client."). The Comments to Rule 1.7 instruct how to discharge this duty when a conflict of interest develops between clients: "[T]he representation must be declined, unless the lawyer obtains the informed consent of each client . . . ." RIRPC 1.7 cmt. 3. As

explained below, this language does not create the per se disqualification rule suggested by Hasbro, but nor does the Comment support GT's position - that a lawyer may drop a current client to avoid a conflict with a prospective client. It espouses just the opposite — that lawyers should, as a general rule, remain loyal to their current clients and decline to take on the new, conflicting representation. All of this authority, taken together, suggests that the hot potato doctrine is consistent with, and furthers the purpose of, the RIRPC. Therefore, the Court will apply it here.

GT's treatment of Hasbro falls squarely within the scope of the doctrine. Prior to the Markham conflict, GT had not only represented Hasbro for eight years, but was actively seeking to expand its relationship with the company. Then, as far as the Court can tell, GT decided to abruptly drop Hasbro as a client only after Hasbro refused to waive the Markham conflict. If GT could convert Hasbro to its former client by quickly dropping it in the face of an imminent conflict, then any firm could avoid Rule 1.7 "by simply converting a present client into a former one." Picker Int'l, Inc., 670 F. Supp. at 1366. Such a rule would render meaningless the duty of loyalty a lawyer owes to his or her clients. Accordingly, for the purposes of this Motion, Hasbro is GT's current client.[1]

---

[1] This is not to say that a lawyer may never drop a client. If, for whatever reason, GT thought it best not to continue

B. Application of the hot potato doctrine does not per se require GT's disqualification from this action.

Hasbro argues that the hot potato doctrine bars GT from representing Markham per se. In support, Hasbro quotes a number of out-of-district cases that hold, generally, "[c]oncurrent representation triggers a per se rule of disqualification — even on wholly unrelated matters." Wingnut Films, Ltd. v. Katja Motion Pictures Corp., No. CV05-1516 RSWL (SHX), 2007 WL 4800405, at *1 (C.D. Cal. Jan. 17, 2007); see also Stratagem Dev. Corp. v. Heron Int'l N.V., 756 F. Supp. 789, 792 (S.D.N.Y. 1991); Hilton v. Barnett Banks, Inc., No. 94-1036-CIV-T24(A), 1994 WL 776971, at *3 (M.D. Fla. Dec. 30, 1994). Hasbro then tries to extend this per se rule to the RIRPC by pointing to cases in which this Court disqualified counsel due to a conflict. The cases on which Hasbro relies, however, do not support Hasbro's assertion.

First, in most of the cases, courts have applied Rule 1.9's "substantially related" requirement to a former client. See Ogden, 1993 WL 406375, at *1, *4 (applying Rule 1.9 and disqualifying lawyer and firm because the conflicting matter "concern[ed] matters substantially related to [their] former representation of the [old client], and because [the new client's] interests are

---

representing Hasbro, it could have sought to wind down its representation and declined to take on new matters. The issue here is that GT apparently dropped Hasbro solely to assume a conflicting representation. As detailed in this Order, this breached GT's duty of loyalty to Hasbro in violation of Rule 1.7.

8

materially adverse to those of the [old client]") (emphasis in original); Pfarr v. Island Servs. Co., 124 F.R.D. 24, 29 (D.R.I. 1989) (disqualifying a firm where a new attorney's prior representation of an adverse client was substantially related to a conflicting matter); Putnam Res. Ltd. P'ship v. Sammartino, Inc., 124 F.R.D. 530, 532 (D.R.I. 1988) (same). But, as noted above, Rule 1.9 does not apply here. The Court has determined that Hasbro should be treated as a current client and Rule 1.7 applies.

Further, in Hasbro's cases, the courts' decisions turn in large part on the risk that confidential information from the prior representation could be used in the conflicting representation. See Falvey v. A.P.C. Sales Corp., 185 F.R.D. 120, 126 (D.R.I. 1999) (considering a conflict that arose when an attorney switched law firms and disqualifying the lawyer under Rule 1.9 and 1.10 because "it [was] clear from [the] record that [the attorney] obtained material and confidential information on the [conflicting matter] while employed at [his old firm]"); Pfarr, 124 F.R.D. at 29 (disqualification decision turned on the access to confidential information that could be material to conflicting representation); Putnam, 124 F.R.D. at 531-32 ("a substantial relation is found where '. . . a lawyer could have obtained confidential information in the first representation that would have been relevant in the second.'" (quoting Kevlik v. Goldstein, 724 F.2d 844 (1st Cir. 1984)). To be sure, this type of risk provides strong

9

justification for a disqualification motion, but the parties concede that it is not a risk in this action.

And the remaining decisions cited by Hasbro actually cut against adopting a per se disqualification rule. In Allendale Mutual Insurance Co. v. Excess Insurance Co., No. 94-0614B, 1995 U.S. Dist. LEXIS 19882, at *22 (D.R.I. June 1, 1995), R. & R. adopted in relevant part, 1995 U.S. Dist. LEXIS 20373 (D.R.I. July 5, 1995), a case on which Hasbro heavily relies, the Court expressly stated that a violation of Rule 1.7 does not automatically result in disqualification. As even Hasbro concedes in a footnote, a court's analysis must weigh other factors, such as the prejudice the non-moving party's client would face should the court disqualify the client's attorney. The Court echoed this conclusion in McLane, Graf, Raulerson & Middleton, Professional Association v. Rechberger, No. CIV.A. 99-286-T, 1999 WL 33649127, at *3 (D.R.I. Sept. 10, 1999). There, Judge Torres considered whether to disqualify an expert witness due to a concurrent conflict with the opposing party. Citing to the rules governing attorney-client conflicts, the Court stated that "[b]ecause such a conflict presents a great risk that the duty of loyalty will be breached, its mere existence is sufficient to disqualify an attorney unless the client waives his right to be represented by conflict-free counsel." Id. (emphasis added). Contrary to Hasbro's assertion, McLane does not suggest that a current conflict

<u>requires</u> disqualification in every circumstance.  Indeed, in the very next paragraph, the Court notes that, at least with expert witnesses, courts should analyze the specific facts of a case before deciding a motion to disqualify.  <u>Id.</u>

<u>Allendale</u> and <u>McLane</u> accord with the spirit of the RIRPC and other case law in this District.  The Preamble to the Rules states that a violation does not automatically warrant disqualification of a lawyer from pending litigation:

> <u>In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation</u>.  The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability.  Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.  <u>The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule</u>.

RIRPC Scope (emphasis added).  Further, considering the application of Rule 1.7, albeit to a government attorney, this Court has noted, "every disqualification motion . . . requires analysis tailored to the specific ethical dilemma presented by the circumstances.  The proper disposition of a motion to disqualify requires a careful examination of the allegedly conflicting representations."  <u>Gray</u>, 937 F. Supp. at 158 (internal citation and quotation marks omitted).  And, though applying admiralty law,

11

the First Circuit has suggested that courts should consider all of the facts before disqualifying an attorney for appearing adverse to a client in litigation:

> Although we do not condone a lawyer suing his own client, we find no basis <u>in the unique circumstances of this case</u> for finding that the district court abused its discretion in denying the disqualification motion.

<u>Borges v. Our Lady of the Sea Corp.</u>, 935 F.2d 436, 440 (1st Cir. 1991) (emphasis added). GT, therefore, is not automatically disqualified from this action because it dropped Hasbro as a client to avoid a conflict; rather the Court must carefully examine the facts underlying the conflict situation.

   C. The facts of this case weigh in favor of disqualifying GT from this action.

The fate of GT, Solomon, and Lazaroff's representation depends on the "the specific ethical dilemma presented by the circumstances" and "a careful examination of the allegedly conflicting representations." <u>Gray</u>, 937 F. Supp. at 158 (internal citation and quotation marks omitted). Here that examination makes pellucid that the circumstances surrounding this conflict are particularly egregious.

This is not a case where the partnerships of two firms voted to merge, or where one existing firm client decided to sue another firm client. In those situations, conflicts are inevitable, often beyond the control of the individual attorneys who represent the clients, and warrant a more sympathetic analysis. Here, by

12

contrast, GT identified the conflict prior to Solomon and Lazaroff joining the firm. All attorneys involved had the ability to remain loyal to their respective clients. GT started down this path when it asked Hasbro to waive the conflict with Markham before it hired Solomon and Lazaroff. But when Hasbro refused to give GT the answer it wanted, the RIRPC clearly instructed GT on its choice: it could have either declined to take on the Markham matter, or declined to hire Solomon and Lazaroff (at least until the matter was completed). See RIRPC 1.7 cmt. 3.

And, if the Markham matter was so important to Solomon and Lazaroff (or Solomon and Lazaroff so important to Markham, as they claim in their brief) the Rules provided them a variety of options. They could have remained with their prior firm until the action concluded, or found another firm to join that did not present a conflict with Markham. Alternatively, if moving to GT was their only option, Solomon and Lazaroff could have made other arrangements for Markham to remain at Cadwalader. They could have elevated the role of one of the other attorneys who have entered appearances on Markham's behalf, or they could have introduced her to other competent counsel who could handle the case without the specter of a conflict of interest hanging over the representation. In any event, what is abundantly clear is that this conflict results primarily, if not solely, because of the action and choices of Markham's lawyers and GT. Solomon and Lazaroff decided to risk

the consequences of a known conflict of interest in order to join GT; GT consciously disregarded its duty of loyalty to Hasbro in favor of Markham.  This conduct does not comply with Rule 1.7 and requires the Court to disqualify GT, Solomon, and Lazaroff from this action.

Of course, a firm's clients do not hold all the cards in situations like this.  As one treatise puts it, "[a] definition of 'disloyalty' broad enough to encompass the mere act of dropping a client would convert the client-lawyer relationship into one of continuing servitude."  Hazard et. al., The Law of Lawyering § 21.15 (4th ed. 2016).  Other facts could have provided sufficient "good cause" to justify GT breaching its duty of loyalty to Hasbro.  GT, however, does not point to any that carry the day.

GT's strongest – albeit unsuccessful - argument is that the prejudices weigh against disqualification.  It begins by claiming that Hasbro has not articulated any harm it will suffer from losing GT as its lawyer.  For starters, this is not true.  GT had ongoing patent applications for which Hasbro must now seek alternative counsel.  This will certainly come with some cost to Hasbro.  Yet, more importantly, GT's argument overlooks the intangible harm that comes with ethical violations.  As this Court has previously noted, "[w]hile the spurning of a longtime and intimate client is particularly troubling, any perceived disloyalty to even a 'sporadic' client besmirches the reputation of the legal

profession" and has "the potential to erode public confidence in attorneys." Allendale, 1995 U.S. Dist. LEXIS 19882, at *17 (quoting Alexander Proudfoot, PLC v. Fed. Ins. Co., Case No. 93 C 6287, 1994 U.S. Dist. LEXIS 3937, at *10-11 (N.D. Ill. Mar. 30, 1994)).

GT urges the Court look not to Hasbro's concerns, but to consider the burden that disqualification would place on Markham. GT overstates the weight of this burden. First, while Solomon and Lazaroff are designated as Markham's lead attorneys, four other capable attorneys have entered appearances on Markham's behalf. These attorneys are ostensibly familiar with Markham's claims and litigation strategy, and can efficiently step in for Solomon and Lazaroff. Further, this action has reached an inflection point. At Markham's request, the Court stayed these proceedings until it resolves this Motion. Then the Court must consider a series of fully briefed motions to dismiss and transfer. Although fact discovery was set to end on June 29, 2016, the stay and pending motions obviously require revising this schedule, giving Markham's new lead counsel an opportunity to get up to speed on the case. Finally, as noted above, Solomon and Lazaroff knew about this conflict prior to joining GT. They should have advised Markham of the conflict and prepared Markham for the potential consequences, including the possibility of disqualification. While the Court is sympathetic to Markham's plight, any prejudice experienced by

Markham resulted from it and/or its lawyers' decisions, and does not outweigh the duty of loyalty GT owed to Hasbro, or the burden to Hasbro of disregarding it.

GT also argues that Hasbro is responsible for this conflict because it unreasonably refused to waive it. The Court can imagine some instances where a client's refusal to waive a conflict, for example, where the stated conditions in a retainer agreement are met, could be unreasonable and warrant denial of a disqualification motion. This, however, is not such an instance. Markham alleges Hasbro engaged in serious misconduct, including the unlawful use of the intellectually property rights for the Game of Life. If Markham is correct, its damages could be significant. So, even assuming the conditions in the retainer agreement with GT are met, it is reasonable that Hasbro would not want its own lawyers prosecuting such allegations and seeking significant damages from it.

Finally, GT argues that its decision to drop Hasbro is justified because its relationship with Hasbro was sporadic and the two matters were unrelated.[2] First off, GT and Hasbro's relationship was not sporadic. GT had continuously represented Hasbro since 2008 and expressly sought to expand its relationship

---

[2] GT also claims that this action is different from the patents it prosecuted for Hasbro because the prior work was non-litigious. The Court does not analyze this point separately, but instead considers it as part of GT's "unrelated" argument.

only weeks before dropping the company as a client. Moreover, under Rule 1.7, the applicable rule in this case, GT cannot disregard its ethical duty of loyalty to a current client just because a conflict involves unrelated matters. There are instances where attorneys may have sufficient cause to override the duty of loyalty that binds a lawyer to his or her clients. But, again, this is not one of them. As far as the Court can tell, the Markham conflict constitutes the only reason GT abruptly decided to end its longstanding relationship with Hasbro. So while GT's net billings to Hasbro may not have been substantial, the representation was regular and sufficient to warrant a try at growing the relationship. The test is not one where the more valuable matter wins the loyalty contest. Hasbro's exercise of its discretion in declining to waive this conflict is insufficient justification to warrant overlooking GT's duty of loyalty to Hasbro and GT's clear violation of RIRPC Rule 1.7.

IV. Conclusion

For the foregoing reasons, Hasbro's Motion to Disqualify is GRANTED.


IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Chief Judge
Date:  July 22, 2016