**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| MARKHAM CONCEPTS, INC., SUSAN GARRETSON, and LORRAINE MARKHAM, individually and in her capacity as Trustee of the Bill and Lorraine Markham Exemption Trust and the Lorraine Markham Family Trust,<br><br>*Plaintiffs,*<br><br>v.<br><br>HASBRO, INC., REUBEN KLAMER, THOMAS FEIMAN, ROBERT MILLER, MAX CANDIOTTY, DAWN LINKLETTER GRIFFIN, SHARON LINKLETTER, MICHAEL LINKLETTER, LAURA LINKLETTER RICH, and DENNIS LINKLETTER,<br><br>*Defendants.* | C.A. No. 1:15-cv-00419-S-PAS |

**DEFENDANT HASBRO, INC.'S MOTION *IN LIMINE* TO EXCLUDE BILL MARKHAM'S 1989 DEPOSITION TESTIMONY**

The defendant, Hasbro, Inc. ("Hasbro"), hereby moves this Court, *in limine*, to exclude the deposition testimony of Bill Markham ("Markham") (the "1989 Testimony") taken in a prior litigation (the "1989 Litigation").

**INTRODUCTION**

The plaintiffs, Markham Concepts, Inc., Susan Garretson and Lorraine Markham (collectively, the "Markham Parties"), seek to use Markham's 1989 Testimony in the present dispute. That 1989 Testimony, however, clearly constitutes hearsay, and may only be admissible if it falls within an exception to the hearsay rule. The Markham Parties have suggested that the testimony fits within the prior testimony exception set forth in Rule 804(b)(1), which indeed can

apply to deposition testimony taken in prior cases. That rule, however, applies only where the parties in that prior lawsuit are the same as in the present lawsuit, and those parties had a similar motivation at the time to develop the now-relevant testimony.

No such motivation existed in the 1989 Litigation. The Markham Parties seek to admit the 1989 Testimony to prove copyright authorship. Copyright authorship, however, was not at issue in the 1989 Litigation. In fact, the Markham Parties themselves have unequivocally told this Court that issues of copyright authorship were not present in that prior litigation. Rather, that lawsuit involved a royalty dispute between Markham and the then-existing successors-in-interest to Link Research Corp., including Reuben Klamer ("Klamer"). As such, Hasbro's predecessor-in-interest, Milton Bradley, had no motivation to develop or challenge Markham's statements regarding copyright authorship. Indeed, the 1989 Litigation was so inconsequential to Milton Bradley that it chose not to even attend Markham's deposition at all. Because Milton Bradley had no motivation to develop contrary testimony regarding copyright authorship, allowance of the 1989 Testimony would be plainly improper.

## BACKGROUND

In February 1988, Markham initiated a lawsuit entitled *Markham v. Klamer, et. al.*, No. C 675 404 (Cal. Sup. Ct.) against Klamer, Art Linkletter, Irvin Atkins and one other individual (collectively, "Link"), as well as Hasbro's predecessor-in-interest, Milton Bradley. That lawsuit involved a royalty dispute between Markham and Link, which was based on a claimed breach of the Assignment Agreement between them. *See* Declaration of Courtney L. Batliner ("Batliner Dec."), Ex. A (Markham Complaint dated February 2, 1988) at ¶¶ 25-30. Milton Bradley was not a party to that contract, and indeed had no substantial interest at stake in the 1989 Litigation. *See id.* at ¶ 11. Rather, Milton Bradley was involved in that lawsuit only because it paid royalties to

Link under a separate agreement, and it was those royalties that ultimately were divided (and disputed) between Markham and Link pursuant to their Assignment Agreement. *See id.* at ¶ 28. *See also id.* at ¶ 4 ("Plaintiff alleges no wrongdoing on the part of Milton Bradley and has named that entity herein solely because Milton Bradley is a necessary and indispensable party to the resolution of this action"); Ex. B[1] (Markham-Milton Bradley Settlement dated July 24, 1989) at Recital B ("The Lawsuit contains claims by Markham that he is entitled to a greater share of certain royalties being paid by Milton Bradley to other parties named in the Complaint, than he has been receiving from those other parties. Markham does not and has not alleged any wrongdoing on the part of Milton Bradley.").

Indeed, Milton Bradley's interest in the 1989 Litigation was so attenuated that the company barely participated in the action. In particular, although Milton Bradley undoubtedly had the right to attend Markham's deposition, the issues were of so little consequence to it that the company evidently chose not to attend. *See* Exs. C and D (appearance sheets excerpted from Markham's deposition transcripts dated April 15 and June 15, 1989).[2] Rather, it left the deposition entirely to counsel for the other defendants. *See id.*

That approach is unsurprising. The factual issues in the 1989 Litigation were confined to three areas: (1) whether a prior agreement between Markham and Link entitled Markham to 30% or 50% of the foreign royalties earned on the Game of Life (the "Game"); (2) whether Markham was entitled to a portion of a prior settlement paid by Milton Bradley to the successors to Link;

---

[1] Unless otherwise indicated, all "Ex." numbers herein refer to exhibits to the Batliner Declaration.

[2] Other pleadings from the 1989 Litigation make clear that Milton Bradley was represented in that matter by Fenwick, Davis & West (which is not named in the appearance sheets of the deposition transcripts), while the other defendants were jointly represented by Irell & Manella as well as James P. Herzog, Esq. (who are included in those appearance sheets). *See* Ex. B (naming counsel on signature page); Ex. E (other defendants' 1989 Answer, naming counsel);   Ex. F (Markham 1989 pleading, naming counsel in Proofs of Service).

3

and (3) whether Markham was entitled to terminate his agreement with Link based on the dissolution of Link and/or the non-payment of foreign royalties and settlement amounts. *See* Motion for Judgment on the Pleadings and/or to Dismiss Certain of Klamer's Counterclaims and to Strike Certain Affirmative Defenses [DE37] (the "Motion") at 5; *see also* Reply in Further Support of the Motion [DE42] (the "Reply") at 10 ("all claims raised in [the 1989 Litigation] were based upon breaches of contract by Link, which related either to the dissolution of Link or to the failure to pay Bill Markham amounts due under the Assignment Agreement for foreign royalties or from the settlement of [a prior action].") The question of Markham's copyright authorship had no bearing on those contractual disputes. *See* [The Markham Parties'] Opposition to Klamer's Motion to Dismiss [DE53] (the "Opposition") at 6 ("to the extent anything regarding the Game's creation was testified to, it was . . . only as background context.").

Indeed, until this evidentiary issue arose, the Markham Parties repeatedly have taken the position with this Court that the 1989 Litigation involved issues and facts that were separate and distinct from the copyright authorship issue that lies at the heart of the present action. *See, e.g.,* Motion at 12 ("the causes of action in the 1989 Litigation compared to those currently raised in the Markham Parties' Second Amended Complaint are separate and distinct and flow from different facts."); Reply at 9 (characterizing Markham's allegation that he invented the Game as "an irrelevant background fact."); Opposition at 6 (distinguishing between "the distinct concepts of inventorship (for patent) [and] authorship (for copyright)" and observing that "**[n]either the word 'author' or any concept of 'authorship' is mentioned in the 1989 pleadings**.") (emphasis in original). The Markham Parties in fact went even further, arguing that copyright issues could not even be raised in the 1989 Litigation, given the state court's limited subject-matter jurisdiction.

4

#54045083_v9

*See, e.g.,* Reply at 7; Opposition at 7.  And in denying Klamer's Motion to Dismiss, this Court agreed.  *See* Order dated October 17, 2017 [DE128] at 3.

Nonetheless, the Markham Parties seek to use Markham's 1989 Testimony to support their copyright claims in the present dispute.  *See* Ex. G (Letter to the Honorable William E. Smith dated October 17, 2017) at 3.  In particular, the Markham Parties' interrogatory responses indicate that they will rely upon the 1989 Testimony to argue that Markham authored a registered work (or a portion thereof) associated with the Game, and did not do so as a work for hire—issues that will have to be determined in the upcoming trial.  *See* Ex. H at 10 and Ex. I at 13 (the Markham Parties' Responses to Hasbro's Interrogatories Nos. $2^3$ and $17^4$).  Because Hasbro's predecessor-in-interest, Milton Bradley, had no motive to develop testimony regarding those issues in the 1989 Litigation, the 1989 Testimony may not now be used for that purpose.

## **ARGUMENT**

### I.     THE 1989 TESTIMONY IS HEARSAY

Federal Rule of Evidence 801 defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Markham's 1989 Testimony meets both of these criteria.  Specifically, in response to Hasbro's interrogatories, the Markham Parties cite to the 1989

---

[3] Hasbro's Interrogatory No. 2 states: "Describe in detail the basis for your contention that Bill Markham 'was and is the sole creator, designer, developer, inventor, author, and owner of the Game and all of its intellectual property,' [and identify] any documents in support of your response."  The Markham Parties' Response to Interrogatory No. 2 refers to, *inter alia,* "the deposition of Bill Markham on April 15, 1989 in *Markham v. Klamer, et al.*, . . . including but not limited to 12:11-26:24 (HAS000791)."  *See* Ex. H at 9-10.

[4] Hasbro's Interrogatory No. 17 states: "Please identify . . . all evidence supporting your contention (if any) that Klamer was not entitled to supervise, direct, accept or reject Bill Markham's work on the Game."  The Markham Parties' Response to Interrogatory No. 17 identifies, *inter alia*, "the transcript of Bill Markham's 1989 depositions.  *See* HAS000791-HAS000982)."  *See* Ex. I at 12-13.

5

#54045083_v9

Testimony as support for their contention that, *inter alia*, Markham authored the Game. *See* Exs. H and I, *supra*. The cited portions of that testimony, meanwhile, contain Markham's assertion that he was the sole author of the Game, and that the Game was not a work made for hire. *See, e.g.*, Batliner Dec., ¶ 4. Because that testimony obviously will be offered for the truth of the matter asserted, the 1989 Testimony is inadmissible unless it falls within a hearsay exception or exclusion. *See* Fed. R. Evid. 801.

## II.  THE 1989 TESTIMONY DOES NOT FALL WITHIN THE FORMER TESTIMONY EXCEPTION TO THE HEARSAY RULE

During the parties' October 18, 2017 teleconference with the Court, counsel for the Markham Parties suggested that the 1989 Testimony should be admitted as former testimony. *See* Batliner Dec. ¶ 11. As such, it appears that the Markham Parties intend to invoke the former testimony exception to the hearsay rule, which is set forth in Federal Rule of Evidence 804(b)(1). Under that rule, former testimony of an unavailable witness may be admissible at trial, provided that it:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>
> (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—*an opportunity and similar motive to develop it by direct, cross-, or redirect examination*.

Fed. R. Evid. 804(b)(1) (emphasis added).

Hasbro does not dispute that Markham himself is unavailable, nor that his testimony was taken at a deposition that involved the same parties.[5] The former testimony exception does not apply, however, because Milton Bradley did not have a remotely "similar motive to develop [the disputed testimony] by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(B).

---

[5] Milton Bradley was a litigant in that action, not Hasbro, but Hasbro does not dispute that it stands in the shoes of Milton Bradley as its "predecessor-in-interest" under the rule.

6

      **A.    Milton Bradley Had No Similar Motive to Challenge Markham's Testimony Regarding Copyright Authorship in the 1989 Litigation**

In assessing what constitutes a "similar motive" within the meaning of Rule 804(b)(1), courts apply a two-part test: (1) "whether the questioner is on the same side of the same issue at both proceedings"; and (2) "whether the questioner had a substantially similar interest in asserting that side of the issue." *U.S. v. Bartelho*, 129 F.3d 663, 671-672 (1st Cir. 1997); *accord, Diaz-Colon v. Toledo Davila*, 979 F. Supp. 2d 247, 249-250 (D.P.R. 2013); *Holmquist v. Farm Family Cas. Ins. Co.*, 100 F.Supp. 2d 305, 310 (D. Me. 2011); *Barraford v. T & N Ltd.*, 988 F. Supp. 2d 81, 85 (D. Mass. 2013). *See also Trigones v. Bissonnette*, 296 F.3d 1, 12 (1st Cir. 2002) ("the issues in the first proceeding, and hence the purpose for which the testimony was offered, must have been such as to produce an adequate motive for testing on cross-examination the credibility of the testimony.") (citing 2 *McCormick on Evidence*, §304 at 296-297).

"The similarity of a broad and general interest in testing the witness's credibility in each proceeding is not enough to establish 'similar motive.'" *Bartelho*, 129 F.3d at 671 (affirming that the exception was inapplicable where the declarant's credibility was "generally at issue in each proceeding"). Nor is it enough for the cases to have overlapping facts. *See Holmquist,* 100 F. Supp. 2d at 310 (testimony from workers' compensation proceeding could not be used in a later liability case involving the same accident because there was no motivation to explore fault in the workers' compensation context). Rather, the opposing party must have had a similar motive in each proceeding to develop the particular aspect of the witness' testimony. *See id.*; *Bartelho*, 129 F.3d at 671 ("we focus narrowly on a party's motive and opportunity to develop particular testimony on a particular issue."). Put differently, the party against whom the former testimony is offered must have had, in the prior proceeding, an interest in making substantially the same arguments or eliciting substantially the same testimony as it does in the present case. *Bartelho*,

7

129 F.3d at 672 (exception was inapplicable where the "particular points the [opposing party] sought to make were quite different.").

Milton Bradley clearly had no motivation in the 1989 Litigation to inquire into Markham's claims regarding authorship and his role in the creation of the Game. That litigation involved a contractual dispute over various contractual arrangements between Markham and Link concerning the payment of royalties, the distribution of settlement proceeds, and the impact of the dissolution of Link. *See* Motion at 9. The question of authorship—*i.e.*, who created the Game and the role that various individuals played—had no impact on those disputes. Rather, what mattered was the contractual arrangements between Markham and Link, as set out and amended in various agreements between them. *See id.* at 8-10 (describing all claims and counterclaims asserted in the 1989 Litigation).

The overall unimportance of the 1989 Litigation to Milton Bradley is confirmed by the company's absence from Markham's 1989 depositions. As previously explained, Milton Bradley did not even find it necessary to attend either of those depositions. *See* Exs. C and D. Indeed, to Hasbro's knowledge, Milton Bradley did not attend *any* deposition in the 1989 Litigation. *See* Ex. J (appearance sheet excerpted from Klamer Dep. Tr. dated June 26, 1989). That is unsurprising given that the action—and thus the depositions—pertained only to Markham's and Link's royalty rights *vis-à-vis each other*. As set forth in Markham's 1988 Complaint and confirmed by the July 24, 1989 Settlement Agreement between Markham and Milton Bradley, Milton Bradley was not even accused of any wrongdoing in the 1989 Litigation. *See* Ex. A at ¶ 4. ("Plaintiff alleges no wrongdoing on the part of Milton Bradley. . ."); Ex. B at Recital B. Needless to say, had Milton Bradley had any indication that the authorship of its copyrights was at stake, it most certainly would have taken an active role in Markham's deposition and the case as a whole.

Lest there be any doubt, the Markham Parties themselves have represented to this Court that copyright authorship was not at issue in the 1989 Litigation. As they stated in their Motion:

> In fact, those pleadings from the 1989 Litigation clearly show that the causes of action, as well as the primary factual issues raised in the 1989 Litigation, are ***distinct and separate from the causes of action raised in the current litigation***. No "issues" raised in the 1989 Litigation were dispositively addressed in the settlement of that litigation. Moreover, the ***claims in the current action were not and could not have been raised in 1989***.

Motion at 7 (emphasis added). The Markham Parties' Reply and Opposition are rife with similar statements. In the Reply, for example, they noted:

> . . . the word "author" appears nowhere in the 1989 pleadings. Nor did the issue of authorship serve as the basis for any claim or any harm asserted in the 1989 Litigation.

Reply at 9. *See also id.* at 17 ("there was no claim or issue of authorship at all raised in the 1989 Litigation."); Opposition at 5-7. Further, the Markham Parties explicitly relied on Klamer's assertion that the origins of the Game were irrelevant to the 1989 Litigation:

> As an initial matter, we note that Klamer's position here is contradicted by the position he took in the 1989 Litigation. ***There Klamer repeatedly took the position that the issue of who invented the Game was irrelevant.*** In response to a request to admit that "Plaintiff Bill Markham ('Markham') is the inventor of a board game called 'The Game of Life'", [sic] Klamer and the other Link Successors stated: "this Request for Admission seeks information which is irrelevant to this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence" (Reply Ex. 1 at 4). Moreover, during Reuben Klamer's sworn deposition in that case, his counsel ***repeatedly instructed him not to answer questions about the origins of the Game, including who invented the Game*** (*see*, e.g., Reply Ex. 2 at 3:1-4:4 ("[MR. HERZOG:] ***We are claiming the issue of inventorship is not relevant to this disputes in this litigation. Not just [Klamer's] testimony, but also Mr. Markham's testimony on that issue is not relevant***."))

Reply at 8 (emphasis added). Indeed, in the PowerPoint that they presented to this Court at oral argument on April 27, 2017, the Markham Parties repeatedly asserted that copyright authorship was not at issue in the 1989 Litigation, and could not even have been raised in that litigation. *See* Ex. K at slides 16, 18-26.

9

#54045083_v9

Because copyrights were not at issue in the 1989 Litigation, Milton Bradley could not possibly have had the motivation to challenge Markham's testimony regarding copyright authorship at his deposition. In contrast, that is the central issue in the present case. The former testimony exception therefore does not apply. *See, e.g., Bartelho*, 129 F.3d at 671; *Holmquist,* 100 F. Supp. 2d at 310. *Cf. Barraford*, 988 F. Supp. 2d 81, 85-86 (applying the exception where "[t]he topic and scope of the state case and the present case are the same [. . .] The defendants in both cases sought to prove that Daniel Barraford was not exposed to asbestos, or that he was not exposed to their respective company's asbestos product, and that any exposure to their product did not cause his injuries."); *Diaz-Colon*, 979 F.Supp. 247, 250 ("Miranda had a 'similar motive' to develop Diaz-Colon's testimony in the 2001 proceeding. [. . .] Defendants in this litigation are contesting the very same factual allegations that were raised against Puerto Rico (and its officials) in the 2001 proceeding. Thus, Defendants are on the 'same side of the same issue at both proceedings' and have a 'substantially similar interest in asserting that side of the issue.'").

### B. The Markham Parties Are Judicially Estopped From Taking a Contrary Position

The Markham Parties unequivocally have taken the position with this Court that authorship was not an issue in the 1989 Litigation.[6] This Court agreed. In fact, in denying Klamer's Motion to Dismiss, the Court expressly adopted the Markham Parties' argument that authorship not only was *not* disputed in the 1989 Litigation, but *could not have been* disputed in that matter because of the state court's limited jurisdiction. *See* Order dated October 17, 2017 [DE128] at 2-4 (denying Klamer's motion and concluding that "claim preclusion does not apply here because the first forum

---

[6] In contrast—and quite contrary to the suggestion made by the Markham Parties' counsel in the October 18, 2017 teleconference with the Court—Hasbro was not a party to the pleadings that the Markham Parties opposed, and has never taken a conflicting position regarding the authorship issue in the 1989 Litigation.

10

lacked subject matter jurisdiction over the [copyright] claim at issue."); *id.* at 5 (granting Markham's competing motion "for the same reason it denies Klamer's Motion.").

The Markham Parties are now judicially estopped from taking a contrary position. Under the doctrine of judicial estoppel, where a court relies on a party's argument, that party may not later take the opposite position when it suits them to do so. *See Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) ("in a prototypical case, judicial estoppel applies when a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage."); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987) ("where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . .") (internal quotations omitted).

The First Circuit has explained that the doctrine has two essential elements: (1) the prior and estopped positions are directly inconsistent, *i.e.*, mutually exclusive; and (2) the responsible party succeeded in persuading a court to accept its prior position. *See Alternative System Concepts*, 374 F.3d at 33; *see also Thore v. Howe*, 466 F.3d 173, 181-82 (1st Cir. 2006) (in addition, while not required, courts may consider whether the responsible party would gain an unfair advantage if not estopped); *accord*, *Guay v. Burack*, 677 F.3d 10, 16-17, 19 (1st Cir. 2012). This doctrine of judicial estoppel protects the integrity of the courts by avoiding the specter of inconsistent determinations and the perception that the court was misled in one proceeding or will be misled in another. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *see also Alternative System Concepts*, 374 F.3d at 33 ("The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system.").

The notion that copyright authorship was relevant and motivating to Milton Bradley in the 1989 Litigation is directly inconsistent with Markham's position, repeatedly asserted in this Court, that copyright authorship of the Game was not and could not have been at issue in that case. *See* Fed. R. Civ. P. 804(b)(1); *Bartelho*, 129 F.3d at 671-672; *Guay*, 677 F.3d at 16-17, 19; *Thore*, 466 F.3d at 181-82. Having secured a favorable determination on the basis of that prior position, the Markham Parties cannot now seek to argue to the contrary for the purpose of having Markham's deposition admitted under Federal Rule of Evidence 804(b)(1). *See, e.g., Alternative System Concepts*, 374 F.3d at 33-34 (upholding decision that, because the litigant had avoided dismissal by persuading the court to accept its prior position regarding the scope of its breach of contract claim, it was judicially estopped from taking a "totally inconsistent" position in dispositive motions).

Indeed, allowing the Markham Parties to reverse their position and rely upon Markham's self-serving 1989 Testimony regarding copyright authorship, which Hasbro cannot now challenge, and which Milton Bradley had no motive to challenge previously, would serve only to give the Markham Parties an unfair advantage. *See Guay*, 677 F.3d at 16-17, 19; *Thore*, 466 F.3d at 181-82. Like the situation in *Alternative System Concepts*, this is "precisely the case for which the doctrine of judicial estoppel was created." 374 F.3d at 33 (quoting the district court). *Cf. InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003) (declining to apply the doctrine where plaintiff plausibly attributed its revised position to information gleaned during pretrial discovery, and no substantive ruling had addressed the initial position).

## **CONCLUSION**

For the foregoing reasons, Hasbro respectfully requests that this Court exclude the use of the deposition testimony of Bill Markham taken in the 1989 Litigation.

#54045083_v9

Dated: October 25, 2017

        HASBRO, INC.,
        By its attorneys,

        /s/ Patricia K. Rocha
        Patricia K. Rocha (#2793)
        Joseph Avanzato (#4774)
        ALDER POLLOCK & SHEEHAN P.C.
        One Citizens Plaza, 8th Floor
        Providence, RI 02903
        Telephone: (401) 274-7200
        Facsimile: (401) 351-4607
        Email:   procha@apslaw.com
                   javanzato@apslaw.com

        Joshua C. Krumholz (admitted *Pro Hac Vice*)
        Courtney L. Batliner (admitted *Pro Hac Vice*)
        HOLLAND & KNIGHT LLP
        10 St. James Ave.
        Boston, MA 02116
        Telephone: (617) 523-2700
        Facsimile: (617) 523-6850
        Email:   joshua.krumholz@hklaw.com
                   courtney.batliner@hklaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on October 25, 2017, I electronically served and filed a true copy of the within Motion *via the Electronic Court Filing (ECF) system* on counsel of record and it is available for viewing and downloading from the ECF system.

                                          /s/  Patricia K. Rocha

#54045083_v9