# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MARKHAM CONCEPTS, INC., SUSAN GARRETSON, and LORRAINE MARKHAM, individually and in her capacity as Trustee of the Bill and Lorraine Markham Exemption Trust and the Lorraine Markham Family Trust,<br><br>               Plaintiffs,<br><br>       -against-<br><br>HASBRO, INC., REUBEN KLAMER, DAWN LINKLETTER GRIFFIN, SHARON LINKLETTER, MICHAEL LINKLETTER, LAURA LINKLETTER RICH, DENNIS LINKLETTER, THOMAS FEIMAN, in his capacity as co-trustee of the Irvin S. and Ida Mae Atkins Family Trust, ROBERT MILLER, in his capacity as co-trustee of the Irvin S. and Ida Mae Atkins Family Trust, and MAX CANDIOTTY, in his capacity as co-trustee of the Irvin S. and Ida Mae Atkins Family Trust.<br><br>              Defendants. | Case No. 1:15-cv-419-S-PAS |
| REUBEN KLAMER,<br><br>           Counterclaim Plaintiff,<br><br>       -against-<br><br>MARKHAM CONCEPTS, INC., and LORRAINE MARKHAM,<br><br>           Counterclaim Defendants. | |

## PLAINTIFFS' COMBINED OPPOSITION TO
## <u>DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES AND COSTS</u>

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..............................................................................................

I.   INTRODUCTION ...........................................................................................................1

II.  BACKGROUND ..............................................................................................................5

III. DENIAL OF FEES IS APPROPRIATE GIVEN THAT THE *FOGERTY*
     FACTORS WEIGH IN FAVOR OF PLAINTIFFS ..........................................................7

     A.   Legal Standards...................................................................................................7

     B.   The Markham Parties' Copyright Claims Are Objectively Reasonable And
          Not Objectively Weak.........................................................................................9

          1.   The Markham Parties' Case Against Work-For-Hire Was Not
               "Objectively Weak"................................................................................12

               a.   The Markham Parties Did Not Advance an Objectively
                    Weak Case That The Instance And Expense Test Was
                    Overruled ...................................................................................12

               b.   Even Under The Instance And Expense Test, The Markham
                    Parties' Arguments Were Not Objectively Weak.........................14

               c.   The Markham Parties Advanced Reasonable Arguments
                    that Neither Grace Chambers Nor Leonard Israel Worked
                    on the Actual Prototype of the Game...........................................16

          2.   The Markham Parties' Litigation Decisions Following the
               November Trial Were Objectively Reasonable .........................................18

     C.   Regardless Of The Objective Reasonableness Of Plaintiffs' Case, The
          Remaining Factors Weigh In Favor Of Denying The Award Of Fees .................21

          1.   Plaintiffs' Case Is Not Frivolous............................................................21

          2.   Plaintiffs' Motivation Is Consistent With Purposes Of The
               Copyright Act........................................................................................21

          3.   The Need To Advance Consideration Of Compensation And
               Deterrence ............................................................................................22

          4.   Plaintiffs' Litigation Conduct was Reasonable and Plaintiffs Took
               Every Opportunity to Conserve Party Resources .....................................24

IV.   DEFENDANTS' FEES REQUESTS ARE EXCESSIVE AND SHOULD BE
      DENIED OR SIGNIFICANTLY REDUCED ...................................................................27

      A.   Legal Standards ......................................................................................................27

      B.   The Defendants' Fee Requests Are Excessive And Should Be Denied ................28

      C.   If Awarded, The Markham Parties Are Entitled To A Significant
           Reduction In The Requested Award ......................................................................31

           1.   The Markham Parties Are Financially Impecunious Relative To
                The Defendants .........................................................................................32

           2.   The Fees Are Excessive Given That No Damages Were Alleged
                By Defendants ...........................................................................................33

      D.   Unreasonableness Of Fees .....................................................................................35

V.    DEFENDANTS KLAMER AND LINKLETTER FAILED TO FOLLOW THE
      LOCAL RULES.................................................................................................................38

VI.   CONCLUSION..................................................................................................................39

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES:

*Airframe Sys., Inc. v. L-3 Commc'ns Corp.*,
   658 F.3d 100 (1st Cir. 2011) ................................................................8, 27, 29

*Alifax Holding SpA v. Alcor Sci. Inc.*,
   No. CV 14-440 WES, 2019 WL 4247737 (D.R.I. Sept. 5, 2019) (Smith, C.J.) .............. *passim*

*Authors Guild, Inc. v. Hathitrust*,
   No. 11 CV 6351, 2013 WL 603193 (S.D.N.Y. Feb. 15, 2013) ........................................ 23-24

*Bos.'s Children First v. City of Bos.*,
   395 F.3d 10 (1st Cir. 2005) ................................................................................28

*Broad Music, Inc. v. C.B.G., Inc.*,
   No. 11-cv-40142-FDS, 2014 WL 4656879 (D. Mass. Sept. 12, 2014) ......................29, 32, 33

*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) ("*CCNV*") ................................................................. 1-2, 12

*Compaq Comp. Corp. v. Ergonome Inc.*,
   196 F. Supp. 2d 471 (S.D. Tex. 2002), *aff'd*,
   387 F.3d 403 (5th Cir. 2004) ................................................................................30

*Conway v. Licata*,
   144 F. Supp. 3d 212 (D. Mass. 2015) ................................................................34

*Coutin v. Young & Rubicam P.R., Inc.*,
   124 F.3d 331 (1st Cir. 1997) ................................................................................38

*Donnell v. United States*,
   682 F.2d 240 (D.C. Cir. 1982) ................................................................................36

*Erickson Prods., Inc. v. Only Websites, Inc.*,
   No. 12-CV-1693, 2015 WL 13745786 (S.D.N.Y. Sept. 2, 2015), *aff'd as modified*,
   2016 WL 1337277 (S.D.N.Y. Mar. 31, 2016) ................................................ 37-38

*First St. Ins. Grp. v. Nationwide Mut. Ins. Co.*,
   401 F.3d 43 (1st Cir. 2005) ................................................................................ *passim*

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ................................................................................ *passim*

**PAGE(S)**

*Forward v. Thorogood,*
    985 F.2d 604 (1st Cir. 1993) ................................................................13

*García-Goyco v. Law Envtl. Consultants, Inc.,*
    428 F.3d 14 (1st Cir. 2005) ............................................................8, 29

*Garnier v. Andin Int'l, Inc.,*
    884 F. Supp. 58 (D.R.I. 1995) .................................................. *passim*

*Greene v. Ablon,*
    No. 09-10937-DLJ, 2013 WL 4714344 (D. Mass. Aug. 28, 2013), *aff'd,*
    794 F.3d 133 (1st Cir. 2015) ................................................................34

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) .................................................................. *passim*

*InvesSys Inc. v. McGraw-Hill Cos.,*
    No. Civ. A. 01-12048-GAO, 2003 WL 21696545 (D. Mass. May 27, 2003) ............. 29, 35-36

*InvesSys Inc. v. McGraw-Hill Cos.,*
    369 F.3d 16 (1st Cir. 2005) ................................................................29

*Janik v. SMG Media, Inc.,*
    No. 16-Civ.-7308, 2018 WL 345111 (S.D.N.Y. Jan. 10, 2018) ...................... 21-22

*Johnson v. Ga. Hwy. Exp., Inc.,*
    488 F.2d 714 (5th Cir. 1974) ..............................................................38

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.,*
    820 F. Supp. 2d 569 (S.D.N.Y. 2011) ............................................... 24-25

*Kirtsaeng v. John Wiley & Sons, Inc.,*
    136 S. Ct. 1979 (2016) ............................................................. *passim*

*Latin Am. Music Co. v. ASCAP,*
    642 F.3d 87 (1st Cir. 2011) ................................................................29

*Lieb v. Topstone Indus., Inc.,*
    788 F.2d 151 (3d Cir. 1986) ....................................................... *passim*

*Lin-Brook Bldrs. Hardware v. Gertler,*
    352 F.2d 298 (9th Cir. 1965) ..............................................................14

*Lotus Dev. Corp. v. Borland Int'l, Inc.,*
    140 F.3d 70 (1st Cir. 1998) ........................................................ *passim*

**PAGE(S)**

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,
   903 F.2d 1486 (11th Cir. 1990) ....................................................................2, 13

*Mallon v. Marshall*,
   268 F. Supp. 3d 264 (D. Mass. 2017) .......................................................24, 26, 29

*Marco v. Accent Publ'g Co.*,
   969 F.2d 1547 (3d Cir. 1992) ............................................................................15

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013) ..............................................................................15

*Matthews v. Freedman*,
   157 F.3d 25 (1st Cir. 1998) ...............................................................................29

*Muller v. Twentieth Century Fox Film Corp.*,
   No. 08 Civ. 02550, 2011 WL 3678712 (S.D.N.Y. Aug. 22, 2011) ........................32

*Oravec v. Sunny Isles Luxury Ventures L.C.*,
   No. 04-22890-CIV, 2010 WL 1302914 (S.D. Fla. Mar. 31, 2010) ........................36

*Perfect 10 Inc. v. Giganews*,
   No. CV 11-07098-AB, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015), *aff'd*,
   847 F.3d 647 (9th Cir. 2017) ............................................................................30

*Playboy Enters., Inc. v. Dumas*,
   53 F.3d 549 (2d Cir. 1995) ...............................................................................15

*Polsby v. St. Martin's Press, Inc.*,
   No. 97 Civ. 690, 2001 WL 180124 (S.D.N.Y. Feb. 22, 2001) ..............................33

*Quaglia v. Bravo Networks*,
   No. 04-10460-RWZ, 2006 WL 2691686 (D. Mass. Sept. 19, 2006) .....................27

*Randolph v. Dimension Films*,
   634 F. Supp. 2d 779 (S.D. Tex, 2009) ................................................................33

*Scott-Blanton v. Universal City Studios Prods. LLLP*,
   593 F. Supp. 2d 171 (D.D.C. 2009) ...................................................................37

*Soc'y of Tranfiguration Monastery, Inc. v. Archbishop Gregory of Denver, Colo.*,
   780 F. Supp. 2d 121 (D. Mass. 2011) ................................................................29

*Spooner v. EEN, Inc.*,
   644 F.3d 62 (1st Cir. 2011) .....................................................................29, 34, 36

**PAGE(S)**

*T-Peg Inc. v. Vt. Timber Works, Inc.*,
  669 F.3d 59 (1st Cir. 2012)........................................................................... 27, 28, 33-34

*Vargas v. Transeau*,
  No. 04 Civ. 9772, 2008 WL 3164586 (S.D.N.Y. Aug. 6, 2008), *aff'd*,
  352 F. App'x 458 (2d Cir. 2009) (Summary Order)...............................................32

*We Shall Overcome Found. v. Richmond Org., Inc.*,
  330 F. Supp. 3d 960 (S.D.N.Y. 2018)....................................................................23

*Woodhaven Homes & Realty, Inc. v. Hotz*,
  396 F.3d 822 (7th Cir. 2005) .................................................................................28

*Zamoyski v. Fifty-Six Hope Rd. Music Ltd.*,
  767 F. Supp. 2d 218 (D. Mass. 2011) ............................................... 27-28, 29, 32

## STATUTES & OTHER AUTHORITIES:

17 U.S.C. § 505......................................................................................................7

Fed. R. Civ. P. 11(b)(2)........................................................................................13

DRI LR 54.1(b)(1)(D)...........................................................................................38

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 9.03[D] (2019) ...............2, 13

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.10 (2019)....................4, 29

I.      **INTRODUCTION**

The fees[1] requested by the Defendants are not due "as a matter of course" and are not warranted in this case based on the several "nonexclusive factors" identified by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), and *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016), each of which weigh in favor of the Markham Parties.  The *Fogerty* factors include "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  510 U.S. at 234 n.19 (citation omitted).  When properly weighed, as instructed by the Supreme Court, it is apparent that an award of fees in this case would frustrate, not further, the purposes and policies of the Copyright Act by chilling artists like Bill Markham from asserting their rights against large corporations such as Hasbro. *Id.* at 524. The Defendants' Motion should be denied for at least the following reasons.

**First,** the Defendants' Motions for fees should be denied because the Markham Parties did not put forward an objectively weak case – factually or legally.  The Markham Parties presented multiple reasonable arguments for why the Game of Life could not and should not be considered a work for hire.[2]  Defendants focus almost exclusively on the Markham Parties' third argument: that *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740-41 (1989) ("*CCNV*"), destroyed the rationale of the "instance and expense" test.  Defendants fail to acknowledge, among other things, that the foremost expert on copyright law and the author of the prestigious *Nimmer on Copyright* treatise (cited extensively by this court in its Findings of Fact) has

---

[1]   "Fees" as referred to herein refers to both the costs and fees requested by the Defendants.

[2]   Plaintiffs repeatedly made three objectively reasonable arguments, namely (1) the express reservation of rights in the assignment agreement precluded application of the instance and expense test; (2) the test could not be satisfied even if improperly applied because no party satisfied both the instance and expense prongs; and (3) the test had been overruled. *See, e.g.,* D.I. 152 at 9-13; D.I. 218 at 17-20.

unambiguously declared that the "support undergirding the [instance and expense test] line of

cases has entirely collapsed" as a result of *CCNV*.  *See* 3 Melville B. Nimmer & David Nimmer,

*Nimmer on Copyright* § 9.03[D] (2019).  Mr. Nimmer is not alone in his assessment; the

Eleventh Circuit Court of Appeals agrees and has similarly stated that the rationale of the

instance and expense test had been "rejected" by *CCNV*.  *M.G.B. Homes, Inc. v. Ameron Homes,*

*Inc.*, 903 F.2d 1486, 1490-91 (11th Cir. 1990).  For the Markham Parties to advance these very

same arguments, as an issue of first impression[3] in the First Circuit, is legally objectively

reasonable.

   The Markham Parties' legal arguments were corroborated by over 50 years of history

about the Game of Life, as spelled out in the documentary evidence presented throughout the

proceedings, none of which identified Grace Chambers or Leonard Israel.  Although Bill

Markham was unable to speak for himself in this case, the documentary evidence consistently

identified Bill Markham as the creator of Game of Life, and the only dispute between the parties

was whether Bill Markham could be considered to have created the work alone or as a work-for-

hire for Reuben Klamer.  The new work-for-hire theory that ultimately carried the day – *i.e.*, that

the game was create by Grace Chambers and Leonard Israel for Bill Markham – was proposed

by Defendants only after the close of discovery and mere weeks before trial.  In fact, even from

an early point the facts showed that authorship was murky, as the registrations originally listed

Milton Bradley as the author of the Game despite all evidence to the contrary.[4]  In this case, the

Markham Parties' arguments and reliance on decades of evidence crediting Bill Markham with

---

[3]   Regardless of whether *Forward* represents binding precedent on whether district courts must use the instance and expense test, there is no dispute that the *Forward* court was not presented with, and therefore did not decide, the question of whether *CCNV* had any impact on whether the test should be applied.

[4]   Even the Court agreed the registrations were incorrect in listing Milton Bradley as the original author. *See* Findings of Fact and Conclusions of Law, D.I. 240 at 22 (finding that Klamer was the author *ab initio* of the copyrighted works)

the creation of the Game was not unreasonable.  Thus, the Markham Parties' case was objectively reasonable, weighing against an award of fees.

*Second*, the remaining *Fogerty* factors, which were all but ignored by the Defendants, each weigh in favor of the Markham Parties.  The Markham Parties did not have an improper motivation – their motivation was to restore royalty payments due to Bill Markham's heirs and to correctly identify Bill Markham as the author of the Game of Life copyrights.  Further, an award of fees in this case would not serve any purpose of deterrence, as the Markham Parties have not previously litigated a copyright issue relating to the Game and are not likely to file any further cases relating to copyrights regardless of whether a fee is awarded.  In fact, an award of fees would serve only to deter future independent artists, such as Markham, from bringing potentially meritorious cases for fear of being bankrupted if they don't succeed.[5]

*Third*, awarding attorneys' fees in this case would frustrate, rather than promote, the policies of the Copyright Act.  For nearly 60 years, the Markham family has held and guarded its sincere belief, corroborated by documentary evidence, that Bill Markham was the creator of the Game of Life.  After the death of Bill Markham, the Markhams watched as Reuben Klamer began to claim sole credit for the Game and attempted to restrict the flow of royalties associated with the Game.  The widow and children of Bill Markham were forced to pursue the present case because Hasbro refused to release royalties and failed to clarify the authorship of the Game, even if the case meant going against goliaths in the industry such as Reuben Klamer, Art Linkletter, and Hasbro, the largest toy and game company in the United State.  The Copyright Act and its fee-shifting provision was intended to encourage plaintiffs to pursue meritorious cases, not to deter individuals such as the Markhams from bringing claims against large corporations such as

---

[5]    Bill Markham filed for bankruptcy less than a decade after the Game was created.

3

Hasbro.  Awarding attorneys' fees in this case would have a chilling effect on future individuals considering whether to sue to establish rights they have to works of authorship.  *See Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) ("[B]ecause novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim.").  The outrageous fees being sought by Hasbro and the other Defendants would serve no purpose other than to financially ruin the individuals of the Markham family.  An award of fees therefore is inappropriate in this case.  *See Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 158 (3d Cir. 1986) ("[T]he aims of the statute are compensation and deterrence where appropriate, but not ruination.").

*Fourth*, the fees requested by the Defendants are excessive.  Defendants collectively ask for over $4 Million in fees and costs.  An award of this amount is unprecedented in the First Circuit, and other circuits have entertained such requests only a handful of times, and only then in extreme and exceptional circumstances.  4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.10 (2019).  An award at even a fraction of what the Defendants are asking would undercut the polices of the Copyright Act.  This is particularly the case when, as here, the Markham Parties took all reasonable steps to efficiently litigate the authorship issue in this case first before its other claims.  Conversely, Defendants have not litigated this case reasonably and consistently filed separate yet substantively similar briefs over the course of the litigation.  On nearly every occasion, Defendants used an army of over 30 attorneys to submit substantially the same arguments, causing their fees to triple.  Defendants should not now be allowed to use the fee shifting provisions of the Copyright Act to push their inefficiencies onto the Markham Parties.

4

The decision to award fees is left entirely to the Court's equitable discretion. For all of the above reasons, this Court should deny the Defendants' Motions.

## II.    <u>BACKGROUND</u>

The Court is familiar with the procedural and factual background of this case from its own Findings of Fact and from the Defendants' Motions. Plaintiffs provide only such additional background as relevant to the present combined Response and to emphasize the portions of the case which Defendants are attempting to sweep under the rug.

Plaintiffs initially brought this case in October of 2015 primarily as a breach of contract action following Hasbro's refusal to release royalties based on Reuben Klamer's refusal to sign a new escrow agreement which would allow the royalty-receiving parties to continue receiving royalties as per their long-standing arrangement. *See* Complaint, D.I. 1. When the case was filed, the Markham Parties were not receiving ANY royalties and had not for some time. *Id.* Following the intervention of Reuben Klamer (and the addition of the Linkletter parties into the case), the parties exchanged various pleadings and Klamer and the Linkletter defendants filed motions to dismiss the case on various grounds. D.I. 49; D.I 62. These motions were denied entirely and withdrawn, respectively. D.I. 128; D.I. 102. The parties also filed motions regarding Plaintiffs' prior counsel, who had moved to a new firm. D.I. 75. Although a claim requesting a declaration that Bill Markham was the "sole creator, designer, developer, inventor, author, and owner of the Game, and all of its intellectual property . . . " was included in the First Amended Complaint, the parties were not able to litigate this claim until discovery was re-opened in 2017. *See* D.I. 14; D.I. 94; D.I. 107. Thereafter, Defendants continually asserted the same theory with respect to the right for statutory termination: that no such right could exist

5

because Klamer was Bill Markham's employer. [6] *See* D.I. 140, Ex. B; D.I. 142, Ex. A.  The

parties conducted discovery under this contention through the close of discovery on September

29, 2017.

On October 24, 2017, mere weeks before the beginning of trial in the case, Defendants

**for the first time** asserted a theory that the Game was a work-for-hire, with Grace Chambers and

Leonard Israel as actual creators of the Game of Life and Bill Markham as their employer.

Hasbro was the first Defendant to raise this new theory.  The Markham Parties quickly objected

to Hasbro's belated disclosure in a letter to the Court dated October 31, 2017 and a

teleconference on November 2, 2017.  *See generally* D.I. 142.  After receiving permission to file

a motion, the Markham Parties filed a motion to strike Hasbro's new theory.  *Id.* Fifteen minutes

after the motion was filed, Klamer served supplemental discovery responses now including this

new theory.  *Id.*  Klamer's supplementation could have been served during discovery, when

Hasbro filed its own supplemented discovery responses, or after the Markham Parties repeatedly

objected to the late supplementation, but instead Klamer waited until the Markham Parties had

filed a first motion so as to cause the Markham Parties to have to prepare and file a second

motion, driving up litigation costs.  *Id.*  The Markham Parties' objections were ultimately

overruled by the Court the day before the trial began in a text order. *See* November 15, 2017

Text Order.

The Markham Parties agreed to streamline the case and proceed with the first phase of

the trial in this case, beginning on November 16, 2017.  As a concession to Defendants and to

allow the Court to hear live testimony from Defendants' witnesses, the Markham Parties agreed

---

[6]    Hasbro initially offered a second theory: that the Game was a work-for-hire by Bill Markham for Milton
Bradley.  This theory was later abandoned and waived, and Hasbro did not pursue it at trial or in its post-
trial briefing.

to try the initial portion of the case in Los Angeles.  Defendants' witnesses gave testimony that both supported and contradicted the documentary evidence of the case, but the Court did not make any statement regarding the credibility of the witnesses until its final Findings of Fact delivered at the conclusion of the entire case, more than a year later.  D.I. 240.  The trial then proceeded to a second phase in Rhode Island after a disinterested witness – the niece of Bill Markham – contacted the Court regarding her personal experience playing the prototype with her Uncle prior to its commercial release and witnessing the industry acknowledge Markham as having created the Game. *See* D.I. 178, Ex. A; D.I. 184. The Court further heard testimony from expert witnesses.

The Court issued its Findings of Fact and Conclusions of Law on January 25, 2019 after all the testimony was received.  D.I. 240.  Again, in order to simplify proceedings, the Markham Parties agreed to settle the majority of the Causes of Action and stipulated to dismissal of those claims on August 14, 2019 leaving only the "authorship" and "right of termination" issues for appeal.  D.I. 249.  Per the stipulation, each side was to pay its own costs and fees relating to the dismissed claims. *Id.*  The Markham Parties have since filed a Notice of Appeal and intend to appeal the Findings of Fact to the First Circuit.  D.I. 267.

## III.   DENIAL OF FEES IS APPROPRIATE GIVEN THAT THE *FOGERTY* FACTORS WEIGH IN FAVOR OF PLAINTIFFS

### A.   Legal Standards

The Copyright Act provides that courts may, but are not required to, "award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  The Supreme Court has made absolutely clear that this decision is left ultimately to the discretion of the Court, and that in no event should fees be granted as a matter of course.  *Fogerty*, 510 U.S. at 534; *see also*

*Kirtsaeng*, 136 S. Ct. at 1988 ("[I]f some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion.").

The First Circuit applies four nonexclusive factors in determining whether to award attorneys' fees as outlined by the Supreme Court in *Fogerty*.  These four factors are frivolousness, motivation, factual and legal objective unreasonableness, and considerations of compensation and deterrence.  *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 108 (1st Cir. 2011) (*citing Fogerty*, 510 U.S. at 534 n.19).  In the *Fogerty* analysis, objective reasonableness of the arguments presented by the non-prevailing party is critical.  *Kirtsaeng*, 136 S. Ct. at 1985.  The Copyright Act is best served when parties advance meritorious arguments, and therefore not every unsuccessful plaintiff should be required to pay the fees associated with litigating their case. *Id.*  Instead, a prevailing party must show that the opponent's claims were "objectively weak." *García-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14, 20 (1st Cir. 2005).

However, even where a party's case has been objectively weak, a court can still refuse to award attorneys' fees based on other factors about the case.  *Kirtsaeng*, 136 S. Ct. at 1988 ("objective reasonableness can be only an important factor in assessing fee applications – not the controlling one").  For example, cases that present novel arguments or complex issues of law should generally not lead to an award of fees, as awarding fees against plaintiffs who brought reasonable actions might lead to fewer meritorious suits being filed.  *See Lotus Dev.*, 140 F.3d at 75 ("[B]ecause novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim.").  Advancing a novel and reasonable but ultimately unsuccessful case serves the purposes of the Copyright Act.  *Kirstaeng,* 136 S. Ct. at 1986-87.

8

An award of fees may be appropriate if it serves to punish litigation misconduct, or if it deters additional meritless cases.  *Id.* at 1988.  On the other hand, a lack of such misconduct or deterrence reduces the value of awarding attorneys' fees.  Overall, *Fogerty* requires District Courts to use their discretion in determining whether to award fees "with the goal of vindicating the overriding purpose of the Copyright Act[.]"  *Lotus Dev.*, 140 F.3d at 73.

> **B.** **The Markham Parties' Copyright Claims Are Objectively Reasonable And Not Objectively Weak**

Far from objectively weak, the arguments presented by the Markham Parties were consistent with the long standing history of the Game of Life, and were supported by all of the contemporaneous documentary evidence, subsequent deposition testimony in the 1980s, and even much of the testimony adduced during the present proceedings.  For example, Bill Markham was identified as having "invented, designed, and developed" the Game of Life in both the Assignment Agreement he signed with Reuben Klamer and in correspondence he received from Reuben Klamer. *See* Plaintiffs and Counter-Claim Defendants The Markham Parties' Findings of Fact ("FOF"), D.I. 220 ¶¶ 257-58, 264, 277. Other documents from Reuben Klamer complimented Bill Markham on having "rush[ed] the game to completion" and having "done a wonderful job."  *Id.* ¶ 291. Bill Markham testified under oath that he personally created multiple aspects of the game, including the iconic spinner. *Id.* ¶ 75. Grace and Leonard also attributed the creation of the spinner to Bill Markham. *Id.* ¶¶ 75-76, 107. Reuben Klamer similarly testified that Bill Markham was the one who actually put the finishing touches on the game, when he completed assembling the board at the Chasen's dinner presentation with Milton Bradley. *Id.* ¶ 139. Even well into this case, Klamer filed a Declaration, subject to the penalty of perjury, referring to the copyrighted prototype as "Mr. Markham's Prototype." *Id.* ¶ 289. This is

9

particularly telling given that Klamer testified that he visited Markham's studio several times a week and oversaw all aspects of the prototype's development. 11/16/2017 Trial Tr. 18:23-19:1.

Also noteworthy was the complete absence of any mention or recognition of Grace Chambers or Leonard Israel in the previously understood history of the creation of the Game of Life. None of the profusion of documents from the previous five decades mention, let alone describe any substantive contributions made by Ms. Chambers or Mr. Israel to the prototype of the Game of Life. Neither Ms. Chambers nor Mr. Israel was asked to sign the Assignment Agreement. Even during trial, Leonard Israel testified that he remembered making "thumbnail sketches" for different possible approaches to the cover of the Game, but did not create the cover itself. 11/16/2017 Trial Tr. 117:11-13, 133:21-134:10. Mr. Israel testified unequivocally that he did not make any physical contributions to the prototype. 11/16/2017 Trial Tr. 114:5-115:1; *see also* FOF ¶ 6. Similarly, Grace Chambers testified that she made houses for the game board from balsa wood but could not provide any more specifics than that. 11/17/2017 Trial Tr. 71:13-20. These routine components were then used by Bill Markham to create final versions of the prototype houses for use on the actual game board. FOF ¶ 110. This testimony is corroborated by Bill Markham's own prior testimony, as well as with Leonard's deposition testimony in this case that he only did "routine tasks" at Markham's request. *Id.* ¶ 113. The Court's Findings of Fact ultimately found that Grace Chambers and Leonard Israel physically worked on the prototype, but given the mountain of evidence Plaintiffs presented, their argument that Bill Markham was the sole creator of the Game was not unreasonable or objectively weak.[7] In fact, the Markham Parties successfully defended two Motions to Dismiss by Defendants, indicating that their case was objectively reasonable. *See Alifax Holding SpA v. Alcor Sci. Inc.*, No. CV 14-440 WES,

---

[7] Indeed, Ms. Chambers testified that even her own résumés did not describe any work she did on the prototype of the Game of Life.

2019 WL 4247737, at *3 (D.R.I. Sept. 5, 2019) (Smith, C.J.) (finding that denial of a dispositive motion suggested that the claim was not "objectively weak").

Even with respect to the work-for-hire arguments, the Markham Parties advanced objectively reasonable arguments.  Defendants assert that one of the Markham Parties' arguments was objectively weak because it was foreclosed by First Circuit precedent. Defendants have not argued, nor could they, that binding First Circuit precedence rendered the Markham Parties' other arguments objectively weak.  Even assuming this precedent was binding, Defendants' argument would create a rule that any attempt to challenge and possibly overturn Circuit precedent is *per se* objectively weak.  This rule would result in absurdity; in a hypothetical situation where the Supreme Court altered its interpretation of a law, any attempt by a party to assert the new interpretation in a Circuit would be judged "objectively weak" until the prior Circuit precedent was formally reversed with the Supreme Court's instructions.  This cannot and should not be the case.  Moreover, the argument against the instance and expense test was but one of Plaintiffs' arguments.  In fact, Plaintiffs asserted a number of reasonable arguments against the work-for-hire theories, regardless of which test was used, and therefore an award of fees would be inappropriate.

Even if the instance and expense test applied, the Markham Parties had strong arguments regarding why Reuben Klamer could not be considered an "employer" under the test.  In particular, the law is clear that the "expense" prong may be satisfied if a party bore financial risk for the venture.  As the uncontroverted evidence showed at trial, Mr. Klamer admitted that he bore no risk whatsoever for the success or failure of the Game. 11/17/2017 Trial Tr. 10:8-11; FOF ¶ 189 ("Q: My question is if there were no sales of the Game of Life, LINK Research still retained the remainder of the $5,000 deposit; correct?" A: Yes.").  Thus, the Markham Parties' argument that he could not satisfy the expense prong of the instance and expense test was not

11

objectively weak.  Although the Court found that Klamer satisfied the expense test because he was willing to pay Markham's costs on the project, even the Court itself noted that it was Hasbro, not Klamer, who "bore the risk of [the Game's] failure to sell to the public."  *See* Findings of Fact and Conclusions of Law, D.I. 240 at 20 n.5.  With respect to the theory that Bill Markham himself was an employer under the instance and expense test, this argument was not raised until after the end of fact discovery.  The Markham Parties properly objected to this late-raised theory, and though the Markham Parties were overruled, they maintained their objection throughout trial and intend to argue this decision was incorrect.  Moreover, the Markham Parties argued that there was no evidence either employee made any significant contribution to the actual prototype of the Game of Life.  As a result, the Markham Parties' arguments were not objectively weak, and therefore an award of attorneys' fees would not serve the interests of justice.

      1.    The Markham Parties' Case Against Work-For-Hire Was Not "Objectively Weak"

          *a.*    *The Markham Parties Did Not Advance an Objectively Weak Case That The Instance And Expense Test Was Overruled*

To begin with the focus of Defendants' motions, the Markham Parties' arguments that *CCNV* abrogated the instance and expense test were objectively reasonable.  The instance and expense test ultimately represents judicial decisions on how to determine an "employer" under an Act of Congress – specifically, the 1909 Copyright Act.  *CCNV* held that in construing the term "employer" as it related to the 1976 Copyright Act, Courts should look to common law agency principles because the term was not defined otherwise in the statute.  490 U.S. at 740-41. *CCNV* therefore should have been found to abrogate the instance and expense test or at least be reasonably interpreted to have done so.  But only because the Supreme Court decides issues actually presented to it – it did not itself deal the fatal blow to the test.  Instead the Supreme

Court provided the roadmap.  Notably, the Markham Parties are not the only entity to have ever advanced this reasoning.  As the Eleventh Circuit noted in dicta, the rationale of the instance and expense test was "rejected" by *CCNV*.  *M.G.B. Homes,* 903 F.2d at 1490-91.  Similarly, David Nimmer, who is a sufficiently persuasive authority that this Court cited his treatise favorably five different times in its Findings of Fact, has argued that *CCNV* abrogated the instance and expense test.[8]  3 *Nimmer on Copyright*, *supra*, § 9.03[D].  Supported by such sophisticated legal minds, the Markham Parties' arguments cannot be said to have been objectively weak.

Defendants argue that this Court found *Forward v. Thorogood,* 985 F.2d 604 (1st Cir. 1993), to be binding precedent, and therefore that the Markham Parties' arguments were objectively weak.  The Markham Parties argued, and still maintain, that (i) *CCNV* is superior binding precedent, and (ii) *Forward* did not represent binding precedent on the specific legal point of whether *CCNV* abrogated the instance and expense test.  Nevertheless, merely disagreeing with binding precedent does not mean a case is objectively weak.  Rule 11, for example, explicitly notes that a party may make reasonable arguments against existing law.  Fed. R. Civ. P. 11(b)(2).  Moreover, in the event that *Forward* does represent binding law on this issue, the Markham Parties are still able to present their arguments to the Court of Appeals.  In fact, this Court suggested, almost encouraged, that this very approach would be appropriate: "If the First Circuit disagrees with me, you can make all these arguments to the First Circuit." 3/25/19 Hearing Tr. 25:21-26:4; *see also id.* at 7:5-17 (". . . as far as I'm concerned the *Forward* case is binding circuit precedent . . . if the First Circuit wants to abrogate its holding in *Forward* and say that *CCNV* requires that, the First Circuit can do that. But I'm not the First Circuit.").  Mere disagreement with established precedent, especially when supported by another Court of

---

[8]    Mr. Nimmer would have made the very same argument to this Court himself but for his law firm's previously unknown conflict of interest, which precluded his ability to continue as Plaintiffs co-counsel.

Appeals and the author of the premier treatise on copyright law, does not mean an argument is objectively weak.

Whether or not *CCNV* applies would fundamentally change the outcome of this case. Under the agency factors promoted by *CCNV*, Klamer would not be Markham's employer, as the vast majority of the factors would weigh against him.  For example, Bill Markham, an independent contractor, provided his own tools, worked on the Game in an office he owned, set his own schedule, had the right to hire and fire employees, paid his employees, did not receive benefits from Klamer, and had no taxes withheld by Klamer.  FOF ¶¶ 81, 119-27.  This would dispense of Defendants' primary work-for-hire contention.  As described in further detail below, the Markham Parties also argue that the Defendants waived any argument that Ms. Chambers or Mr. Israel made any original contributions to the prototype, and in any event failed to prove any such contributions, meaning that the work could not be found to be a work-for-hire for Bill Markham by his employees.  Application of the *CCNV* test would therefore result in the Game being unable to be considered a work-for-hire.  The Markham Parties' appeal remains active, and the mere fact that this Court decided it could not rule for the Markham Parties due to alleged precedent does not mean the Markham Parties' arguments are unreasonable.

     b. *Even Under The Instance And Expense Test, The Markham Parties'*
       *Arguments Were Not Objectively Weak*

Moreover, as referenced above, the Markham Parties did not rely solely on *CCNV*, but instead made reasonable arguments that the test did not apply and, even if applied, Klamer could not be Markham's employer.  First, instance and expense law is clear that a work will generally be found to not be a work-for-hire if there was an "express contractual reservation of the copyright in the artist." *See, e.g., Lin-Brook Bldrs. Hardware v. Gertler,* 352 F.2d 298, 300 (9th Cir. 1965).  Such a situation appeared to exist in the present case, where the Assignment

14

Agreement between Bill Markham and Reuben Klamer explicitly stated that Markham's rights to the copyrights underlying the Game of Life would "revert to Markham." FOF ¶¶ 36, 192-95. Although the Court's Findings of Fact found this language to be hypothetical, it certainly references a reversion of copyrights to Bill Markham, and it was not unreasonable to argue under *Gertler* that this reservation of rights resolved the work-for-hire question in the Markham Parties' favor.

Second, the Markham Parties made objectively reasonable arguments that Klamer could not be Bill Markham's employer under the instance and expense test because he could not satisfy the "expense" prong of the test.  Courts will look at various factors to see if the expense prong is met, and Klamer appeared to have failed each of these factors.  For example, the party which provides "tools, resources, or overhead" may be found to satisfy the expense prong, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 140 (2d Cir. 2013); *Marco v. Accent Publ'g Co.*, 969 F.2d 1547, 1550 (3d Cir. 1992), but Bill Markham owned his own offices and provided his own tools for the creation of the game. *See* FOF ¶ 81. There is no dispute that Bill Markham owned his own company, and Klamer was not his "employer" in the traditional sense.  In such a situation, the nature of payment by the hiring party is considered indicative of whether a work was created at another party's expense, and Bill Markham was paid in royalties as opposed to receiving a salary.  *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 555 (2d Cir. 1995) (payment of a royalty "generally weighs against finding a work-for-hire relationship").  Finally, the expense test may be satisfied by the party which bore financial risk for the success or failure of the work. *See, e.g., Marvel Characters,* 726 F.3d at 140 (noting that the law is ultimately interested in who took the "risk with respect to the work's success").  Reuben Klamer himself testified that his company would have profited regardless of whether a single copy of the Game of Life was ever sold, meaning he incurred no financial risk for the Game.  11/17/2017 Trial Tr. 10:8-11. Given

15

that each of these arguments weighed against Klamer being able to satisfy the expense prong of the instance and expense test, the Court could reasonably have found based on the Markham Parties' objectively reasonable arguments that Reuben Klamer could not be considered Bill Markham's employer.  The Markham Parties' reasonable – even if ultimately unsuccessful – arguments should prevent an award of attorneys' fees.

> c.    *The Markham Parties Advanced Reasonable Arguments that Neither Grace Chambers Nor Leonard Israel Worked on the Actual Prototype of the Game*

Defendants' Motions again misstate the Markham Parties' arguments with respect to whether the Game of Life was a work-for-hire for Bill Markham by his employees.  Specifically, Defendants focus only on the fact that these individuals were Bill's employees, but ignore completely the argument the Markham Parties actually presented: that Grace Chambers and Leonard Israel did not contribute significantly to the actual prototype of the Game.  The registrations on the copyrights underlying the Game of Life were on the prototype of the Game. FOF ¶¶ 234-37.  In order to find that these works were works-for-hire created by Grace Chambers and Leonard Israel for Bill Markham, the Defendants therefore had to prove that Ms. Chambers and Mr. Israel made original contributions to the prototype of the Game.  The Markham Parties advanced objectively reasonable arguments that no such proof existed.  For example, Bill Markham and Leonard Israel each testified that Bill would work directly on projects "he was really interested in," and that he assigned only "routine" tasks to his employees. *Id.* ¶ 113.  Of the three registrations in this case – for the cover, board, and rules of the prototype – Leonard Israel testified that he was uninvolved with the board and the rules. *Id.* ¶¶ 99-102.  As for the cover, Mr. Israel testified that he created sketches of the cover, but did not create the cover itself. *Id.*  Similarly, Ms. Chambers testified that she created balsa wood houses to serve as models for how houses might look on the actual prototype game board. *Id.* ¶ 110.  As to

16

creating the actual board, however, she did not understand the basics of how to create a prototype, including not understanding how to even bind the board together.  *Id.* ¶¶ 105-06, 114. Ms. Chambers also was unaware that multiple copies of the original prototype were made, which would indicate that she worked on a copy and not the original prototype. Moreover, multiple witnesses testified that various copies of the Game of Life were created, and no proof was introduced that the employees worked on the version that was ultimately submitted to Milton Bradley and the Copyright office. *Id.* ¶ 83. To the contrary, the evidence adduced unambiguously shows that Bill Markham completed the prototype "for the very first time" at Chasen's.  *Id.* ¶ 139.  Milton Bradley took that prototype, which Markham exclusively had assembled, back to the East Coast.  The Court's Findings of Fact easily could have found that this evidence represented at most Mr. Israel's and Ms. Chamber's "routine" tasks, unrelated to the actual creation of the prototype that was the subject of the copyright.  The Findings of Fact may have decided otherwise, but that ultimate decision does not render the above arguments unreasonable.

The Defendants each also assert that the Markham Parties had an objectively weak case by citing to oral arguments in which counsel for Plaintiffs acknowledged that if Grace Chambers and Leonard Israel were Bill Markham's employees, there would be no rights of termination if the Court determined that Chambers and Leonard contributed copyrightable work to the prototype.  This citation again fails to provide a full context or address the Markham Parties' reasonable arguments.  First, as noted previously, the Markham Parties believe that introduction of the belated theory was improper and intend to appeal that issue.  At the time of the testimony, however, the theory had been admitted, and the Markham Parties could only preserve their objections for appeal.  *See* Transcript of Plaintiff's Motion to Amend Findings of Fact and Conclusions of Law, D.I. 246 at 14:7-12 ("Mr. Cole: [T]he Markham Parties have also objected to that late-raised theory . . . The case originally revolved only around whether Klamer was the

employer of Markham."); *see also id.* at 39:4-14 (noting the Markham Parties' "previous objection to the late introduction of the theory of Markham being the employer.").  Courts frequently have excluded theories that were first disclosed after the close of fact discovery, and the Markham Parties' preservation of their objection is entirely reasonable and not objectively weak.

Second, the selectively cited transcript does not address the Markham Parties' central argument regarding Grace Chambers and Leonard Israel:  that they did not work on the prototype itself, and therefore that the prototype could not have been a work-for-hire performed by them. As described above, the work-for-hire analysis requires two prongs: that original contributions to a work were made, and that the person making such original contributions was an employee. The Markham Parties have admitted that Grace Chambers and Leonard Israel were Bill Markham's employees, but never ceded the first prong.  In light of these omitted arguments, the Markham Parties' arguments that Grace Chambers and Leonard Israel did not contribute to the actual prototype of the Game were not objectively weak.

> 2. The Markham Parties' Litigation Decisions Following the November Trial Were Objectively Reasonable

Hasbro apparently takes issue with the fact that Plaintiffs did not immediately drop its case after the testimony delivered – entirely by Defendants' witnesses – at the November 2017 portion of the trial.  *See* Hasbro Br. 5-6.  To the extent that Hasbro is arguing that the Markham Parties' decision to continue advancing the case after the November trial justifies an award of fees, this argument should be firmly rejected.  To begin with, the First Circuit has made clear that a refusal to settle cannot be grounds for an award of attorneys' fees.  *See Lotus Dev.*, 140 F.3d at 75 (noting that awarding fees because of a refusal to settle would deter parties with meritorious cases from pursuing litigation, which would run contrary to the purposes of the Copyright Act).

However, the Markham Parties' case remained objectively reasonable after the November trial for multiple factors.

First, as discussed above, even though the Court ultimately sided with Defendants, significant evidence was revealed in California which would have permitted the Court to conclude that the witnesses had not in fact made original contributions to the prototype, or that the testimony of at least Klamer could be viewed as lacking credibility.  At the conclusion of the November trial, only the Defendants' case-in-chief had been presented, and even this testimony was rife with contradictions and statements that deviated from the contemporaneous documents. The Court gave no indications of its credibility determinations at the time, and the Markham Parties were objectively reasonable in believing that the Court might ultimately find for them.

Second, Hasbro's letter was concerned solely with the right of termination, and the Markham Parties' Third Claim for Relief is far broader.  The Markham Parties explicitly sought declarations that Bill Markham was the "author" of the Game of Life and that the intellectual property rights associated with the Game "vested in Bill Markham at its inception."  *See* Third Amended Complaint, D.I. 127 ¶ 83. Such a declaration has significant independent value in and of itself apart from underlying a statutory right of termination.  A significant factor in the Markham Parties' decision to bring this case at all was the gradual erosion of any recognition of Bill Markham's contributions to the Game of Life.  His contributions to the board game industry were being ignored, and the Markham Parties were watching as their husband and father was gradually being written out of history.  A declaration from a federal court that Bill Markham authored the Game would prevent any further erosion of his legacy, regardless of whether the Plaintiffs had a separate right of termination.  Such a declaration would also deter the larger parties from potentially breaching their contracts with the Markhams in the future, or from withholding royalties as it had done previously, precipitating this case.  Hasbro has placed great

19

weight on the right of termination issue because it is a corporation beholden to its shareholders and primarily concerned with being able to continue selling the game that earns it between ███ ███████ dollars per year.  But the Plaintiffs, mere individuals who are fighting for Bill Markham's legacy, are primarily concerned with clarifying who actually created the Game.  In fact, in proposing the framework of any potential settlement in their response letter to Hasbro, the Plaintiffs never once refer to a right of termination.  *See* Hasbro Br. Ex. 13 at 2.  Instead, the very first parameter referenced for any potential settlement was "assurances that Hasbro will acknowledge Bill Markham as the sole designer and creator of the Game[.]" *Id.* Even after the November trial, there remained a strong possibility that the Court would find that Bill Markham was the author of the Game of Life, either through his own contributions or under the Defendants' belated work-for-hire theory.  The Markham Parties therefore had no reason to drop their case after the November trial, and any argument that fees are justified because the Markham Parties continued the case should be rejected.

Third, it was only after the November trial (indeed, on the same day that Hasbro mailed its letter to Plaintiffs) that the niece of Bill Markham, Linda Mack Ross, felt compelled to reach out directly to the Court to state that she "did spend a lot of time" with Bill Markham "during the time the game was being created and eventually sold." *See* D.I. 178, Ex. A.  She specifically stated that she did not care about the Markham Parties receiving any funds, but that she "[did] care that my Uncle's name stays as the creator [of the Game.]" *Id.*  The Markham Parties were certainly objectively reasonable in their decision to investigate this new witness rather than submit to Hasbro's letter, and the Court even re-opened discovery to allow the parties to prepare for Ms. Ross's testimony.  *See* D.I. 184.  This discovery did not occur until long after Hasbro's deadline in its letter had passed.  Thus, any assertion by Hasbro that an award of fees is justified

20

because the Markham Parties continued to litigate the case after receiving their letter should be summarily rejected, and Defendants' Motions for fees should be denied.

**C.    Regardless Of The Objective Reasonableness Of Plaintiffs' Case, The Remaining Factors Weigh In Favor Of Denying The Award Of Fees**

Importantly, the issue of whether fees should be awarded in any particular case is left entirely to the equitable discretion of the Court, and is never automatic.  *Fogerty*, 510 U.S. at 534.  Even if arguments are found to be "objectively weak," a court may still determine that an award of fees would not advance the purposes of the Copyright Act. *Kirtsaeng*, 136 S. Ct. at 1984.  None of the Defendants in this case addressed the remaining *Fogerty* factors choosing only to focus on the objectively reasonableness of the case.[9]  All of the remaining *Fogerty* factors weigh heavily in favor of the Markham Parties.

1.    Plaintiffs' Case Is Not Frivolous

A case is frivolous if it has "no basis in law or fact." *Garnier v. Andin Int'l, Inc.*, 884 F. Supp. 58, 61 (D.R.I. 1995).  Particularly, cases are not frivolous where "a careful factual and legal analysis [is] required" to decide a legal issue as the Court did in this case.  *Id.*  As discussed at length, Markham Parties' case was not objectively weak, much less frivolous.  Thus, this factor weighs in favor of Markham Parties.

2.    Plaintiffs' Motivation Is Consistent With Purposes Of The Copyright Act

This Court has held that there was no "improper motivation" in bringing claims where there was a "legitimate theory of the case[.]"  *Alifax Holding,* 2019 WL 4247737, at *4 (Smith, C.J.).  Some cases have found an award of fees justified where there is an anti-competitive intent or other improper motivation in bringing the case in the first place, such as leveraging a settlement, extorting a larger settlement agreement, or gaining publicity.  *Janik v. SMG Media,*

---

[9]    By failing to address the remaining *Fogerty* factors, Defendants have waived their rights to do so.

*Inc.*, No. 16 Civ. 7308, 2018 WL 345111, at *13 (S.D.N.Y. Jan. 10, 2018).  A proper motivation

exists when a party "sincerely believed" they were entitled to copyright protection and used

litigation to vindicate their rights.  *Id.*  The First Circuit has clearly rejected the argument that the

refusal to settle should militate in favor of awarding attorneys' fees.  *Lotus Dev.*, 140 F.3d at 75.

In fact, the First Circuit cited the concerns addressed in *Fogerty* to support its position that

parties should not be faulted for prosecuting their claims.  *Id.*  In this case, the Markham Parties'

motivation is not improper because they held a sincere belief during the course of the litigation

that Bill Markham was the author of the Game of Life.  This case was brought initially only to

ensure that royalty payments were made as per the parties' agreement, and thereafter maintained

to conclusively determine the creation and authorship of a beloved board game.  This motivation

is not improper, and in fact furthers the purposes of the Copyright Act, which encourages

reasonable lawsuits and seeks to clarify for the public the extent and ownership of relevant

intellectual property.  Thus, this factor weighs in favor of denying an award of fees.

       3.    The Need To Advance Considerations Of Compensation And Deterrence

Courts have also previously found an award of fees justifiable where a party has engaged

in vexatious litigation or is likely to bring additional suits against additional parties following the

conclusion of the case.  *See Fogerty*, 510 U.S. at 532 n.18 ("In the case of a prevailing defendant

. . . if an award is to be made at all, it represents a penalty imposed upon the plaintiff for

institution of a baseless, frivolous, or unreasonable suit, or one instituted in bad faith."); *see also*

*Kirtsaeng*, 136 S. Ct. at 1989 (courts may award fees to "deter repeated instances of copyright

infringement or overaggressive assertions of copyright claims").  In this case, in contrast,

granting Defendants' Motions would serve to frustrate, rather than advance, the purposes of the

Copyright Act.  An award of fees would not serve any deterrent purpose, as a final decision in

this case will conclusively resolve the issue of termination rights and obviate the need for any

further dispute on the subject.  This is not the classic attorneys' fees case where a vexatious copyright owner asserts infringement against a broad range of companies over multiple cases. The Markham Parties have never previously advanced a copyright litigation, and each prior dispute between the parties was a simple matter of contract interpretation.  Courts have found the deterrence factor to have little weight where defenses were "not baseless," especially when "so much of the case turned on events that happened 50 or more years ago." *We Shall Overcome Found. v. Richmond Org., Inc*., 330 F. Supp. 3d 960, 969 (S.D.N.Y. 2018).

If anything, awarding fees in a case such as this will only serve to deter future individuals from pursuing reasonable cases on unsettled questions of law for fear that the corporation will demand millions of dollars in attorneys' fees.  The Markham Parties comprise the widow and child of Bill Markham who are attempting to clarify their rights based on reasonable arguments against a massive corporation.  An award of fees, would cause a chilling effect *discouraging* plaintiffs from filing meritorious cases.  Such a chilling effect would not advance the purposes of the Copyright Act, which instead *encourages* plaintiffs to file meritorious suits.  *See Kirtsaeng*, 136 S. Ct. at 1985; *see also Lotus Dev.*, 140 F.3d at 75 ("[B]ecause novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim.").

Furthermore, Courts have refused to award attorneys' fees in cases where the parties' "advocacy helped delineate the respective rights of creators[.]"  *Authors Guild, Inc. v. Hathitrust*, No. 11 CV 6351, 2013 WL 603193, at *1 (S.D.N.Y. Feb. 15, 2013).  In *Authors Guild*, the fact that certain arguments "were ultimately unpersuasive" did not mean that the claims were unreasonable and the Court found that "[t]he purposes of copyright would not be furthered" by awarding attorneys' fees.  *Id.* at *2. The Court was unpersuaded by the argument that only the

23

winning parties should be "rewarded for advancing the purposes of copyright in this litigation." *Id.* at *1.

Courts in the First Circuit have refused to award attorneys' fees in situations where such an award would "deter future litigants from seeking redress in hard-to-decide cases." *Mallon v. Marshall*, 268 F. Supp. 3d 264, 267 (D. Mass. 2017). The facts of *Mallon* are extremely similar to those in the instant case. In *Mallon*, plaintiffs claimed they were the co-author and co-owner of a scientific paper and thus had certain rights pertaining to its publication. In a line that is strikingly similar to the facts of this case, the court stated that "Mallon sought to use copyright to assert what he felt was a legitimate right concerning disposition and control of academic work that he contends was the result of his efforts." *Id.* at 266. Ultimately the plaintiff lost but attorneys' fees were not awarded because there was no bad faith, the question was closely decided, and there was no concern of deterring the plaintiff from filing a series of similar suits. *Id.* at 267. The instant case presents many of the same issues: the Markham parties "sought to use copyright to assert what [they] felt was a legitimate right concerning" the Game of Life property, a question of law of first impression was closely decided, and there is no concern of deterring the Markham Parties from filing similar suits. *Id.* at 266.

> 4.  Plaintiffs' Litigation Conduct was Reasonable and Plaintiffs Took Every Opportunity to Conserve Party Resources

Finally, the Markham Parties' litigation conduct was exceedingly reasonable, both in terms of avoiding fees and working cooperatively with the other parties. Just as a parties' misconduct may weigh in favor of awarding fees, a parties' reasonable conduct can weigh in favor of denying fees. *See, e.g.*, *Garnier*, 884 F. Supp. at 63 ("The plaintiff acted reasonably in prosecuting a case that involved complex legal problems, thus justifying a denial of a fee to the defendants."). For example, rather than try all of its issues at once, as a plaintiff would be

entitled to do, the Markham Parties agreed to try the work-for-hire issue separately so as to allow the parties to focus on that issue rather than the many contract issues also in the case. *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 574 (S.D.N.Y. 2011) (Finding the "generally respectful conduct of the litigation" outweighing allegations for attorneys' fees). As part of this agreement, the Markham Parties agreed to postpone or not take the depositions of multiple witnesses, all in the interest of avoiding unnecessary fees and expenses. The Markham Parties agreed to try the case in Los Angeles so that the Court could hear live testimony from the witnesses in this case and make the fairest decision possible, even when each of the witnesses were being brought by Defendants and the Markham Parties' case was being brought based on contemporaneous documents. This agreement was done so as to best accommodate all parties. In travelling to California, the Markham Parties (whose counsel is based in New York) willingly accepted greater expenses than the Defendants (all of whose counsel, besides Hasbro's, are based in California). The Markham Parties' exceedingly reasonable litigation conduct should not be punished by an award of fees, or future plaintiffs may find less reason to cooperate with opposing counsel.

In contrast, Defendants made few efforts to avoid expenses. Despite the fact that each Defendant advanced the same arguments, based on the same facts, each group of Defendants submitted their own motions, responses, and replies with respect to every issue in the case. Reasonable Defendants in this situation could have formed a joint defense group, or signed onto each other's briefs to preserve costs. Instead, Defendants involved seven different law firms, a dozen partners, and scores of staff in filing what would invariably be three briefs containing the same essential arguments. To the extent any Defendant had a slightly different argument with respect to any particular issue, such Defendant easily could have submitted a much shorter brief signing on to the main brief and making its additional argument. The Markham Parties, in

25

responding to Defendants' briefs, always sought to conserve resources and be respectful to the Court by submitting a single response to all three Defendants' briefs, emphasizing that Defendants' three briefs easily could have been a single brief.  Defendants ran up the bills and expenses in this case, and should not be rewarded for doing so by being granted millions of dollars in fees.

Defendants' only contention with respect to litigation misconduct is a passing reference to the disqualification of the Markham Parties' previous counsel.  The actions of prior counsel should not be imputed to plaintiff.  Notably, the Markham Parties filed no motions or responses in connection with prior counsel's actions except when ordered by the Court to move for a stay. It was prior counsel themselves who chose to switch law firms without properly notifying the Court, and prior counsel who responded to the motion for disqualification.  *See* D.I. 86 (identifying prior counsel, not the Markham Parties, as "Respondents" for the response). There can be no serious argument that the Markham Parties asked their counsel to switch law firms, and awarding fees against the Markham Parties for their prior counsel's actions would not serve the purpose of the Copyright Act.  Notably, Hasbro did not seek any sort of sanctions or fees in connection with its disqualification motion at the time.  It should not be permitted to seek those fees now, and seek to recover the fees from the Markham Parties instead of the prior counsel.

For at least the reasons provided above, all of the *Fogerty* factors weigh in favor of the Markham Parties and the Defendant's fee requests should be denied. The First Circuit has consistently denied the award of attorney's fees in cases where the *Fogerty* factors favored the non-prevailing party.  *See, e.g., Mallon*, 268 F. Supp. 3d at 266–67 (denying motion for fees where there were "no grounds for specific or general deterrence to favor fee-shifting" and there was no reason to believe the losing party would file similar suits absent punishment); *Alifax Holding,* 2019 WL 4247737, at *3 (denying a motion for fees where the claim was not

"objectively weak," there was no "improper motivation" in bringing the claim, and no need to

compensate one party nor was there a need to deter the other); *Garnier,* 884 F. Supp. at 63

(denying a motion for fees where each of the *Fogerty* factors favored the non-prevailing party);

*Airframe Sys.,* 658 F.3d at 110 (affirming the district court's denial of attorneys' fees where each

*Fogerty* factor was applied).

## IV.   DEFENDANTS' FEES REQUESTS ARE EXCESSIVE AND SHOULD BE DENIED OR SIGNIFICANTLY REDUCED

### A.   Legal Standards

The Supreme Court has made absolutely clear that this decision to award fees is at the

sole discretion of the Court.  *Fogerty*, 510 U.S. at 534.  The First Circuit has denied fees in their

entirety for requests for fees that are outrageously high.  *See, e.g., First St. Ins. Grp. v.*

*Nationwide Mut. Ins. Co.*, 402 F.3d 43, 44 (1st Cir. 2005) (finding it was within the discretion of

the court to deny a fee request where it was "so excessive" it "merit[ed] outright denial of any

fee").

The court also has broad discretion in determining how to fashion fees if they are

awarded. Although the lodestar method is the conventional framework for fashioning fee awards,

it is not the only method. *T-Peg Inc. v. Vt. Timber Works, Inc.,* 669 F.3d 59, 63 (1st Cir. 2012).

The Supreme Court held that the district court "may attempt to identify specific hours that should

be eliminated or it may simply reduce the award to account for limited success." *Hensley v.*

*Eckerhart,* 461 U.S. 424, 436-37 (1983).

Further, "[i]t is well-established that courts may consider a party's ability to pay" fees

awarded under Section 505. *Quaglia v. Bravo Networks,* No. 04-10460-RWZ, 2006 WL

2691686, at *2 (D. Mass. Sept. 19, 2006); *Zamoyski v. Fifty-Six Hope Rd. Music Ltd.*, 767 F.

Supp. 2d 218, 224 (D. Mass. 2011) (considering the "relative financial strength" of the parties in

27

awarding attorneys' fees); *Lieb,* 788 F.2d at 156 (noting that "[t]he relative financial strength of the parties is a valid consideration" and concluding that the sum requested was "large" and may be "excessive in light of the plaintiff's resources" and remanding to the district court for articulation of fee calculation). It is also well established that the proportion of the attorneys' fees to the damages claimed in the case is a valid consideration. *Lieb*, 788 F.2d at 156; *see also T-Peg*, 669 F.3d at 61 ("VTW . . . sought over $200,000, a steep sum for a case involving only $66,350 in damages."); *Woodhaven Homes & Realty, Inc. v. Hotz,* 396 F.3d 822, 824 (7th Cir. 2005) ("§ 505 demands that [the award] be 'reasonable' . . . $220,000, seems quite excessive . . . as [defendant] claimed only $55,000 in damages.").  Ultimately, this is an equitable judgment within the discretion of the court. *Hensley*, 461 U.S. at 436-37.

      **B.**     **The Defendants' Fee Requests Are Excessive And Should Be Denied**

      The First Circuit has held that where a fee request is "so excessive" it "merit[s] outright denial of any fee."  *First St. Ins.*, 402 F.3d at 44; *see also Bos.'s Children First v. City of Bos.*, 395 F.3d 10, 18 (1st Cir. 2005) (holding that the District Court "supportably concluded that 'the only reasonable fee is no fee at all.'") (citation omitted). The Defendants, collectively and individually, have requested grossly excessive fees in this case that far exceed any other award of fees in this Circuit.  Granting such massive fees would not only severely deter future plaintiffs from filing meritorious cases, ███████████████████████████. *See* Exs. A, B, C. Assisting large corporations in financially destroying relatively financially weak parties is not the purpose of the Copyright Act. *Lieb*, 788 F.2d at 156 ("The relative financial strength of the parties is a valid consideration[.]").

      In their Motions, Hasbro has requested $1,970,692.44, Klamer requested $1,866,347.31, and Linkletter requested $589,894.86, totaling $4,426,934.61.  Hasbro Br. 28-29; Klamer Br. 23; Linkletter Br. 7. Such fees, collectively and individually, are magnitudes greater than any award

the First Circuit has ever issued, or even considered. Since *Fogerty*, the awards issued by the

First Circuit have been significantly lower and more reasonable:

| Case | Award Requested | Award Granted |
| --- | --- | --- |
| *First St. Ins. Grp. v. Nationwide Mut. Ins. Co.*, 402 F.3d 43 (1st Cir. 2005); *Mallon v. Marshall*, 268 F. Supp. 3d 264 (D. Mass. 2017); *Alifax Holding Spa v. Alcor Sci. Inc.*, No. CV 14-440 WES, 2019 WL 4247737 (D.R.I. Sept. 5, 2019) (Smith, C.J.); *Garnier v. Andin Int'l, Inc.*, 884 F. Supp. 58 (D.R.I. 1995); *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100 (1st Cir. 2011) | Multiple | **Denied fees entirely** |
| *Matthews v. Freedman*, 157 F.3d 25 (1st Cir. 1998) | $60,000 | $25,000 |
| *García-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14 (1st Cir. 2005) | $111,721.82 | $111,721.82 |
| *Latin Am. Music Co. v. ASCAP*, 642 F.3d 87 (1st Cir. 2011) | $82,000 | $62,000 |
| *Spooner v. EEN, Inc.*, 644 F.3d 62 (1st Cir. 2011) | $175,714.30 | $98,745.80 |
| *InvesSys Inc. v. McGraw-Hill Cos.*, 369 F.3d 16 (1st Cir. 2005); *InvesSys Inc. v. McGraw-Hill Cos.*, No. Civ. A. 01-12048-GAO, 2003 WL 21696545 (D. Mass. May 27, 2003) | $476,273.87 | $228,583.78 |
| *Zamoyski v. Fifty-Six Hope Rd. Music Ltd.*, 767 F. Supp. 2d 218 (D. Mass. 2011) | $160,228.30 | $90,770.80 |
| *Soc'y of Tranfiguration Monastery, Inc. v. Archbishop Gregory of Denver, Colo.*, 780 F. Supp. 2d 121 (D. Mass. 2011) | $59,759.74 | $59,759.74 |
| *Broad. Music., Inc. v. C.B.G., Inc.*, No. 11-cv-40142-FDS, 2014 WL 4656879 (D. Mass. Sept. 12, 2014) | $34,270 | $12,000 |

The amount of fees awarded in the First Circuit is also consistent with fees awarded in

other circuits. 4 *Nimmer on Copyright*, *supra*, § 14.10.  Only in exceptional cases do the courts

provide substantial awards where the non-prevailing party exhibited conduct contrary to the

purposes of the Copyright Act.  The Defendants have relied on such cases to support their

excessive request.  Not surprisingly, Hasbro and Klamer cite the same cases in which fees in

excess of $1M were awarded: *Perfect 10 Inc. v. Giganews*, No. CV 11-07098-AB, 2015 WL

1746484 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 647 (9th Cir. 2017), and *Compaq Comp.*

*Corp. v. Ergonome Inc.,* 196 F. Supp. 2d 471 (S.D. Tex. 2002), *aff'd*, 387 F.3d 403 (5th Cir.

2004).  Hasbro Br. 27-28, Klamer Br. 21-22.  In both *Perfect 10* and *Compaq,* the high fee

awards were provided as a deterrence for the misconduct of the non-prevailing parties and were

exceptional to the line of cases discussed above.[10]

In *Perfect 10*, the court relied heavily on the *Fogerty* factors of motivation and

deterrence, finding the non-prevailing party to be "in the business of litigation" and "a serial

plaintiff operating on a self-proclaimed business model of litigation . . . spending eight hours per

day, 365 days per year on litigation[.]" 2015 WL 1746484 at *9, *12.  In considering the other

*Fogerty* factors, the *Perfect 10* court found that the non-prevailing party pursued objectively

unreasonable claims and that its impecunity was intentional to avoid fees. *Id.* at *13.  Further, the

*Perfect 10* case had an exceptional amount of litigation activity with over 700 docket entries

involving more than 30 noticed motions including 8 motions for summary judgment.[11]  *Id.* at *1.

Along a similar vein, the *Compaq* court noted its award of fees was based on, *inter alia*, "(3) [the

non-prevailing party], from the beginning of the litigation, failed to respond timely to discovery,

which resulted in monetary sanctions and holdings of contempt" and "(4) [the non-prevailing

party] filed a multitude of non-meritorious motions[.]"  196 F. Supp. 2d at 474.

---

[10]    *Perfect 10* and *Compaq* are at best persuasive precedent.

[11]    Even given the substantial weight of the factors in favor of the prevailing party, the Perfect 10 court
gave a 10% overall reduction in the fees it requested. *Id*. at *26.

The facts of *Perfect 10* and *Compaq* could not be further from the facts of this case.  As explained, the Markham Parties are not "in the business of litigation," but are solely seeking recognition for their father's work.  Further, as discussed above, the *Fogerty* factors weigh in favor of the Markham Parties.  Thus, *Perfect 10* and *Compaq* are simply inapplicable here.

Further, a party's excessive greed in requesting massively high fees is in and of itself is a basis for denying an award of any fees. *First St.*, 402 F.3d at 44.  For example, in *First State* the First Circuit Court of Appeals upheld the district court's determination that a request of $89,012.82 was so "grossly excessive" that it was not entitled to ***any fee whatsoever***. *Id.*  Most of the fees being requested were for time spent on an "emergency motion" resulting in a total of 34 pages of memoranda and attendance "at a short hearing."  *Id.*  Similarly here, the corporate Defendants have employed an army of attorneys and staff to triplicate the motions and arguments they put forward all in an effort to stomp out the single issue of authorship put forward by the Markham Parties.  The Defendants' request of over $4 Million in fees should be denied in its entirety as it is grossly excessive.

**C.    If Awarded, The Markham Parties Are Entitled To A Significant Reduction In The Requested Award**

For at least all of the reasons provided thus far, the fees should be denied in their entirety. In the event that a fee is awarded, the fee should be significantly reduced for a number of reasons.  ***First***, the Markham Parties are financially impecunious relative to the Defendants and will suffer financial ruin if the Defendants are awarded their request.  ***Second***, the fees requested are extremely excessive given that this was not a copyright infringement case and no monetary damages were asserted.  ***Third***, the Defendants' requested fees are unreasonable.

1.     The Markham Parties Are Financially Impecunious Relative To The Defendants

When fees have been awarded, the financial strength of the non-prevailing party relative

to the prevailing party has long been a valid consideration.  *Lieb,* 788 F.2d at 156 ("The relative

financial strength of the parties is a valid consideration."); *see also Zamoyski,* 767 F. Supp. 2d at

224  (considering the "relative financial strength" of the parties in determining the award of

fees); *Broad Music, Inc. v. C.B.G., Inc.,* No. 11-cv-40142-FDS, 2014 WL 4656879 at *3, *7 (D.

Mass. Sept. 12, 2014) ("court may consider other facts as well when adjusting fee award . . .

[including] relative financial strength of the parties").  Courts have emphasized that "the aims of

the statute are compensation and deterrence where appropriate, but not ruination."  *Lieb,* 788

F.2d at 156; *see also Vargas v. Transeau*, No. 04 Civ. 9772, 2008 WL 3164586, at *4 (S.D.N.Y.

Aug. 6, 2008), *aff'd*, 352 F. App'x 458 (2d Cir. 2009) (Summary Order). "The goals of the

Copyright Act would not be promoted by bringing about [the non-prevailing party's] financial

ruin." *Muller v. Twentieth Century Fox Film Corp.,* No. 08 Civ. 02550, 2011 WL 3678712, at *4

(S.D.N.Y. Aug. 22, 2011).



Awarding the Defendants over $4,000,000.00 in fees would ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Exs. A, B, C.  As Brian Donnelly, the CPA for certain of the

Markham Parties, stated in his declaration.▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮  Ex. A.  The Markham Concepts company had

assets of ▮▮▮▮▮ as of December 31, 2018.  *Id.*  Susan Garretson and Lorraine

Markham, who are plaintiffs in this case in their personal capacities, would be currently▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮  Exs. B, C.  Further, since the royalty stream

flowing from Hasbro is worth approximately ███████ per year, an award of fees in the amount

requested would effectively give the Defendants full royalty rights for nearly the next ███ years.

Exs. A, B, C. The Defendants never asked for such relief, are not entitled to such relief and

should not be able to use the fee-shifting provision of the Copyright Act to achieve such relief.[12]

Awarding the requested fees and effectively wiping out the Markham Parties' royalty stream for

five years does not further the purposes of the Copyright Act.

      In similar cases where the non-prevailing party was found to be impecunious, courts have

substantially reduced the fee awards. *Polsby v. St. Martin's Press, Inc.,* No. 97 Civ. 690, 2001

WL 180124, at *1 (S.D.N.Y. Feb. 22, 2001) (reducing requested fees by almost 90% in order to

"take into account the financial circumstances of the plaintiff"); *Broad. Music.,* 2014 WL

4656879, at *7 (reducing fees by 65% citing the relative financial situations of the parties as a

consideration.); *Randolph v. Dimension Films,* 634 F. Supp. 2d 779, 801-02 (S.D. Tex, 2009)

(reducing fees by 86% citing "disproportionate financial positions of the parties" in its

reasoning).

      Thus, awarding the requested fees by the Defendants would not promote the goals of the

Copyright Act.  As discussed above, the court has the discretion to deny the excessive fees in

full. In the event that the Court awards fees, fees should be substantially reduced to avoid total

financial ruin of the Markham parties.

      2.    The Fees Are Excessive Given That No Damages Were Alleged By Defendants

In determining the amount of fee to be awarded, it is well established that damages are a

valid consideration.  *Lieb*, 788 F.2d at 156. Courts have reduced and diminished fees that were in

---

[12]  The crux of the contract claims was the increase in royalties the Defendants sought from Bill Markham. These claims were settled. Defendants should not be allowed to get a second bite at the apple by re-litigating this issue under the guise of a fee award.

33

excess of the actual damages alleged or received. *T-Peg*, 669 F.3d at 61 (reducing fee request from over $200,000 to $35,000 stating that the fee requested was "a steep sum for a case involving only $66,350 in damages"); *Greene v. Ablon,* No. 09-10937-DLJ, 2013 WL 4714344, at *9 (D. Mass. Aug. 28, 2013) (denying $298,492.90 in fee requests citing in its reasoning that "the requested awards dwarf the $19,000 recovery"), *aff'd*, 794 F.3d 133 (1st Cir. 2015); *Conway v. Licata,* 144 F. Supp. 3d 212, 216 (D. Mass. 2015) ("The Court's reluctance to award fees for prosecuting this claim is also buttressed by the difference between the damages awarded ($5,000) and the amount of fees sought ($50,133.53)."). The court should do the same in this case.

This case was not an infringement case and there were no copyright-related damages asserted by either party. While Defendants may argue that maintaining the status quo of the contractual relationship has an intrinsic value, that value was not increased by the determination of this case and is significantly smaller than the excessive fees it requests. In fact, courts have considered the intrinsic value of non-monetary awards. The court in *Spooner v. EEN, Inc.,* 644 F.3d 62 (1st Cir. 2011), addressed the intrinsic value of a permanent injunction in addition to damages received after a copyright infringement trial. *Id.* at 68-69. The *Spooner* court determined that $98,745.80 was a reasonable award proportionate to the damages of $40,000, settlement of $10,000 and the permanent injunction. Here, the fees requested are far in excess of what was decided in *Spooner* and far exceed the value of the damages in this case, whether intrinsic or monetary ($0). Thus**,** awarding any fees would be unjust. Because the Defendants' request far exceeds the damages it received, the Defendants' fee requests should either be denied in full or significantly reduced to further the purposes of the Copyright Act.

   **D.    Unreasonableness Of Fees**

34

The Defendants' fees are unreasonable for several reasons. *First*, the Defendants triplicated the work on this case by presenting the same or substantially similar arguments. *Second*, the Defendants collectively staffed no less than 35 attorneys and paralegals, allotting nearly all of their overall hours, costs, and fees on this case to the copyright issues of a single Claim for Relief. *Third*, the evidence provided by the Defendants is insufficient to accurately identify that the fees sufficiently allocated.

Defendants brought an army of attorneys to a case that had only 8 relevant depositions, little more than 50,000 pages of documents and a short trial. Once the copyright issue began to be litigated in 2017, Hasbro consistently led the charge, with Klamer and Linkletter following suit by filing separate motions with substantially the same arguments as Hasbro. *See, e.g.,* D.I. 140; D.I. 155; D.I. 158 (Hasbro, then Klamer, served untimely supplemental contentions, forcing Plaintiffs to move to strike); D.I. 177; D.I. 179; D.I. 180 (Hasbro and Klamer each filed separate but substantially similar oppositions to Plaintiffs' motion to reopen discovery); D.I. 148; D.I. 151 (Hasbro and Klamer filed separate and lengthy pretrial briefs with substantially the same arguments); D.I. 214; D.I. 219; D.I. 213 (Each Defendant filed separate and lengthy post-trial briefs with substantially the same arguments). Defendants easily could have collaborated on a single brief and each signed onto it, significantly limiting costs; this is further evident because Defendants apparently did in fact review and edit each other's briefs and motions *before* they were filed, and Klamer's counsel was speaking with Hasbro's counsel almost daily. *See, e.g.,* D.I. 258-1 at 42, 131, 135 (Klamer); D.I. 264-4 at 60 (Hasbro).

Courts have previously reduced fees as a result of such inefficiencies, given that efficient litigation is in furtherance of the Copyright Act. *InvesSys Inc. v. McGraw-Hill Cos.,* No. Civ. A. 01-12048-GAO, 2003 WL 21696545, at *3 (D. Mass. May 27, 2003) (adjusting attorney hours and billing rates by one third where the case as "heavily staffed" and disproportionate "to the

35

task at hand"); *Oravec v. Sunny Isles Luxury Ventures L.C.,* No. 04-22890-CIV, 2010 WL 1302914, at *12-13 (S.D. Fla. Mar. 31, 2010) (reducing defendants requested fee 25-35% for duplicative efforts).  Defendants did the opposite, tripling the amount of hours needed for every effort.  Further, courts have denied fees where a party "contributed little or nothing of substance" in the victory, identifying filing of redundant submissions and arguments as a consideration for their de minimis contribution.  *Donnell v. United States*, 682 F.2d 240, 248 (D.C. Cir. 1982).  Here, Defendants Klamer and Linkletter did little or nothing more than follow Hasbro's lead.  As such, Klamer and Linkletter's fees should be excluded entirely.

Moreover, the Defendants' billable hours were excessive, duplicative, and did not accurately allocate fees only to the Third Claim for Relief.  For example, Defendants' exhibits all include a number of billable hours related to the <u>contract</u> claim, including hours spent deposing Hasbro employees Pam Hagy and Dave Dubosky, who had no impact whatsoever on the copyright case and had no knowledge of any aspect of the 1959 facts of the copyright case.  *See, e.g.,* D.I. 265-5 at 11-13 (Hasbro); D.I. 258-1 at 121-24, 133, 135, 157, 165, 168-69 (Klamer); D.I. 265-2 at 18, 27 (Linkletter).  As explicitly noted in the stipulation of dismissal, and as is obvious from the procedural posture of the case at the time, these settlement discussions could not have related to any copyright claim.  In addition to the duplicated efforts of the Defendants described previously, Defendants request fees for billable attorney and staff hours for travel and clerical tasks such as printing and preparing binders.  *See, e.g.,* D.I. 258-1 at 40, 57, 67, 96 (Klamer); D.I. 265-2 at 10, 13, 16, 22-24 (Linkletter).  These types of excessive fees are unreasonable.

Lastly, the requesting party bears the burden of proving the reasonableness of its fees.  *Hensley,* 461 U.S. at 433; *Spooner*, 644 F.3d at 68.  None of the Defendants have met that burden, as the evidence provided does not paint a clear picture of what is or is not included in

their fee requests, nor shows that fees were appropriately allocated solely to the copyright aspects of Plaintiff's Third Claim for Relief.  Each party has allotted <u>all or nearly all</u> of its billable time to this Claim, despite the fact that many other Claims were litigated and the Third Claim was not the focus of the case until nearly two years after its initial filing.  *See* Hasbro Br. at 24; Klamer Br. at 19; Linkletter Br. at 7.  Moreover, Klamer and Linkletter significantly redacted their billable entries, leaving it impossible for the Court or the Plaintiffs to determine if the billed time was related to this case at all, much less whether it was related to a copyright claim.  These parties seek to use privilege as a sword and shield, asserting that the time entries are subject to fee-shifting but refusing to detail their fees.  Such tactics are not permitted.  Hasbro, on the other hand, properly provided the majority of its time unredacted, but did not clearly indicate which fee items it was requesting in the invoices and which it was not.  While Hasbro alleges it is only asking for fees from eight attorneys and two paralegals, its supporting invoices have numerous other individuals and time entries listed. *See, e.g.,* D.I. 264-4 at 10 (Brian R. Love and Kideda E. Ray); D.I. 264-3 at 12 (Kevin M. Hoogstraten), 17 (Sean R. Sullivan)

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433.  Thus, the evidence provided by the Defendants is not sufficient to show the hours allocated solely to the Third Claim for Relief. *See Scott-Blanton v. Universal City Studios Prods. LLLP,* 593 F. Supp. 2d 171, 177 (D.D.C. 2009) (reducing fees and costs by 45% because the billing records with block entries left the court "to approximate the amount of time which should be allocated to each task"); *Erickson Prods., Inc. v. Only Websites, Inc.,* No. 12-CV-1693, 2015 WL 13745786, at *7 (S.D.N.Y. Sept. 2, 2015) (reducing fees by 45% to $45,152 because block billing entries "imped[ed] the court's ability to ascertain what amount of time was expended on a discrete task(s)"), *aff'd as modified*, 2016 WL 1337277

37

(S.D.N.Y. Mar. 31, 2016) (maintaining reduction but slightly lowering it to 40%). Thus, the Defendants' requests should be denied entirely or significantly reduced.

## V.   DEFENDANTS KLAMER AND LINKLETTER FAILED TO FOLLOW THE LOCAL RULES

In order to request a fee award, Local Rule 54.1 provides that the requesting party must file a supporting affidavit from counsel containing "a description of any fee arrangement made with counsel's client regarding the case[.]" DRI LR 54.1(b)(1)(D). Here, Klamer and Linkletter both failed to provide an affidavit containing such fee arrangement. Although the affidavits from Klamer and Linkletter include the engagement agreements as exhibits, those agreements are nearly completely redacted. Neither the documents nor the affidavits include the fee arrangements with Klamer and Linkletter's attorneys. In determining whether to award a fee and the amount of a fee if awarded, courts consider whether a contingency arrangement was in place. *Coutin v. Young & Rubicam P.R., Inc*., 124 F.3d 331, 337 & n.3 (1st Cir. 1997) (stating the First Circuit uses the *Johnson* factors in awarding fees) (*citing Johnson v. Ga. Hwy. Exp., Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)). No evidence other than attorney argument was submitted regarding the fee arrangements that Klamer and the Linkletters had with their counsel, in violation of Local Rule 54.1. Even beyond the contingency question, it is unclear whether the Klamers and Linkletters were paying significantly reduced rates or were capped at paying a certain amount of hours. These factors could be considered by the Court and are required in order to provide a full "description of **any** fee arrangement made with counsel's client regarding the case. DRI LR 54.1(b)(1)(D) (emphasis added). Thus, the Klamer and Linkletter requests should be dismissed in their entirety.

VI.     **CONCLUSION**

For at least the reasons provided herein, the Markham Parties request that the Court deny Defendants' requests for fees. In addition, for the reasons detailed in the Plaintiffs' Motion to Stay, And in the  Alternative to Dismiss Without Prejudice, Defendants' Motion for Attorneys' Fees Pending Appeal to the First Circuit, D.I. 274, the Markham Parties  believe significant judicial resources could be preserved  by delaying consideration of the Defendants' Motions until after the appeals have concluded.  The Markham Parties therefore additionally request  as per that Motion that the Court stay Defendants' motion for attorneys' fees and in the alternative dismiss the motion without prejudice until the resolution of the appeal.

Dated: October 1, 2019

/s/ Robert M. Pollaro
Robert M. Pollaro
John T. Moehringer
David Cole
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone (212) 504-6000
*Admitted Pro Hac Vice*

/s/ Mary C. Dunn
Joseph V. Cavanagh, Jr. (#1139)
Mary Cavanagh Dunn (#6712)
Robert J. Cavanagh, Jr. (#8589)
BLISH & CAVANAGH  LLP
Commerce Center
30 Exchange Terrace
Providence, Rhode Island 02903
Telephone (401) 831-8900

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2019, I caused a true and correct copy of the foregoing document to be served on counsel of record via the electronic court filing system (ECF).

<u>/s/ Robert M. Pollaro</u>
Robert M. Pollaro