## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

MARKHAM CONCEPTS, INC., SUSAN GARRETSON, and LORRAINE MARKHAM, individually and in her capacity as Trustee of the Bill and Lorraine Markham Exemption Trust and the Lorraine Markham Family Trust,

        Plaintiffs,

vs.

HASBRO, INC., REUBEN KLAMER, DAWN LINKLETTER GRIFFIN, SHARON LINKLETTER, MICHAEL LINKLETTER, LAURA LINKLETTER RICH, DENNIS LINKLETTER, THOMAS FEIMAN, in his capacity as co-trustee of the Irvin S. and Ida Mae Atkins Family Trust, ROBERT MILLER, in his capacity as co-trustee of the Irvin S. and Ida Mae Atkins Family Trust, and MAX CANDIOTTY, in his capacity as co-trustee of the Irvin S. and Ida Mae Atkins Family Trust.

        Defendants.

CA. No. 1:15-cv-419-S-PAS

## LINKLETTER DEFENDANTS, THOMAS FEIMAN, ROBERT MILLER AND MAX CANDIOTTY'S  REPLY IN FURTHER SUPPORT OF MOTION FOR ATTORNEY'S FEES

This case is not a David versus Goliath battle pitting two individuals against a large corporation, despite Plaintiffs' efforts to suggest that dynamic in their Combined Opposition to Defendants' Motion for Attorney's Fees (Dkt. 275, the "Opposition").  The Opposition's hyperbolic language about resources and unequal power simply does reflect reality.[1]  Defendants Dawn Linkletter Griffin, Sharon Linkletter, Michael Linkletter, Laura Linkletter Rich and Dennis Linkletter (collectively the "Linkletter Defendants") are individuals and Defendants Thomas Feiman, Robert Miller and Max Cadiotty (collectively, the "Atkins Defendants," and

---

[1] Plaintiffs are represented by the esteemed New York law firm of Cadwalader, Wickersham & Taft, LLP.  In addition to Cadwalader, Plaintiffs also retained David Nimmer of Irell & Manella LLP before a conflict caused his to step aside as co-counsel.  *See* Opposition at 13 n. 8.  Thus, while Plaintiffs now question their ability to pay any award of legal fees to Defendants, and cast aspersions on Defendants fees, they selected preeminent law firms for their own representation.

together, at times, with the Linkletter Defendants, the "Linkletter and Atkins Defendants") are named in their capacities as co-trustees of the Irvin S. and Ida Mae Atkins Family Trust.

Plaintiffs dragged the Linkletter and Atkins Defendants into this litigation and caused them to expend almost $600,000 in legal fees to defend claims that Plaintiffs should have known were frivolous.[2]  The Opposition does not establish otherwise.  Instead, it reiterates the same unreasonable positions Plaintiffs took throughout this case, and it cites to portions of the record that do not provide the factual underpinnings that Plaintiffs claim.

In short, this involves a fight Plaintiffs chose, frivolously pursued, and continue to press despite long odds.  The Opposition continues to avoid the critical issue: faced with un-contradicted evidence concerning the authorship of the Game of Life, and possessing no countervailing evidence of *authorship* by Bill Markham, Plaintiffs continued with their untenable theories through trial despite having no apparent path to success.  The objective unreasonableness of Plaintiffs' litigation positions warrants an award of attorneys' fees in favor of the Linkletter and Atkins Defendants in the amount sought.

## I.   <u>Relevant Background</u>

### A.   <u>Plaintiffs' Continue to Unreasonably Read the Facts As Introduced At Trial</u>

The Court is familiar with the history and facts of this case, but the Opposition includes several factual claims that require a response because they are relevant to the request for fees. Following a bench trial, the Court determined that Defendant Reuben Klamer had the initial inspiration for the Game and utilized Mr. Markham's company to bring those ideas to life. (Findings of Fact and Conclusions of Law, Dkt. 240 at 4-5.)  Two of Markham's employees created the Game's prototype.  *Id.* at 6-8.  Several people contributed to its rules.  *Id.* at 7-8.

Plaintiffs attempt to brush past these facts – or at least square their legal positions – but in

___

[2] Plaintiffs do not challenge costs sought by the Linkletter and Atkins Defendants in the amount of $6,185.36.

doing that, Plaintiffs' record cites do not actually support their positions.

For instance, they argue that Mr. Markham's employees, Ms. Grace Falco Chambers and Mr. Leonard Israel, performed only routine tasks and thus did not contribute anything worthy of copyright protection to the Game.  Opposition at 16.  To support this statement, Plaintiffs rely on a snippet of deposition testimony from Mr. Israel concerning his first year at Mr. Markham's company (not his work on the Game).  This testimony says nothing about Ms. Chambers.  *See* Pls. Finding of Fact at 113; Deposition Transcript of Mr. Israel at 36-38.  Plaintiffs ignore the trial testimony relied on by the Court about the contributions of these employees.  Findings of Fact at 6-7 (collecting trial citations).

Instead, Plaintiffs claim that Ms. Chambers "testified that she made houses for the game board from balsa wood but could not provide any more specifics than that."  Opposition at 10. But the portion of the cited trial transcript states as follows:

Q. Who did the actual hands-on work of building the prototype game board?

A. Well, I did a fair amount of it. Leonard helped somewhat and whenever he could cause he had other projects that he was working on. Um, and yeah, I suppose that I used in those days, balsa wood to create the dimensional buildings and roadways and so on.

Q. So just to be clear, you built the houses of the prototype; is that correct?

A. I did, yes.

Q. Did you build the mountains on the prototype?

A. Yes.

Q. Did you construct the elevated track physically on the prototype?

A. Yeah, I'm sure. Yeah, it's many years ago, but I do, I do recall working with the different materials and the cardboard and forming it and so on.

November 17 Trial Transcript at 71-72.  Plaintiffs' efforts to minimize Ms. Chambers' testimony illustrate the unreasonable lengths to which Plaintiffs will go in this case.  In

3

trying to make out a defense to the request for attorneys' fees, Plaintiffs only weaken their position.

Plaintiffs also argue that Ms. Chambers did not understand basic aspects of making a prototype.  Opposition at 17.  To support this claim, they cite testimony from Ms. Chambers, but when that testimony is read in context it conveys merely that Ms. Chambers did not recall whether the ultimate prototype was bound, she did not understand Plaintiffs' counsel's questions concerning "binding," and she was not been aware Mr. Markham issued a particular invoice related to the Game.  *See* November 17 Trial Transcript at 105-106.

While contorting the testimony they do cite, Plaintiffs also fail to address the actual testimony from both Ms. Chambers and Ms. Israel upon which the Court ultimately relied.[3]  *See e.g.* November 16 Trial Transcript at 106 ("Q. Now, let's talk a little bit more about Ms. Chambers. What role, if any, did she have in connection with the creation of the game board that was ultimately created? A. Well, once it was decided what we wanted to have on the board, she was the one who put it all together and did the final art work on it. After all the different changes had kept constantly being worked on, she always had to work with the new changes and remove the old copy. And all of this process is something that's moving either forward or changing all the time until the final word.").

### B.    Procedural Decisions Do Not Suggest Objective Reasonableness by Plaintiffs

Plaintiffs initially brought this case as a breach of contract matter against Hasbro following Wells Fargo's termination of an escrow agreement that distributed royalties related to the Game of Life.  Opposition at 5; Dkt. No. 1; Dkt. No. 9.  The Court assisted Plaintiffs and

---

[3] Plaintiffs also overlook testimony from Ms. Chambers to which they have no reasonable rejoinder.  *See e.g,* November 17 Trial Transcript at 72-73 ("Q. Did Bill Markham physically construct any portions of the prototype game board? A. No. Actually, you know, looking back, I don't remember that much help from Bill, although he must have, but I, you know, as far as the board game, uh, the comp, the model, I don't recall Bill actually helping with that. And it was primarily myself and Leonard helped with some of it.")

Defendants in executing a new escrow agreement that permitted royalties to again flow to Plaintiffs, *see* Dkt. No. 23, but by then Plaintiffs had already amended their complaint to assert the copyright claim at issue here.  Ultimately, in January 2016, the Court permitted Plaintiffs to file a Second Amended Complaint, which named the Linkletter Defendants.  The Linkletter Defendants moved to dismiss the Second Amended Complaint due to lack of personal jurisdiction.  *See* Dkt. No. 62-1.  In October 2016, as the case progressed, the Linkletter Defendants ultimately withdrew their Motion to Dismiss for efficiency reasons and entered into a stipulation concerning their time to answer the Second Amended Complaint.  Dkt. 102.  The Court did not rule on the merits of this Motion to Dismiss.  This jurisdictional motion, which was withdrawn, says nothing about the propriety of Plaintiffs claims.

II.    <u>**Argument**</u>

     A.    <u>**Plaintiffs Advanced Objectively Unreasonable Claims**</u>

Plaintiffs' legal theories were both legally weak and pursued in an objectively unreasonable manner.  For these reasons an award of attorneys' fees is appropriate.  *See Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 329 (1st Cir. 2017) (awarding attorney's fees where factual and legal bases for claims were "at best questionable" despite there being no evidence of bad faith).

The objective weakness of Plaintiffs claim is two-fold.  First, Plaintiffs' position required the Court to refuse to follow binding First Circuit precedent.  Second, Plaintiffs faced unrebutted testimony from percipient witnesses that rendered their theory that Mr. Markham was the lone author of the Game untenable even if they convinced the Court to disregard First Circuit authority, particularly given the lack of evidence of Plaintiffs had to support their claim.  Nevertheless, despite unrebutted testimony fatal to their position they pressed on, ultimately

5

moving for reconsideration.  As discussed above, doing so has required Plaintiffs to overlook unrebutted testimony and rely on other evidence that did not comport with testimony.

The Opposition also relies, in part, on Plaintiffs' argument that the Court erred in permitting testimony related to work done by Ms. Chambers and Mr. Israel.  Opposition at 6. Plaintiffs, however, do not articulate why the First Circuit is likely to overturn the Court's decision to permit the parties to present all theories concerning authorship at trial.  *See* November 15, 2017 Text Order ("The Court will hear evidence on all parties' theories with respect to authorship, and work made for hire at the trial commencing Thursday morning.")

### B.    Plaintiffs' Claims Do Not Further the Purpose of the Copyright Act

Requiring Defendants to expend considerable resources to protect their interests against specious claims does not further the purpose of the Copyright Act.  *See Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S. Ct. 1979, 1986–87 (2016) ("Conversely, when a person (again, whether plaintiff or defendant) has an unreasonable litigating position, the likelihood that he will have to pay two sets of fees discourages legal action. The copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment); and the infringer with no reasonable defense has every reason to give in quickly, before each side's litigation costs mount. All of those results promote the Copyright Act's purposes, by enhancing the probability that both creators and users (i.e., potential plaintiffs and defendants) will enjoy the substantive rights the statute provides.")

Plaintiffs claim that a royalty dispute and their sincere belief that Mr. Markham authored the Game justify their prosecution of this case.  Opposition at 22.  However, a sincere belief in an unreasonable position does not shield a party from liability for attorneys' fees under the

Copyright Act. *Garcia-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14, 20 (1st Cir. 2005) (holding that a showing of bad faith is not required for an award of fees under the Copyright Act).[4]  Additionally, the Court resolved a critical portion of the royalty dispute early in this case – before the Plaintiffs even named the Linkletter and Atkins Defendants in the Second Amended Complaint – and royalties continued to flow to Plaintiffs.  Dkt. No.  23.  Thus, by the time the Linkletter and Atkins Defendants entered this case, it was not about a royalty dispute.  Instead, it involved an effort by Plaintiffs to destroy a licensing arrangement and divert all royalties, as opposed maintaining the royalty portion Plaintiffs had long enjoyed.[5]

### C.    The Plaintiffs Have Received Royalties from the Game for Many Years

Plaintiffs claim that they will be financially unable to pay a fee award, focusing on recent royalties they have received involving the Game.  Opposition at 32.  This argument overlooks that Plaintiffs have received significant royalties from the Game for the last two decades.  It is true that the Plaintiffs are individuals, but they are individuals with resources.

### D.    The Linkletter and Atkins Defendants Complied with the Local Rules

The Linkletter and Atkins Defendants identified their fee arrangement in their request for fees.  Specifically, they identified the rates they agreed to pay attorneys in this case.  *See* Dkt. No. 265-1, Declaration of Christine K. Bush and Dkt. No. 265-2, Declaration of Gary Wexler.  There were no special arrangements in this case – as the contemporaneous billing records indicate, the Linkletter and Atkins Defendants paid their legal fees on a rate multiplied by time basis.  *Id.* [6]

---

[4] Plaintiffs also assert that Count III of their Third Amended Complaint involves claims beyond a right to terminate copyright assignments and involves concerns about Mr. Markham's legacy.  But the desire to preserve a legacy does not change that Plaintiffs lacked evidence concerning specific copyrightable contributions to the Game.
[5] Plaintiffs criticize that Hasbro, Defendant Reuben Klamer and the Linkletter and Atkins Defendants had separate counsel.  The Linkletter and Atkins Defendants shared counsel – each would have been entitled to their own counsel.  Additionally, Defendants were entitled to file sepearte briefs accounting for their own interests.
[6] Exhibit A to the Declaration of Christine K. Bush also indicates that the Linkletter and Atkins Defendants

### III.  <u>Conclusion</u>

For the foregoing reasons, the Linkletter and Atkins Defendants respectfully request an award pursuant to 17 U.S.C. § 505 of their reasonable attorney's fees in the amount of $583,709.50, plus costs in the amount of $6,185.36, for a total of $589,894.86.

Respectfully submitted,

Dawn Linkletter Griffin, Sharon Linkletter, Michael Linkletter, Laura Linkletter Rich and Dennis Linkletter, Robert Miller and Max Candiotty, in their capacity as co-trustee of the Irvin S. and Ida Mae Atkins Family Trust

By Their Attorneys,

/s/ *Ryan M. Gainor*
Christine K. Bush (#5587)
Ryan M. Gainor (#9353)
HINCKLEY, ALLEN & SNYDER LLP
100 Westminster Street, Suite 1500
Providence, Rhode Island 02902
Phone:  (401) 457-2000
Fax:  (401) 277-9600
cbush@hinckleyallen.com
rgainor@hinckleyallen.com

Gary A. Wexler (*pro hac vice*)
David Jinkins (*pro hac vice*)
THOMPSON COBURN LLP
2029 Century Park East, 19th Floor
Los Angeles, CA 90067
Phone:  (310) 282-9455
Fax:  (310) 282-2501
GWexler@thompsoncoburn.com

Dated:  October 8, 2019

---

received a write off of $2.64 in this case.  The Linkletter and Atkins Defendants are not seeking this amount in fees, nor are they seeking any write offs received from Thompson Coburn, LLP.  Plaintiffs also appear to argue that counsel for Defendants may have taken this case on a contingency fee basis.  The Bush and Wexler Declarations refute this speculation.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing document was filed through the ECF system on the 8th day of October, 2019, and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

<u>/s/ *Ryan M. Gainor*          </u>